**Rule 1.9.Conflict of Interest: Former Client**

```
Rule 1.9.Conflict of Interest:  Former Client
 (a)A lawyer who has formerly represented a client in a matter
 shall not thereafter represent another person in the same or a
 substantially related matter in which that person's interests are
 materially adverse to the interests of the former client unless the
 former client consents after consultation.

 (b)A lawyer shall not  knowingly represent a person in the same
 or a substantially related matter in which a firm with which the lawyer
 formerly was associated had previously represented a client,

 (1)whose interests are materially adverse to that person; and

 (2)about whom the lawyer had acquired information protected by
 Rule 1.6 that is material to the matter;
 unless the former client consents after consultation.

 (c)A lawyer who has formerly represented a client in a matter
 or whose present or former law firm has formerly represented a client
 in a matter shall not thereafter:

 (1)use information relating to the representation to the
 disadvantage of the former client except as Rule 1.6 or Rule 3.3 would
 permit or require with respect to a client, or when the information has
 become generally known; or

 (2)reveal information relating to the representation except as
 Rule 1.6 or Rule 3.3 would permit or require with respect to a client.
```

```
                                   ANNOTATIONS
Source:
 IP(c) amended March 17, 1994, effective July 1, 1994.


 COMMENT
 After termination of a client-lawyer relationship, a lawyer may
 not represent another client except in conformity with this Rule.  The
 principles in Rule 1.7 determine whether the interests of the present
 and former client are adverse.  Thus, a lawyer could not properly seek
 to rescind on behalf of a new client a contract drafted on behalf of the
 former client.  So also a lawyer who has prosecuted an accused person
 could not properly represent the accused in a subsequent civil action
 against the government concerning the same transaction.

 The scope of a "matter" for purposes of this Rule may depend on
 the facts of a particular situation or transaction.  The lawyer's
 involvement in a matter can also be a question of degree.  When a lawyer
 has been directly involved in a specific transaction, subsequent
```

representation of other clients with materially adverse interests
clearly is prohibited. On the other hand, a lawyer who recurrently
handled a type of problem for a former client is not precluded from
later representing another client in a wholly distinct problem of that type
even
though the subsequent representation involves a position adverse to the prior
client. Similar considerations can apply to the reassignment of military
lawyers between defense and prosecution functions within the same military
jurisdiction. The underlying question is whether the lawyer was so involved
in
the matter that the subsequent representation can be justly regarded as a
changing of sides in the matter in question.

Lawyers Moving Between Firms
When lawyers have been associated within a firm but then end their
association, the question of whether a lawyer should undertake
representation is more complicated. There are several competing
considerations. First, the client previously represented by the former
firm must be reasonably assured that the principle of loyalty to the
client is not compromised. Second, the rule should not be so broadly
cast as to preclude other persons from having reasonable choice of legal
counsel. Third, the rule should not unreasonably hamper lawyers from
forming new associations and taking on new clients after having left a
previous association. In this connection, it should be recognized that
today many lawyers practice in firms, that many lawyers to some degree
limit their practice to one field or another, and that many move from
one association to another several times in their careers. If the
concept of imputation were applied with unqualified rigor, the result
would be radical curtailment of the opportunity of lawyers to move from
one practice setting to another and of the opportunity of clients to
change counsel.

Reconciliation of these competing principles in the past has been
attempted under two rubrics. One approach has been to seek per se rules
of disqualification. For example, it has been held that a partner in a
law firm is conclusively presumed to have access to all confidences
concerning all clients of the firm. Under this analysis, if a lawyer
has been a partner in one law firm and then becomes a partner in another
law firm, there may be a presumption that all confidences known by the
partner in the first firm are known to all partners in the second firm.
This presumption might properly be applied in some circumstances,
especially where the client has been extensively represented, but may be
unrealistic where the client was represented only for limited purposes.
Furthermore, such a rigid rule exaggerates the difference between a
partner and an associate in modern law firms.

The other rubric formerly used for dealing with disqualification
is the appearance of impropriety proscribed in Canon 9 of the ABA Model
Code of Professional Responsibility. This rubric has a two fold
problem. First, the appearance of impropriety can be taken to include
any new client-lawyer relationship that might make a former client feel
anxious. If that meaning were adopted, disqualification would become
little more than a question of subjective judgment by the former client.
Second, since "impropriety" is undefined, the term "appearance of
impropriety" is question-begging. It therefore has to be recognized
that the problem of disqualification cannot be properly resolved either
by simple analogy to a lawyer practicing alone or by the very general

concept of appearance of impropriety.

Confidentiality
Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussions of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients.

Application of paragraph (b) depends on a situation's particular facts. In such an inquiry, the burden of proof should rest upon the firm whose disqualification is sought.

Paragraph (b) operates to disqualify the lawyer only when the lawyer involved has actual knowledge of information protected by Rules 1.6 and 1.9(b). Thus, if a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict. See Rule 1.10(b) for the restrictions on a firm once a lawyer has terminated association with the firm.

Independent of the question of disqualification of a firm, a lawyer changing professional association has a continuing duty to preserve confidentiality of information about a client formerly represented. See Rules 1.6 and 1.9.

Adverse Positions
The second aspect of loyalty to a client is the lawyer's obligation to decline subsequent representations involving positions adverse to a former client arising in substantially related matters. This obligation requires abstention from adverse representation by the individual lawyer involved, but does not properly entail abstention of other lawyers through imputed disqualification. Hence, this aspect of the problem is governed by Rule 1.9(a). Thus, if a lawyer left one firm for another, the new affiliation would not preclude the firms involved from continuing to represent clients with adverse interests in the same or related matters, so long as the conditions of paragraphs (b) and (c) concerning confidentiality have been met.

Information acquired by the lawyer in the course of representing a client may not subsequently be used or revealed by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about the client when later representing another client.

Disqualification from subsequent representation is for the protection of former clients and can be waived by them. A waiver is

effective only if there is disclosure of the circumstances, including
the lawyer's intended role in behalf of the new client.

With regard to an opposing party's raising a question of conflict
of interest, see Comment to Rule 1.7. With regard to disqualification of a
firm with which a lawyer is or was formerly associated, see Rule 1.10.

COMMITTEE COMMENT
This rule, which was viewed by the Committee as an important
contribution of the Model Rules, is identical to amended Model Rule 1.9
(which was amended at the February 1989 Mid-year ABA meeting) and its
comments.

ANNOTATION

Law reviews. For formal opinion of the Colorado Bar Association on
Ethical Duties of Attorney Selected by Insurer to Represent Its Insured, see
22 Colo. Law. 497 (1993).

Annotator's note.
Rule 1.9 is similar to
DR 4-101 and DR 5-105 as they
existed prior to the 1992 repeal and reenactment of the Code of
Professional Responsibility.
Relevant cases construing DR 4-101 have been included
under Rule 1.6 and cases construing DR 5-105 have included under Rule 1.7.

The purpose of this rule and rule 1.10 is to protect a client's confidential
communications with his attorney. Funplex Partnership v. FDIC, 19 F. Supp.2d 120
(D. Colo. 1998).

Motions to disqualify counsel rest within the sound discretion of the trial
court. FDIC v. Sierra Resources, Inc., 682 F. Supp. 1167 (D. Colo. 1987); Funplex
Partnership v. FDIC, 19 F. Supp.2d 1202 (D. Colo. 1998).

The party seeking disqualification under this rule must provide the court with
specific facts to show that disqualification is necessary and he cannot rely on
speculation or conjecture. FDIC v. Sierra Resources, Inc., 682 F. Supp. 1167 (D.
1987); Funplex Partnership v. FDIC, 19 F. Supp.2d 1202 (D. Colo. 1998).

Specifically, the moving party must show that: (1) An attorney-client relationshi
in the past; (2) the present litigation involves a matter that is "substantially
prior litigation; (3) the present client's interests are materially adverse to th
interests; and (4) the former client has not consented to the disputed representa
consultation. English Feedlot, Inc. v. Norden Lab., Inc., 833 F. Supp. 1498 (D.
Funplex Partnership v. FDIC, 19 F. Supp.2d 1202 (D. Colo. 1998).

Substantiality is present if the factual contexts of the two representations are
related. English Feedlot, Inc. v. Norden Lab., Inc., 833 F. Supp. 1498 (D. Colo.
v. Ruidoso Municipal Schools, 43 F.3d 1373 (10th Cir. 1994); Funplex Partnership
19 F. Supp.2d 1202 (D. Colo. 1998).

Attorney's former representation of the alternate suspect in criminal case prohib
him from representing the criminal defendant where the cases were substantially r
because the murder victim in the present case was the informant in the former cli

People ex rel. Peters v. District Court, 951 P.2d 926 (Colo. 1998).

Applied in English Feedlot, Inc. v. Norden Laboratories, Inc., 833 F. Supp. 1498 (D. Colo. 1993).