ATTACHMENT 2

Westlaw.

423 F.3d 1164

Page 1

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

**H**
U.S. v. Small
C.A.10 (Colo.),2005.

United States Court of Appeals,Tenth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Willie James SMALL, Alvin Green, a/k/a Mel Dog,
Theolian Lloyd, Sammy Lee Woods, George
Melvin Murray, Tommy Jones, Dwayne Van Dyke,
Dawan Eugene Smith, Defendants-Appellants.
**Nos. 04-1188, 04-1157, 04-1148, 04-1168,
04-1161, 03-1513, 04-1201, 04-1503.**

Sept. 15, 2005.

**Background:** Defendants were convicted in the
United States District Court for the District of
Colorado, Wiley Daniel, J., of drug offenses arising
out of crack cocaine distribution conspiracy, and
they appealed.

**Holdings:** The Court of Appeals Murphy, Circuit
Judge, held that:

(1) alleged misstatements in wiretap affidavit did
not taint issuing judge's finding that wiretap was
necessary;

(2) potential juror's statements during voir dire
about his concerns over his personal safety did not
require a mistrial or a new venire;

(3) district court did not violate due process by
failing to question jury regarding defense counsel's
conversation about a gun that one of the jurors
overheard during a lunch break;

(4) defendant was not prejudiced by district court's
denial of his motion for a severance;

(5) evidence was sufficient to establish that
defendant was part of charged conspiracy;

(6) evidence was sufficient to support conviction for
using a telephone to facilitate a drug felony;

(7) non-constitutional *Booker* error in applying
Sentencing Guidelines in a mandatory fashion did
not affect defendant's substantial rights; but

(8) constitutional *Booker* error occurring when
district court sentenced defendant on basis of drug
quantity it found at sentencing affected defendant's
substantial rights and thus was not harmless.

Affirmed; remanded for resentencing.
West Headnotes
**[1] Telecommunications 372 ☞1479**

372 Telecommunications
    372X Interception or Disclosure of Electronic
Communications; Electronic Surveillance
        372X(B) Authorization by Courts or Public
Officers
            372k1479 k. Review of Proceedings;
Standing. Most Cited Cases
Court        of        Appeals        reviews        alleged
misrepresentations and omissions in a wiretap
application under the standard requiring defendant
to show that any misstatements were made
knowingly, intentionally, or recklessly, and that the
erroneous information was material to the district
court's finding of necessity. 18 U.S.C.A. § 2518.

**[2] Telecommunications 372 ☞1479**

372 Telecommunications
    372X Interception or Disclosure of Electronic
Communications; Electronic Surveillance
        372X(B) Authorization by Courts or Public
Officers
            372k1479 k. Review of Proceedings;
Standing. Most Cited Cases
Defendant bears the burden of overcoming the
presumption that the district court's wiretap

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164

423 F.3d 1164
(Cite as: 423 F.3d 1164)

authorization was proper. 18 U.S.C.A. § 2518.

**[3] Telecommunications 372 ☞1468**

372 Telecommunications
   372X Interception or Disclosure of Electronic Communications; Electronic Surveillance
      372X(B) Authorization by Courts or Public Officers
         372k1464 Application or Affidavit
            372k1468 k. Necessity; Inadequacy of Other Procedures. Most Cited Cases
Incorrect statement in wiretap affidavit indicating that defendant earned $18,000 per week selling crack cocaine, based on taped conversation between defendant and confidential informant, was not intentional or reckless misstatement that tainted issuing judge's finding that wiretap was necessary; although tape was unclear and defendant actually said he could make $7,000 if he could sell 18 ounces of crack cocaine per week, applicant had verified the contents of the conversation with the confidential informant prior to including the information in the affidavit. 18 U.S.C.A. § 2518.

**[4] Telecommunications 372 ☞1468**

372 Telecommunications
   372X Interception or Disclosure of Electronic Communications; Electronic Surveillance
      372X(B) Authorization by Courts or Public Officers
         372k1464 Application or Affidavit
            372k1468 k. Necessity; Inadequacy of Other Procedures. Most Cited Cases
Statement in wiretap affidavit indicating that defendant's car had an original purchase price of $93,500 was not misleading, so as to taint issuing judge's finding that wiretap was necessary; although defendant had purchased the car used and on credit for significantly less than that amount, given age of car, any reasonable reader would have assumed that it was no longer worth its original purchase price. 18 U.S.C.A. § 2518.

**[5] Telecommunications 372 ☞1468**

372 Telecommunications
   372X Interception or Disclosure of Electronic

Communications; Electronic Surveillance
      372X(B) Authorization by Courts or Public Officers
         372k1464 Application or Affidavit
            372k1468 k. Necessity; Inadequacy of Other Procedures. Most Cited Cases
FBI agent's statement to court in connection with wiretap application, indicating that at least one confidential informant had been moved out of state, was not deceptive or misleading, so as to taint issuing judge's finding that wiretap was necessary, although informant had been moved out of state for reasons unrelated to defendant's case; wiretap affidavit clearly stated that the informant was moved because her identity had been disclosed in a separate case, and nothing in agent's statements to court contradicted the affidavit or implied that defendant had actually threatened the informant. 18 U.S.C.A. § 2518.

**[6] Telecommunications 372 ☞1468**

372 Telecommunications
   372X Interception or Disclosure of Electronic Communications; Electronic Surveillance
      372X(B) Authorization by Courts or Public Officers
         372k1464 Application or Affidavit
            372k1468 k. Necessity; Inadequacy of Other Procedures. Most Cited Cases
Wiretap affidavit did not exaggerate difficulty of introducing an undercover agent or a second informant into defendant's drug organization, so as to undermine government's showing of necessity by falsely implying that traditional investigative techniques would have been ineffective; affidavit indicated that existing informant was unable to describe full scope of the organization or provide investigators with any knowledge of organization's suppliers, and that defendant was reluctant to engage in drug transactions with people he did not know. 18 U.S.C.A. § 2518.

**[7] Telecommunications 372 ☞1467(2)**

372 Telecommunications
   372X Interception or Disclosure of Electronic Communications; Electronic Surveillance
      372X(B) Authorization by Courts or Public

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164

Page 3

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

Officers
    372k1464 Application or Affidavit
       372k1467 Competency of Information;
Hearsay
          372k1467(2) k. Information from
Others in General. Most Cited Cases
Government is not required to attempt to introduce
other agents or informants in a case in which it
seeks wiretap where this technique is unlikely to
produce any additional evidence. 18 U.S.C.A. §
2518.

**[8] Telecommunications 372 &#9750;1468**

372 Telecommunications
    372X Interception or Disclosure of Electronic
Communications; Electronic Surveillance
       372X(B) Authorization by Courts or Public
Officers
          372k1464 Application or Affidavit
             372k1468 k. Necessity; Inadequacy of
Other Procedures. Most Cited Cases
Wiretap affidavit's omission of results of additional
investigative techniques, including results obtained
from use of video surveillance of the area outside
defendant's home and names of individuals
identified through use of pen register and
trap-and-trace devices, did not undermine district
court's finding of necessity, where defendant failed
to identify any evidence obtained or potentially
obtainable from those investigative techniques that
would have obviated the need for a wiretap. 18
U.S.C.A. § 2518.

**[9] Telecommunications 372 &#9750;1465**

372 Telecommunications
    372X Interception or Disclosure of Electronic
Communications; Electronic Surveillance
       372X(B) Authorization by Courts or Public
Officers
          372k1464 Application or Affidavit
             372k1465 k. In General. Most Cited
Cases
Government complied with wiretap statute's oath or
affirmation requirement by submitting a sworn final
version of wiretap application to the court on day of
hearing on the application, although government
also submitted an unsworn courtesy copy to the

court on the day before hearing. 18 U.S.C.A. §
2518(1).

**[10] Telecommunications 372 &#9750;1470**

372 Telecommunications
    372X Interception or Disclosure of Electronic
Communications; Electronic Surveillance
       372X(B) Authorization by Courts or Public
Officers
          372k1470 k. Order or Warrant in General.
Most Cited Cases

**Telecommunications 372 &#9750;1479**

372 Telecommunications
    372X Interception or Disclosure of Electronic
Communications; Electronic Surveillance
       372X(B) Authorization by Courts or Public
Officers
          372k1479 k. Review of Proceedings;
Standing. Most Cited Cases
Wiretap order's failure to identify "the person
authorizing the application" as required by the
wiretap statute did not prejudice defendants, so as
to require suppression of wiretap evidence, where
wiretap applications were authorized by an
appropriate individual within the Department of
Justice and that authorizing individual was
identified by name in the wiretap application. 18
U.S.C.A. § 2518(4)(d).

**[11] Jury 230 &#9750;116**

230 Jury
    230V Competency of Jurors, Challenges, and
Objections
       230k114 Challenge to Panel or Array, and
Motion to Quash Venire
          230k116 k. Grounds. Most Cited Cases

**Jury 230 &#9750;133**

230 Jury
    230V Competency of Jurors, Challenges, and
Objections
       230k124 Challenges for Cause
          230k133 k. Trial and Determination. Most
Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164                                                                                    Page 4

423 F.3d 1164
(Cite as: 423 F.3d 1164)

Potential juror's statements during voir dire about his concerns over his personal safety based on presence of United States marshals in the courtroom did not require a mistrial or a new venire in drug conspiracy trial; any prejudice that may have resulted from the statements was adequately addressed when the district court explained that there were more marshals present than usual because seven defendants were on trial, and admonished jurors not to interpret the existence of the marshals as any indication that violence was about to occur in the courtroom.

**[12] Criminal Law 110 ☞1152(2)**

110 Criminal Law
    110XXIV Review
        110XXIV(N) Discretion of Lower Court
            110k1152 Conduct of Trial in General
                110k1152(2)   k.   Selection   and
Impaneling of Jury. Most Cited Cases

**Jury 230 ☞131(2)**

230 Jury
    230V Competency of Jurors, Challenges, and
Objections
        230k124 Challenges for Cause
            230k131 Examination of Juror
                230k131(2) k. Discretion of Court.
Most Cited Cases

**Jury 230 ☞133**

230 Jury
    230V Competency of Jurors, Challenges, and
Objections
        230k124 Challenges for Cause
            230k133 k. Trial and Determination. Most
Cited Cases
District court has broad discretion in conducting the voir dire examination because it is in the best position to judge the effect which improper statements might have upon a jury; court's ruling on a motion for mistrial based on improper statements during voir dire will therefore be disturbed only on a clear showing of abuse of discretion.

**[13] Criminal Law 110 ☞1152(2)**

110 Criminal Law
    110XXIV Review
        110XXIV(N) Discretion of Lower Court
            110k1152 Conduct of Trial in General
                110k1152(2)   k.   Selection   and
Impaneling of Jury. Most Cited Cases
In reviewing the district court's decision on a motion for mistrial based on improper statements during voir dire, Court of Appeals asks whether the defendant's right to a fair and impartial jury was violated by the potentially prejudicial statement.

**[14] Jury 230 ☞131(13)**

230 Jury
    230V Competency of Jurors, Challenges, and
Objections
        230k124 Challenges for Cause
            230k131 Examination of Juror
                230k131(13) k. Mode of Examination.
Most Cited Cases
District court did not abuse its discretion in declining to question the other members of the panel after potential juror in drug conspiracy case expressed concerns over his personal safety based on presence of United States marshals in the courtroom, where defense counsel did not request questioning of the individual panel members, and expressed a desire to avoid highlighting the exchange to the rest of the panel.

**[15] Constitutional Law 92 ☞268(2.1)**

92 Constitutional Law
    92XII Due Process of Law
        92k256 Criminal Prosecutions
            92k268 Trial
                92k268(2)   Particular   Cases   and
Problems
                92k268(2.1) k. In General. Most
Cited Cases

**Criminal Law 110 ☞868**

110 Criminal Law
    110XX Trial
        110XX(J) Issues Relating to Jury Trial
            110k868 k. Objections and Disposition
Thereof. Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164

Page 5

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

District court did not violate due process by failing to question jury regarding defense counsel's conversation about a gun that one of the jurors overheard during a lunch break, where court took the precautionary step of dismissing the juror and gave defense counsel opportunity to examine the juror, who steadfastly maintained that she had not related the content of the overheard conversation to any of the other jurors. U.S.C.A. Const.Amend. 5.

**[16] Criminal Law 110 ☞1152(2)**

110 Criminal Law
  110XXIV Review
    110XXIV(N) Discretion of Lower Court
      110k1152 Conduct of Trial in General
        110k1152(2) k. Selection and Impaneling of Jury. Most Cited Cases

**Criminal Law 110 ☞1155**

110 Criminal Law
  110XXIV Review
    110XXIV(N) Discretion of Lower Court
      110k1155 k. Custody and Conduct of Jury. Most Cited Cases
Court of Appeals reviews for abuse of discretion the district court's decision on how to handle allegations of juror misconduct or bias.

**[17] Criminal Law 110 ☞622.7(11)**

110 Criminal Law
  110XX Trial
    110XX(A) Preliminary Proceedings
      110k622 Joint or Separate Trials of Codefendants
        110k622.7 Grounds for Severance or Joinder
          110k622.7(11) k. Disparity in Weight of Evidence. Most Cited Cases
Defendant charged with drug offenses arising out of a crack cocaine distribution conspiracy was not prejudiced by district court's denial of his motion for a severance, even assuming that evidence against co-defendants was stronger than the evidence against defendant; jury's acquittal of defendant of conspiracy charge demonstrated that it was capable of separating the evidence against him

from the evidence against his co-defendants, and district court gave a limiting instruction.

**[18] Criminal Law 110 ☞1148**

110 Criminal Law
  110XXIV Review
    110XXIV(N) Discretion of Lower Court
      110k1148 k. Preliminary Proceedings. Most Cited Cases
Court of Appeals reviews the trial court's denial of severance for an abuse of discretion.

**[19] Criminal Law 110 ☞622.7(3)**

110 Criminal Law
  110XX Trial
    110XX(A) Preliminary Proceedings
      110k622 Joint or Separate Trials of Codefendants
        110k622.7 Grounds for Severance or Joinder
          110k622.7(3) k. Prejudice; Fair Trial. Most Cited Cases
In deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a joint trial of co-defendants against the expense and inconvenience of separate trials.

**[20] Criminal Law 110 ☞622.6(4)**

110 Criminal Law
  110XX Trial
    110XX(A) Preliminary Proceedings
      110k622 Joint or Separate Trials of Codefendants
        110k622.6 In General
          110k622.6(4) k. Conspiracy. Most Cited Cases
Preference in a conspiracy trial is that persons charged together should be tried together.

**[21] Criminal Law 110 ☞622.7(3)**

110 Criminal Law
  110XX Trial
    110XX(A) Preliminary Proceedings
      110k622 Joint or Separate Trials of Codefendants

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164                                                                   Page 6

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

110k622.7 Grounds for Severance or Joinder
110k622.7(3) k. Prejudice; Fair Trial. Most Cited Cases
To establish an abuse of discretion in denial of severance, a defendant must make a strong showing of actual prejudice.

**[22] Criminal Law 110 ⚖══622.7(8)**

110 Criminal Law
  110XX Trial
    110XX(A) Preliminary Proceedings
      110k622 Joint or Separate Trials of Codefendants
        110k622.7 Grounds for Severance or Joinder
          110k622.7(8) k. Evidence Admissible Only Against Codefendant; Spillover or Compartmentalization. Most Cited Cases
Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the "spillover effect" from the evidence that was overwhelming or more damaging against the co-defendant than that against the moving party is sufficient to warrant severance; rather, to show prejudice requiring severance, a defendant must show that there is a serious risk that a joint trial would compromise a specific trial right, or prevent the jury from making a reliable judgment about guilt or innocence.

**[23] Conspiracy 91 ⚖══48.1(1)**

91 Conspiracy
  91II Criminal Responsibility
    91II(B) Prosecution
      91k48 Trial
        91k48.1 Questions for Jury
          91k48.1(1) k. In General. Most Cited Cases

**Criminal Law 110 ⚖══1144.13(3)**

110 Criminal Law
  110XXIV Review
    110XXIV(M) Presumptions
      110k1144 Facts or Proceedings Not Shown by Record

110k1144.13 Sufficiency of Evidence
  110k1144.13(2) Construction of Evidence
    110k1144.13(3) k. Construction in Favor of Government, State, or Prosecution. Most Cited Cases

**Criminal Law 110 ⚖══1144.13(5)**

110 Criminal Law
  110XXIV Review
    110XXIV(M) Presumptions
      110k1144 Facts or Proceedings Not Shown by Record
        110k1144.13 Sufficiency of Evidence
          110k1144.13(5) k. Inferences or Deductions from Evidence. Most Cited Cases
Question whether there existed evidence sufficient to establish a single conspiracy is one of fact for the jury to decide; when reviewing the jury's decision, Court of Appeals must view all of the evidence, both direct and circumstantial, in the light most favorable to the government, and all reasonable inferences and credibility choices must be made in support of the jury's verdict.

**[24] Conspiracy 91 ⚖══24(1)**

91 Conspiracy
  91II Criminal Responsibility
    91II(A) Offenses
      91k23 Nature and Elements of Criminal Conspiracy in General
        91k24 Combination or Agreement
          91k24(1) k. In General. Most Cited Cases

**Conspiracy 91 ⚖══24.5**

91 Conspiracy
  91II Criminal Responsibility
    91II(A) Offenses
      91k23 Nature and Elements of Criminal Conspiracy in General
        91k24.5 k. Knowledge and Intent. Most Cited Cases
To prove conspiracy, the government must show: (1) that two or more people agreed to violate the law, (2) that the defendant knew at least the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164                                                                      Page 7

423 F.3d 1164
(Cite as: 423 F.3d 1164)

essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged co-conspirators were interdependent.

**[25] Conspiracy 91 ☞24(2)**

91 Conspiracy
   91II Criminal Responsibility
     91II(A) Offenses
       91k23 Nature and Elements of Criminal Conspiracy in General
         91k24 Combination or Agreement
           91k24(2) k. Single or Multiple Conspiracies. Most Cited Cases
Single conspiracy does not exist solely because many individuals deal with a common central player; what is required is a shared, single criminal objective, not just similar or parallel objectives between similarly situated people.

**[26] Conspiracy 91 ☞24.5**

91 Conspiracy
   91II Criminal Responsibility
     91II(A) Offenses
       91k23 Nature and Elements of Criminal Conspiracy in General
         91k24.5 k. Knowledge and Intent. Most Cited Cases

**Conspiracy 91 ☞47(2)**

91 Conspiracy
   91II Criminal Responsibility
     91II(B) Prosecution
       91k44 Evidence
         91k47 Weight and Sufficiency
           91k47(2) k. Circumstantial Evidence. Most Cited Cases
Defendant charged with conspiracy need not have knowledge of all the details or all the members of the conspiracy and may play only a minor role in the conspiracy; government need only prove by direct or circumstantial evidence that the defendant knew at least the essential objectives of the conspiracy, and the defendant knowingly and voluntarily became part of it.

**[27] Conspiracy 91 ☞47(12)**

91 Conspiracy
   91II Criminal Responsibility
     91II(B) Prosecution
       91k44 Evidence
         91k47 Weight and Sufficiency
           91k47(3) Particular Conspiracies
             91k47(12) k. Narcotics and Dangerous Drugs. Most Cited Cases
Evidence that defendant was a major source of supply for crack cocaine distribution operation, that he traveled to another state for purpose of obtaining large quantities of drugs for that organization, discussed the conspiracy's drug sales with its leader, and that provided equipment and assistance in converting powder cocaine to crack cocaine was sufficient to establish that defendant was part of charged conspiracy to distribute and possess with intent to distribute crack cocaine, despite evidence that some of the drugs in the conspiracy may have come from other suppliers. Comprehensive Drug Abuse Prevention and Control Act of 1970, §§ 401(a)(1), (b)(1)(A)(iii), 406, 21 U.S.C.A. §§ 841(a)(1), (b)(1)(A)(iii), 846.

**[28] Conspiracy 91 ☞44.2**

91 Conspiracy
   91II Criminal Responsibility
     91II(B) Prosecution
       91k44 Evidence
         91k44.2 k. Presumptions and Burden of Proof. Most Cited Cases
Evidence that a defendant is a major supplier of drugs is sufficient to infer knowledge of the broader conspiracy.

**[29] Conspiracy 91 ☞24(2)**

91 Conspiracy
   91II Criminal Responsibility
     91II(A) Offenses
       91k23 Nature and Elements of Criminal Conspiracy in General
         91k24 Combination or Agreement
           91k24(2) k. Single or Multiple Conspiracies. Most Cited Cases
Existence of multiple drug dealers and suppliers

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164                                                                          Page 8

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

does not show the existence of separate conspiracies as long as the activities are aimed at a common goal.

**[30] Conspiracy 91 ☞47(12)**

91 Conspiracy
    91II Criminal Responsibility
        91II(B) Prosecution
            91k44 Evidence
                91k47 Weight and Sufficiency
                    91k47(3) Particular Conspiracies
                        91k47(12) k. Narcotics and Dangerous Drugs. Most Cited Cases
Evidence that defendant had purchased crack cocaine from leader of drug conspiracy at least five to ten times, had been fronted drugs on credit in exchange for payment from proceeds realized on sale, discussed possibility of selling drugs in a particular location, and had discussed other dealers in the leader's distribution network was sufficient to establish that defendant was part of charged conspiracy to distribute and possess with intent to distribute crack cocaine. Comprehensive Drug Abuse Prevention and Control Act of 1970, §§ 401(a)(1), (b)(1)(A)(iii), 406, 21 U.S.C.A. §§ 841(a)(1), (b)(1)(A)(iii), 846.

**[31] Telecommunications 372 ☞1018(4)**

372 Telecommunications
    372III Telephones
        372III(I) Offenses and Prosecutions
            372k1015 Prosecutions
                372k1018 Evidence
                    372k1018(4) k. Weight and Sufficiency. Most Cited Cases
Evidence that defendant's telephone conversation with leader of drug conspiracy facilitated his girlfriend's possession of more that five grams of crack cocaine was sufficient to support conviction for using a telephone to facilitate a drug felony, despite evidence that the girlfriend and others smoked the crack cocaine instead of distributing it to others as defendant had promised. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 403(b), 21 U.S.C.A. § 843(b).

**[32] Criminal Law 110 ☞1030(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
            110XXIV(E)1 In General
                110k1030 Necessity of Objections in General
                    110k1030(1) k. In General. Most Cited Cases
Under the plain error test, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) affects substantial rights; if all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

**[33] Jury 230 ☞34(8)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
                230k34(5) Sentencing Matters
                    230k34(8) k. Drug Offenses. Most Cited Cases
    (Formerly 230k34(1))

**Jury 230 ☞34(10)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
                230k34(5) Sentencing Matters
                    230k34(10) k. Weapons. Most Cited Cases
    (Formerly 230k34(1))
District court did not commit *Booker* error in sentencing defendants for drug offenses when it made additional findings regarding one defendant's possession of a firearm and quantities of drugs attributable to second defendant for a determination of the sentencing range under Sentencing Guidelines, where such findings did not increase defendants' sentences, which were the minimum

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

permitted by statute given the quantity of drugs found by the jury beyond a reasonable doubt and defendants' prior convictions. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 401(b)(1)(A)(iii), 21 U.S.C.A. § 841(b)(1)(A)(iii).

**[34] Jury 230 ⟨⟩34(7)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
                230k34(5) Sentencing Matters
                    230k34(7) k. Particular Cases in General. Most Cited Cases
    (Formerly 230k34(1))
District court's findings at sentencing regarding fact of defendant's prior convictions did not implicate the Sixth Amendment. U.S.C.A. Const.Amend. 6.

**[35] Jury 230 ⟨⟩34(8)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
                230k34(5) Sentencing Matters
                    230k34(8) k. Drug Offenses. Most Cited Cases
    (Formerly 230k34(1))
Sixth Amendment did not require jury to determine whether defendant's drug offense and prior offenses constituted felonies that were crimes of violence or controlled substance offenses for sentencing purposes. U.S.C.A. Const.Amend. 6.

**[36] Jury 230 ⟨⟩34(8)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
                230k34(5) Sentencing Matters
                    230k34(8) k. Drug Offenses. Most Cited Cases
    (Formerly 230k34(1))

District court's finding that defendant was at least 18 years old at the time he committed drug offense in imposing the career offender provision of the Sentencing Guidelines did not violate defendant's Sixth Amendment rights, where his sentence was below the maximum authorized by the facts found by the jury. U.S.C.A. Const.Amend. 6; U.S.S.G. § 4B1.1, 18 U.S.C.A.

**[37] Criminal Law 110 ⟨⟩1035(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
            110XXIV(E)1 In General
                110k1035 Proceedings at Trial in General
                    110k1035(1) k. In General. Most Cited Cases
District court's non-constitutional *Booker* error in applying the Sentencing Guidelines in a mandatory fashion when sentencing defendant for a drug offense did not affect defendant's substantial rights, and thus could not be corrected on appeal as plain error, where district court exercised its discretion in departing downward based on defendant's substantial assistance, resulting in sentence well below the bottom end of the Guidelines range. U.S.S.G. § 5K1.1, 18 U.S.C.A.

**[38] Jury 230 ⟨⟩34(8)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
                230k34(5) Sentencing Matters
                    230k34(8) k. Drug Offenses. Most Cited Cases
    (Formerly 230k34(1))
District court committed non-constitutional *Booker* error by applying Sentencing Guidelines in a mandatory fashion in sentencing defendant for use of a telephone to facilitate a drug trafficking crime, although court imposed statutory maximum sentence that was well below bottom end of the Guidelines range, since court could have imposed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164

Page 10

423 F.3d 1164
(Cite as: 423 F.3d 1164)

an even lower sentence under a purely discretionary Guidelines system. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 403(b), 21 U.S.C.A. § 843(b); U.S.S.G. § 5G1.1, 18 U.S.C.A.

[39] Criminal Law 110 ⚖️1035(1)

110 Criminal Law
   110XXIV Review
      110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
         110XXIV(E)1 In General
            110k1035 Proceedings at Trial in General
               110k1035(1) k. In General. Most Cited Cases
District court's non-constitutional *Booker* error in applying Sentencing Guidelines in a mandatory fashion when sentencing defendant for use of a telephone to facilitate a drug trafficking crime did not affect defendant's substantial rights, and thus could not be corrected on appeal as plain error, where defendant was given a sentence substantially below the normal Guidelines range, and there was no evidence that court would have decided to impose an even lower sentence under an advisory Guidelines scheme.

[40] Criminal Law 110 ⚖️1166(1)

110 Criminal Law
   110XXIV Review
      110XXIV(Q) Harmless and Reversible Error
         110k1166 Preliminary Proceedings
            110k1166(1) k. In General. Most Cited Cases
Constitutional *Booker* error arising when district court finds facts that increases defendant's sentence under the Sentencing Guidelines will only be found harmless if the government can demonstrate beyond a reasonable doubt that the error did not affect the defendant's substantial rights.

[41] Criminal Law 110 ⚖️1166(1)

110 Criminal Law
   110XXIV Review
      110XXIV(Q) Harmless and Reversible Error
         110k1166 Preliminary Proceedings

            110k1166(1) k. In General. Most Cited Cases

Jury 230 ⚖️34(8)

230 Jury
   230II Right to Trial by Jury
      230k30 Denial or Infringement of Right
         230k34 Restriction or Invasion of Functions of Jury
            230k34(5) Sentencing Matters
               230k34(8) k. Drug Offenses. Most Cited Cases
         (Formerly 230k34(1))
Constitutional *Booker* error occurring when district court sentenced defendant under the Sentencing Guidelines on basis of drug quantity it found at sentencing affected defendant's substantial rights and thus was not harmless; other than fact that drug quantity found by the district court exactly split the difference between the quantities advocated by the government and the defendant, it was unclear from the record how the district court arrived at that finding. U.S.C.A. Const.Amend. 6.

Matthew C. Golla, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, John T. Carlson, Research and Writing Attorney, with him on the briefs), Denver, CO, for Defendant-Appellant Willie James Small.
Michael G.A. Williams, Denver, CO, for Defendant-Appellant Alvin Green, a/k/a/ Mel Dog.
John Henry Schlie, Law Office of John Henry Schlie, P.C., Centennial, CO, for Defendant-Appellant Theolian Lloyd.
Wade H. Eldridge, Wade H. Eldridge, P.C., Denver, CO, for Defendant-Appellant George Melvin Murray.
Robert T. McAllister, Robert T. McAllister, P.C., Denver, CO, for Defendant-Appellant Tommy Jones.
James C. Murphy, Assistant United States Attorney ( John W. Suthers, United States Attorney, William J. Leone, Acting United States Attorney, Kathleen Tafoya, Assistant United States Attorney, Guy Till, Assistant United States Attorney, with him on the briefs), Denver, CO, for Plaintiff-Appellee.
Ronald Gainor, Longmont, CO, adopted

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164                                                    Page 11

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

Defendant-Appellant Willie Smalls' brief, for
Defendant-Appellant Sammy Lee Woods.
Dennis W. Hartley, Dennis W. Hartley, P.C.,
Colorado Springs, CO, for Defendant-Appellant
Dwayne Van Dyke.
Frank Moya, Denver, CO, for Defendant-Appellant
Dawan Eugene Smith.

Before MURPHY, McWILLIAMS, and HARTZ,
Circuit Judges.MURPHY, Circuit Judge.

## I. INTRODUCTION

Defendants-appellants Willie Small, Alvin Green,
Theolian Lloyd, Sammy Lee Woods, George
Murray, and Tommy Jones were convicted in
United States District Court for the District of
Colorado of various drug offenses arising out of a
large-scale crack cocaine distribution conspiracy
operating         in        the        Denver        area.
Defendants-appellants Dwayne Van Dyke and
Dawan Eugene Smith pleaded guilty to offenses
arising  out  of  the  same  drug  conspiracy.
Appellants now appeal various aspects of their
convictions and sentences. This court previously
consolidated the appeals of Small (No. 04-1188),
Green (No. 04-1157), Lloyd (No. 04-1148), Woods
(No. 04-1168), Murray (No. 04-1161), and Van
Dyke (No. 04-1201). We now further consolidate
the appeals of Jones (No. 03-1513) and Smith (No.
04-1503) with the above cases and **affirm** the
convictions and sentences of all appellants except
for Murray. As to Murray, this court remands the
case for resentencing in accordance with the
Supreme Court's opinion in *United States v. Booker,*
543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621
(2005).[FN1]

> FN1. After examining the briefs and
> appellate record, this panel has determined
> unanimously to grant the parties' requests
> in  *United  States  v.  Van  Dyke*  (No.
> 04-1201), and *United States v. Smith* (No.
> 04-1503), for a decision on the briefs
> without oral argument. Fed. R.App. P.
> 34(f); 10th Cir. R. 34.1(G). As to these
> two appeals, the case is therefore ordered
> submitted without oral argument.

## *1171 II. BACKGROUND

In September 2000, FBI Special Agent Todd
Wilcox of the Metro Gang Task Force ("Task Force
") received information from an informant that
defendant-appellant Willie Small was engaged in
the large-scale distribution of crack cocaine in the
Denver metropolitan area. Between September
2000 and January 2001, Wilcox directed the
informant to conduct nine controlled purchases of
crack cocaine from Small and his associates while
wearing   a   body   wire.   Wilcox   utilized   the
informant until her identity was revealed in an
unrelated case. The informant was then moved out
of state and no longer used in the investigation.

Over the next several months, the Task Force
continued to investigate Small's organization using
other  investigative  techniques,  including  visual
surveillance, video cameras, pen registers, and
trap-and-trace devices. On March 28, 2001,
Wilcox applied for a wiretap on Small's cellular
phone pursuant to Title III of the Omnibus Crime
Control and Safe Streets Act of 1968, 18 U.S.C. §§
2510-2522. The affidavit in support of the wiretap
application consisted of an exhaustive 100-page
summary of the investigation, setting forth the
reasons why the investigative techniques used by
the Task Force up to that point were unable to meet
the investigation's objectives. A United States
district judge granted the application, and on April
20, 2001, also authorized a second wiretap on
Small's home phone. The district judge
subsequently extended the cellular phone wiretap
twice on April 27, 2001, and May 25, 2001, and
extended the home telephone wiretap once on May
18, 2001. The wiretaps remained in place until the
close of the investigation in June, 2001. The FBI
then simultaneously executed numerous search and
arrest warrants against suspected members of the
drug conspiracy.

Small, Green, Lloyd, Woods, Murray, Jones, Van
Dyke, Smith, and nineteen other co-defendants were
charged  in  a  seventy-seven  count  second
superseding indictment filed in United States
District Court for the District of Colorado. Count I
of the indictment charged most of the defendants,
including all appellants in this case, with conspiracy

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 12

to distribute and possess with intent to distribute crack cocaine weighing more than fifty grams, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), and 21 U.S.C. § 846. The remainder of the counts charged individual defendants with various other drug, weapons, and money laundering offenses.

Defendants moved to suppress the evidence obtained pursuant to the court-ordered wiretaps. After five days of evidentiary hearings, the district court denied the motions. Most of the defendants, including appellants Van Dyke and Smith, then pleaded guilty in exchange for a dismissal of some of the charges against them. Van Dyke pleaded guilty to possession with intent to distribute more than fifty grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). He was sentenced to 175 months' imprisonment. Smith pleaded guilty to use of a telephone to facilitate a drug felony in violation of 21 U.S.C. § 843(b). He was sentenced to forty-eight months' imprisonment, the statutory maximum sentence.

Green, Lloyd, Woods, Murray, and other co-defendants filed motions for separate trials in the district court. After a hearing, the court denied the motions. The court did, however, order a separate trial for Jones. Jones waived his right to a trial by jury and was tried in a two-day bench trial at which the government introduced evidence from the wiretaps on Small's telephones. The court found Jones not guilty of conspiracy, but guilty of using a telephone to facilitate a drug felony, and *1172 aiding and abetting the distribution of more than five grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), and 18 U.S.C. § 2. He was sentenced to concurrent 140-month and 48-month sentences.

The remaining seven defendants, including appellants Small, Green, Lloyd, Woods, and Murray, were tried together in a jury trial lasting from September 22, 2003, to November 13, 2003. Small, Green, Lloyd, and Woods were convicted on Count I as well as on other drug charges. Murray was acquitted on Count I but convicted of distribution and possession with intent to distribute more than five grams of crack cocaine in violation

of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), and use of a telephone to facilitate a drug felony.

Because Small and Green each had at least two prior felony drug convictions, they were sentenced to mandatory terms of life imprisonment on Count I pursuant to 21 U.S.C. § 841(b)(1)(A). Lloyd and Woods each had one prior felony drug conviction and were sentenced to the statutory minimum term of 240 months' imprisonment on Count I pursuant to the same provision. All four of these defendants also received concurrent sentences on their remaining counts of conviction. Murray, who was acquitted on Count I, was sentenced to concurrent sentences of 150 months and 48 months.

### III. DISCUSSION

#### A. Motions to Suppress

##### 1. *Franks* Challenges

To obtain a wiretap pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, the government must follow special procedures set forth in 18 U.S.C. §§ 2510-2522. *See United States v. Green,* 175 F.3d 822, 828 (10th Cir.1999). One requirement of the statute is that the government must present a written application to a federal judge establishing that the wiretap is necessary. 18 U.S.C. § 2518(1); *Green,* 175 F.3d at 828. Before granting the application, the judge must find that the affidavit establishes necessity by showing that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c); *Green,* 175 F.3d at 828.

[1][2] Small, Green, Lloyd, Woods, and Jones argue that the issuing judge's finding of necessity was tainted by inaccurate and misleading statements in Special Agent Wilcox's wiretap application and supporting testimony. This court reviews alleged misrepresentations and omissions in a wiretap application under the standard for challenges to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164

Page 13

423 F.3d 1164
(Cite as: 423 F.3d 1164)

search warrants developed by the Supreme Court in *Franks v. Delaware,* 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *See Green,* 175 F.3d at 828. Under this standard, the defendant must show that any misstatements were made knowingly, intentionally, or recklessly, and that the erroneous information was material to the district court's finding of necessity. *Id.* The defendant bears the burden of overcoming the presumption that the district court's wiretap authorization was proper. *Id.* at 828-29.

In response to appellants' allegations of inaccuracies, the district court held five days of hearings before issuing a written order denying the motions. *See United States v. Small,* 229 F.Supp.2d 1166, 1208 (D.Colo.2002). The court concluded that the allegedly false statements identified by appellants were either not inaccurate or were not made intentionally or with reckless disregard for the truth. *Id.* at 1191-1203. The court further concluded that the identified statements were not material to the issuing court's finding of necessity. *Id.* This court reviews the district court's *1173 factual findings for clear error and its legal rulings de novo. *Green,* 175 F.3d at 829.

**a. Small's Profits from Drug Sales**

[3] Appellants first argue that Wilcox's affidavit incorrectly stated that Small earned $18,000 per week selling crack cocaine. Wilcox derived the $18,000 figure from a taped conversation between Small and the confidential informant in which he believed he heard that figure used. At the suppression hearing, however, Wilcox admitted that his understanding of the conversation was incorrect. The government now concedes that what Small actually said was, if he could sell eighteen ounces of crack cocaine per week, he could make $7000.[FN2]

> FN2. Appellants challenge even this reduced figure, arguing that the tape is insufficiently clear to understand what Small actually said.

Appellants contend that the error must have been intentional or reckless because the tape was so unclear that Wilcox could not possibly have believed that he understood what Small was saying. After listening to the recorded conversation, the district court concluded that the tape was "well-nigh incomprehensible." *Small,* 229 F.Supp.2d at 1191 n. 7.[FN3] The court further found, however, that Wilcox verified the contents of the conversation with the confidential informant prior to including the information in the affidavit. *Id.* at 1191. The court therefore concluded that Wilcox "was, at most, negligent or committed an innocent mistake by including the $18,000 figure." *Id.* In light of the fact that Wilcox's understanding of the tape's meaning was corroborated by the informant's first-hand account of the conversation, the district court's conclusion that Wilcox merely committed an innocent mistake was not clearly erroneous.

> FN3. Appellants nevertheless admit that "it is perhaps possible to hear Mr. Small say something like 'I do 18 a week.'"

Appellants attempt to discredit Wilcox's explanation by pointing to the testimony of the confidential informant, who stated she could not remember verifying the $18,000 figure with Wilcox. The mere fact that the informant could not remember the exact content of her conversation with Wilcox, however, does not in any way contradict Wilcox's testimony. The informant instead attributed her inability to recall her conversation with Wilcox to the significant time that had elapsed since that meeting. Furthermore, the district court found Wilcox's testimony credible, and declined the government's offer to present the testimony of two police officers who witnessed the informant's conversation because it concluded that such testimony was unnecessary. Credibility determinations are uniquely "within the province of the district court" and are not subject to question here. *United States v. Jurado-Vallejo,* 380 F.3d 1235, 1238 (10th Cir.2004) (quotation omitted). [FN4]

FN4. Appellants stress that Wilcox did not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164                                                                                    Page 14

423 F.3d 1164
(Cite as: 423 F.3d 1164)

remove the erroneous $18,000 figure before submitting his affidavit for the second wiretap and the affidavits for extensions of both the first and second wiretaps, despite the fact that the evidence gathered by that time did not support the assertion that Small was distributing such large quantities of crack cocaine. The district court found, however, that Wilcox's failure to remove the figure was neither intentional nor reckless. Wilcox stated in his affidavits in support of the wiretap extensions and testified at the suppression hearing that Small had complained that he was experiencing a slowdown in his business. For this reason, it would not have been surprising to see a smaller than expected quantity of drugs being dealt by Small. Appellants cite no evidence to disprove the veracity of Wilcox's explanation. Accordingly, the district court's finding was not clearly erroneous.

Appellants further argue that Wilcox misled the district court by representing *1174 that the size of Small's drug organization had been corroborated by the confidential informant's controlled purchases of crack cocaine. Appellants cite the following exchange that occurred in an *in camera* meeting regarding the application for the first wiretap order:

THE COURT: What you indicate in this affidavit is that this is a very large operation involving literally millions of dollars.

AGENT WILCOX: Based on what he has told our informant, which is corroborated by the amount of crack that we have purchased using the confidential informant, he's on parole, and he's still generating a whole lot of money distributing crack cocaine.

Appellants argue that Wilcox's response to the court's question suggested that the informant's purchases of crack cocaine corroborated the fact that Small's drug organization "involved literally millions of dollars," when in fact the informant purchased a much smaller amount of drugs from Small.

Appellants' interpretation of Wilcox's statement is not supported by the record. Wilcox told the

district court only that the informant's controlled purchases corroborated that Small was generating " a whole lot of money" distributing crack cocaine, a fact that was undoubtedly true. *See Small,* 229 F.Supp.2d at 1199 (concluding that Small was "a large scale distributor of crack cocaine"). Wilcox never claimed that the informant personally purchased huge quantities of drugs from Small, and any such inference from Wilcox's statements would have been unwarranted. In fact, the affidavit set forth the specific quantities of crack cocaine purchased by the informant and the district court was therefore fully able to evaluate the extent to which the purchases corroborated the size of Small's drug organization. Because nothing in Wilcox's statement was false, the district court did not err in denying the motion to dismiss on this ground.[FN5]

> FN5. Jones also argues that the affidavit deceptively omitted the fact that asset searches did not reveal substantial assets in Small's name. As noted by the district court, however, the affidavit accurately mentions the only result of an asset search involving Small, which was the information relating to the original purchase value of Small's Mercedes-Benz. Jones does not identify any other asset searches conducted by the government that were omitted from the affidavit.

**b. The Value of Small's Mercedes-Benz**

[4] Appellants argue that Wilcox's affidavit misleadingly alleged that Small's 1992 Mercedes-Benz had "an original purchase price of $93,500." Although appellants concede that this statement was literally true, they claim it was misleading because Small purchased the car used and on credit for significantly less than that amount. The affidavit, however, noted that the car was a 1992 model year, so any reasonable reader would have assumed that it was no longer worth its original purchase price at the time the affidavit was filed in 2001. Furthermore, there is no reason to think that the price Small originally paid for his car was in any way material to the district court's finding that the wiretap was necessary. The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164                                                        Page 15

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

identified statement in the affidavit merely related the results of FBI records checks related to Small. The district court therefore did not err in rejecting this argument.

### c. Threats to the Informant's Safety

[5] Appellants next argue that Wilcox misled the court into believing that the confidential informant was physically at risk from Small. They cite the following in-chambers exchange:
*1175 THE COURT: Is there actual physical danger to your-to your informant or to the people that are involved here that you would hope to use as confidential sources?
AGENT WILCOX: Definitely. The one confidential informant has been moved out of state, so at least temporarily, for now, nobody knows where he is-or she is. But as stated in the affidavit, Willie Small told the informant that-or words to the effect that why he only deals with a close-knit group of people is because, you know, he's-he's been arrested before and he wants to know of the person, whoever it is, that may, you know, inform on him. And the implication was so he would know who they are so he could do something about it.

Appellants claim that Wilcox's statements suggested that the informant was moved out of state due to threats from Small, when in fact she was moved for reasons unrelated to the Small case.

The affidavit, however, is not misleading because it clearly states that the informant was moved because her identity had been disclosed in a separate case. Nothing in Wilcox's statements in chambers contradicts the affidavit on this point. Nor did Wilcox ever state or imply that there were any actual threats from Small against the informant. His statement to the judge was limited to an assertion that Small had told the informant he had been arrested before, and that if anyone informed on him he wanted to know who that person was. The fact that Small made this statement was also contained in the affidavit and is not disputed by appellants. Wilcox interpreted Small's statement as an implied threat against anyone who informed against him, but the district court, supplied with all

relevant information, was free to disagree with Wilcox's interpretation.

Appellants contend Wilcox's statement was contradicted by the informant's later testimony that she did not feel threatened by Small. Although the informant did testify to this effect, she also recognized that she would have been in danger if her identity as an informant was ever disclosed to Small. Based on this testimony, the district court concluded:
While [the informant] denied having received a specific threat of actual harm from Defendant Small or his associates during the time she was an informant, she also indicated she had significant general fear that someone, *including* Defendant Small and his associates, might seek to harm her if they discovered she was an informant. Indeed, so great was [the informant's] concern about possible recriminations or harm that she was the one to initiate a discussion of the topic with Government agents.

*Small,* 229 F.Supp.2d at 1196 (citation omitted). The district court's conclusion on this point was not clearly erroneous, and the court therefore did not err in concluding that Wilcox's statements were neither deceptive nor misleading.

### d. The Feasibility of Introducing an Undercover Agent or Informant

[6] Jones argues that the government exaggerated the difficulty of introducing an undercover agent or a second informant into Small's drug organization. In particular, Jones argues that (1) Wilcox failed to inform the court that the confidential informant had known Small for several years prior to the investigation and therefore could have been used to introduce an undercover agent or informant to Small; and (2) the affidavit did not inform the court that African-American officers could have been used to infiltrate Small's organization. Jones contends that these alleged omissions undermine the government's showing of necessity because they falsely *1176 imply that traditional investigative techniques would have been ineffective.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164

Page 16

423 F.3d 1164
(Cite as: 423 F.3d 1164)

[7] In his first affidavit, Wilcox stated that he had considered the possibility of placing an undercover agent, but rejected this possibility because any evidence obtained would have been duplicative of evidence gathered by the confidential informant. As noted by the district court, "[d]espite [the informant's] dealings with the inner circle of Defendant Small's Organization, [she] was not able to describe the full scope of the Organization nor was she able to provide investigators with any knowledge of the Organization's suppliers." *Id.* at 1181. The government is not required to attempt to introduce other agents or informants in a case where this technique is unlikely to produce any additional evidence. *See United States v. Bennett,* 219 F.3d 1117, 1122 (9th Cir.2000) (noting that the wiretapping statute "does not mandate the indiscriminate pursuit to the bitter end of every non-electronic device ... to a point where the investigation becomes redundant or impractical" (quotation omitted)).

In addition, the affidavit stated that Small was reluctant to engage in drug transactions with people he did not know, and once became angry when a third party attempted to introduce him to a stranger. According to Wilcox, the informant told him "it was common knowledge in the dope community that if you purchase narcotics from Small and want to continue purchasing narcotics from him you don't bring anyone new to meet with him." For this reason, when the government asked the confidential informant whether she would be willing to introduce an undercover agent or additional informant to Small, she refused to do so. Jones has failed to establish that the identified omissions from the affidavit in any way undermine the government's position that introducing another officer or informant would have been both unnecessary and unreasonably difficult.

Jones further argues that the affidavit falsely stated that two members of the conspiracy, Dachaun Davis and Keyonna Davis, could not be "flipped" because they were Small's children, when in fact they were not his children. The district court addressed this argument and concluded that it was specious. *Small,* 229 F.Supp.2d at 1198. As noted by the district court, Wilcox informed the judge prior to issuance

of the first wiretap order that although Small referred to Dachaun and Keyonna Davis as his son and daughter, he did not specifically know the nature of their relationship with Small. The court further noted that "the record is replete with instances where Defendant Small referred to Dachaun and Keyonna Davis as his son and daughter." *Id.* Jones does not attempt to explain how the district court's findings on this point were clearly erroneous.

### e. Omission of Certain Evidence

[8] Jones argues that the affidavit omitted the results of several additional investigative techniques used by the government. He contends that the affidavit: (1) failed to report any of the results or lack of results obtained from the use of video surveillance of the area outside Small's home; and (2) omitted the names of twenty individuals identified through the use of the pen register and trap-and-trace devices. He also contends that the affidavit falsely stated that trash runs could not be employed in the investigation because "[s]urveillance has not seen any of the known participants in the Small organization actually take the trash to one of the dumpsters," when in fact surveillance video revealed one instance in which Small discarded trash in a dumpster.

Jones fails to identify any evidence obtained or potentially obtainable from these *1177 investigative techniques that would have obviated the need for a wiretap. Wilcox's affidavit asserted that surveillance techniques, although useful, were insufficient to identify all the members of the drug conspiracy or to locate Small's suppliers. It further asserted that pen registers and trap-and-trace devices were of limited usefulness because they could not identify the parties to the conversation or differentiate between legitimate calls and calls for criminal purposes. Finally, the affidavit stated that trash runs were considered and rejected because finding traces of narcotics in the trash, the most likely kind of evidence to be obtained from this investigative technique, "would not provide any additional useful information that would lead to the full nature and scope of the drug conspiracy."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164                                                               Page 17

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

Jones does not challenge the affidavit's asserted limitations on the utility of any of these investigative techniques. He has therefore failed to demonstrate that the alleged omissions and inaccuracies in any way undermined the district court's finding of necessity.

### 2. Other Challenges to the Wiretap Application

#### a. Oath or Affirmation Requirement

The wiretap statute requires that an application for a wiretap order "shall be made in writing upon oath or affirmation." 18 U.S.C. § 2518(1). Defendant-appellant George Murray argues that the wiretap application did not conform to this requirement because the government submitted an unsworn courtesy copy of the materials in support of the application to the authorizing judge the day before the scheduled hearing on the application. The final version was submitted to the judge at the hearing the following day. Murray alleges that in approving the wiretap application, the authorizing judge relied on the unsworn courtesy copy rather than the final version of the application. He argues that the judge's reliance on the unsigned courtesy copy does not satisfy the "oath or affirmation" requirement of § 2518(1). *See id.* § 2518(10)(a)(ii).

[9] Murray's contention is meritless. Given that the government fully complied with the oath or affirmation requirement by submitting a sworn final version of the application, it is irrelevant that the government also submitted an unsworn courtesy copy to the court. Furthermore, Murray's contention that the judge relied exclusively on the prior unsworn version in authorizing the wiretap is not supported by the record. Although the judge did review the courtesy copy of the application prior to the hearing, the judge also established at the hearing that the two versions were substantially identical. In the few instances in which the versions were different, the judge carefully reviewed the modifications prior to making a decision on the order. The record is therefore clear that the district court relied on the final version of the application in granting the wiretap order.[FN6]

FN6. Murray notes that the courtesy copy is not in the record and alleges that it was shredded by the government. He appears to insinuate that in doing so the government may have concealed differences between the two versions of the wiretap application that were never revealed to the issuing court. As the district court noted, however, Murray has not explained how the final version of the application was materially different from the courtesy copy. *See United States v. Small,* 229 F.Supp.2d 1166, 1205 (D.Colo.2002). In light of the district court's determination that the two versions of the application were substantially identical, and Murray's failure to demonstrate that the court's determination was clearly erroneous, it is immaterial that the courtesy copy is not in the record. In addition, Murray has not shown that the final version of the application was in any way legally deficient, and has therefore failed to demonstrate that any modifications theoretically concealed by the government could have been material to the district court's finding of necessity.

### *1178 b. Omission of the Authorizing Official

[10] Small argues in his opening brief that the wiretap statute requires suppression of the wiretap evidence because the order granting the wiretap did not identify "the person authorizing the application" as required by the wiretap statute. 18 U.S.C. § 2518(4)(d).[FN7] Instead of naming a particular person as required by the statute, the district court's wiretap order noted only that the necessary approval had come from "a duly designated official of the [United States Department of Justice] Criminal Division." In his reply brief, Small concedes that this court's decision in *United States v. Radcliff,* 331 F.3d 1153, 1160 (10th Cir.2003). In *Radcliff,* this court held that a failure to specifically name the authorizing official at the Department of Justice did not warrant suppression of wiretap evidence because such an error "constituted a technical defect that did not undermine the purposes of the statute or prejudice

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164

Page 18

423 F.3d 1164
(Cite as: 423 F.3d 1164)

Defendant." *Id.* As in *Radcliff,* there is no dispute here that the applications were authorized by an appropriate individual within the Department of Justice and that this authorizing individual was identified by name in the wiretap application. [FN8] The failure to name the official in the wiretap order itself therefore did not result in prejudice to appellants. For this reason, Small is correct that *Radcliff* effectively forecloses this argument on appeal.

FN7. The statute requires that the wiretap application must be authorized by "[t]he Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in the Criminal Division specially designated by the Attorney General." 18 U.S.C. § 2516(1).

FN8. The application identifies the authorizing official as John C. Keeney, Deputy Assistant Attorney General of the Criminal Division, who had been specially designated by the Attorney General.

**B. Jury Issues**

**1. Motion for Mistrial or to Strike the Venire**

[11] Green, Lloyd, and Murray argue that the district court erred in denying defendants' motion for a mistrial or for a new venire based on the statements of a potential juror during voir dire. In response to the court's question to the member of the venire about whether he could be fair and impartial to both sides, the venireperson responded " [p]erhaps." He then stated:
The drug industry is full of violence, tremendous amounts of violence, people are killed every day in this country due to [ ] the drug industry and [ ] its attributes, if you will.
I also know that we have seven defendants here that have been-I make no judgment about them at this

point, but that was culled down from 27, I believe, so there's a larger group....
... I walked into this courtroom, I noticed there's about ten large burly U.S. marshals in attendance with earphones, and I assume they're probably armed. So my concern is over security. My security and the security of my family.... So I am going to have a concern if I feel at all that ... my family could be put in jeopardy over my decisions in this case. I am not prejudging anybody in the case, but if I were to judge and make a judgment that some people might not be happy with, I am concerned about safety.

*1179 The district court asked the venireperson if he was saying that he was "concerned that a U.S. marshal may pull out a gun and use it in the courtroom." The venireperson answered:
I'm really not concerned about my safety here. But I am somewhat concerned about my safety leaving this. You know, people know me, they see me, they can, you know, they can certainly identify me, they can certainly find out where I live, what I do, where I work, that sort of thing. I know that my concern revolves around the fact that I know the drug industry is a huge industry, there's a lot of money that changes hands in the drug industry.
There's a huge amount of violence, not just addicts, but people within the drug-selling industry shooting each other. And creating, you know, hugely violent situations. It may be the largest creator or cause of violence in our country today, and I don't want to become part of it, to be quite honest with you.

The court then reminded the venireperson about the presumption of innocence, and inquired whether he had "already decided that the defendants are guilty, even before [hearing] any evidence." The venireperson replied:
Absolutely not. If there is a[n] effect from my concerns, the effect would be probably to decide more in the favor of the defense in that I wouldn't want to tick somebody off who might, you know, decide to act upon that situation.
I don't know these gentlemen. All I'm telling you, Your Honor, is that I know of the drug industry, I

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

know it is huge, and I know it is violent. And I'm looking, I guess, for perhaps you to tell me that, you know, this doesn't happen, these kinds of things don't happen, ... people don't go after jurors if they are found guilty by a jury.

The court responded:
Well, it's not my role to assuage anyone's concerns. If you have concerns, you have them....
... But I'm concerned that you may have some paranoia here that I can't address and I'm concerned that you may somehow use that in an unfair way to reach a result not based on the evidence. The role of a juror is to base a decision solely on the evidence and to put aside all these factors that you apparently have in your head. Can you put those factors aside and base your decision in this case solely and exclusively on the evidence you hear in court and my instructions of law?

The venireperson replied: "I believe so. And if I became concerned that I'm getting some kind of indications that my safety might be at risk, I would tell you about that at that time." The court then stated:
I want you to tell me this because if you don't feel comfortable sitting in an environment such as this and if that discomfort somehow leads you to believe you couldn't be fair and impartial, I want you to tell me that. And I guess that's why I'm pushing you a little more on this.

To this, the venireperson answered: "I think at this point, yes, I can be fair and impartial." The district court then moved on to other issues.

Based on this exchange, defense counsel moved for a mistrial and to strike the venire on the ground that the potential juror's statements had "tainted [the] entire pool." The district court denied the motion. The court did agree, however, to defendants' request to explain the presence of the marshals in the courtroom to the venire. The court noted for the venire that "[t]he reason there are more U.S. marshals present than most trials is that we have seven defendants on trial," and admonished that " the existence of the U.S. *1180 marshals should not

be construed, interpreted by any of you as any indication that there's violence about to occur in the courtroom, or that there's anything inherently violent about these defendants or that there's anything improper about it." Appellants argue that the district court erred in denying the motion and in failing to inquire regarding the effect of the venireperson's statement on the remaining panel members.

[12][13] The district court "has broad discretion in conducting the voir dire examination" because it "is in the best position to judge the effect which improper statements might have upon a jury." *United States v. Gibbons,* 607 F.2d 1320, 1330 (1979). The court's ruling on a motion for mistrial based on improper statements during voir dire will therefore be disturbed only on a clear showing of abuse of discretion. *Id.* In reviewing the district court's decision, this court asks whether the defendant's right to a fair and impartial jury was violated by the potentially prejudicial statement. *Id.* at 1331.

[14] The district court in this case did not abuse its discretion in denying appellants' motion for a mistrial or to strike the venire. Any prejudice that may have resulted from the statement of the venireperson was adequately addressed by the district court's explanation of the presence of the marshals in the courtroom. Nor did the district court abuse its discretion in declining to question the other members of the panel. Although this court has sometimes cited the district court's questioning of the remaining panel as a factor to consider in deciding whether the district court abused its discretion, it has never required such questioning after every potentially prejudicial statement. *See United States v. Black,* 369 F.3d 1171, 1177 (10th Cir.2004); *see, e.g., United States v. McKissick,* 204 F.3d 1282, 1299-1300 (10th Cir.2000) (concluding that the court's cautionary instruction was sufficient to cure any possible prejudice resulting from the remarks of a venireperson). Defense counsel in this case did not request questioning of the individual panel members, and expressed a desire to avoid highlighting the exchange to the rest of the panel.[FN9] Especially in light of defense counsels' tactical

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

decision not to request questioning of the panel, this court cannot conclude that the district court abused its discretion in failing to do so.

> FN9. Counsel at oral argument disclaimed any desire to have the remainder of the panel questioned, stating that "if we had asked the court to inquire of the other members of the panel how they felt, candidly, Your Honor, I thought we would get in a deeper hole than we were already in."

### 2. Failure to Question Jurors Regarding Potential Prejudice

[15] Green argues that his due process rights were violated when the district court failed to question the jury regarding allegedly prejudicial issues overheard by one of the jurors during a lunch break. The juror brought to the court's attention that she had overheard defense counsel speaking about the case and using Green's name. In questioning outside the presence of the rest of the jury, the juror told the court: "I heard something about a gun. About somebody wearing a suit for the last time. Something about the gun wasn't found until after they searched for the drugs or something to that manner." She further admitted telling at least two other jurors that she had overheard the conversation. The following colloquy then occurred:
THE COURT: Did you tell them anything about the specifics of what you overheard?
JUROR: No, I did not.
*1181 THE COURT: Okay. So to the extent you talked to a couple jurors, you just said you heard things, but didn't tell them what you heard.
JUROR: Correct.
THE COURT: Are you sure about that?
JUROR: Correct.

Later in the questioning, the court again brought up the subject of whether the juror had related any of the content of what she had overheard to the other jurors:THE COURT: Did you say anything to the other jurors about the specifics of what you've shared with us right now?

JUROR: No.

After giving defense counsel the opportunity to question the juror, the court decided in an " abundance of caution" that the juror should be excused. The court denied, however, defense counsels' requests to question other members of the jury on what they knew about the overheard conversation. The court concluded that, based on the juror's statements, the remainder of the jury had not been exposed to any prejudicial information. The court stated:
I'm not going to question the other two [jurors] because she said in several ways that she didn't communicate this to anyone else. And there isn't a basis in the record for me to ask anything of the other jurors what they heard. I believe this woman is being honest when she said all she said to the others is that she heard some things and didn't tell them what it was. And that's not enough for them to be tainted.

[16] This court reviews for abuse of discretion the district court's decision on how to handle allegations of juror misconduct or bias. *United States v. Bornfield,* 145 F.3d 1123, 1132 (10th Cir.1998). In this case, the court took the precautionary step of dismissing the juror in question. The court also gave defense counsel the opportunity to examine the juror, who steadfastly maintained that she had not related the content of the overheard conversation to any of the other jurors. Given that there is absolutely no evidence that any prejudicial information reached the remainder of the jury, the district court did not abuse its discretion in denying defense counsels' request to question the other jurors. Similarly, in the absence of evidence that the jury was exposed to prejudicial information, the district court did not abuse its discretion in failing to give a cautionary instruction.

### C. Motion to Sever

[17] Defendant-appellant George Murray argues that the district court erred in denying his motion to sever his trial from that of his co-defendants. He

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164                                                                Page 21

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

argues that he was prejudiced by a joint trial with co-defendants who were alleged to have been much more serious players in the drug conspiracy and who each had multiple prior felony drug convictions. Murray contends that he was incarcerated for the majority of the duration of the alleged conspiracy and purchased relatively small quantities of crack cocaine compared to the other defendants.

[18][19][20][21] This court reviews the trial court's denial of severance for an abuse of discretion. *United States v. Hack,* 782 F.2d 862, 870 (10th Cir.1986). "In deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a joint trial of co-defendants against the expense and inconvenience of separate trials." *Id.* The preference in a conspiracy trial is that persons charged together should be tried together. *Id.* at 871. To establish an abuse of discretion, a defendant must make a strong showing of actual prejudice. *Id.* at 870.

\*1182 [22] Murray's only argument that he was prejudiced is that the evidence against his co-defendants was stronger than the evidence against him. Even assuming this is true, however, " [n]either a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' from the evidence that was overwhelming or more damaging against the co-defendant than that against the moving party is sufficient to warrant severance." *Id.* (citation omitted). Rather, to show prejudice a defendant must show that "there is a serious risk that a joint trial would compromise a specific trial right, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Murray has not made this showing. On the contrary, the jury's acquittal of Murray of the conspiracy charge demonstrates that it was capable of separating the evidence against him from the evidence against his co-defendants. Furthermore, the district court gave a limiting instruction, which the Supreme Court has sanctioned as an alternative to the more drastic remedy of severance. *Id.* at 539, 113 S.Ct. 933. Because Murray fails to demonstrate actual

prejudice resulting from the district court's denial of his motion, he cannot show that the district court abused its discretion.

### D. Sufficiency of the Evidence

### 1. Alvin Green and Theolian Lloyd

[23] The jury convicted Small, Green, Lloyd, and Woods of Count I, which charged the defendants with conspiracy to distribute and possess with intent to distribute crack cocaine weighing more than fifty grams. On appeal, both Green and Lloyd argue that there was insufficient evidence for the jury to convict them of the conspiracy alleged in the indictment. In evaluating a sufficiency of the evidence challenge to a charge of conspiracy:
[T]he question whether there existed evidence sufficient to establish a single conspiracy is one of fact for the jury to decide. When reviewing the jury's decision, we must view all of the evidence, both direct and circumstantial, in the light most favorable to the government, and all reasonable inferences and credibility choices must be made in support of the jury's verdict.

*United States v. Evans,* 970 F.2d 663, 671 (10th Cir.1992) (quotation omitted). As this court noted in *Evans,* "the restrictive standard of review for a sufficiency of the evidence question provides us with very little leeway" in conducting this review of the evidence. *Id.*

[24][25][26] To prove conspiracy, the government must show: (1) that two or more people agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged co-conspirators were interdependent. *Id.* at 668. Green and Lloyd argue only that the government failed to establish the fourth requirement, that of interdependence. Although the evidence at trial showed that each defendant was involved in dealing crack cocaine with Small, "a single conspiracy does not exist solely because many individuals deal with a common central player." *Id.* at 670. "What is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164

Page 22

423 F.3d 1164
(Cite as: 423 F.3d 1164)

required is a *shared,* single criminal objective, not just similar or parallel objectives between similarly situated people." *Id.* On the other hand, "[a] defendant need not have knowledge of all the details or all the members of the conspiracy and may play only a minor role in the conspiracy." *United States v. Mendoza-Salgado,* 964 F.2d 993, 1005 (10th Cir.1992) (quotation omitted). The government need only *1183 prove by direct or circumstantial evidence "that the defendant knew at least the essential objectives of the conspiracy, and the defendant knowingly and voluntarily became part of it." *Id.* (quotation omitted).

In *Evans,* this court examined a similar challenge to the sufficiency of the evidence made by several defendants in a large drug conspiracy case. *Evans,* 970 F.2d at 668. In concluding that the evidence was sufficient to sustain the convictions of three of the defendants, the court focused on evidence of frequent drug transactions among the defendants and their co-conspirators, and evidence that the defendants attended discussions related to drug sales. *Id.* at 672-73. The court concluded that this evidence was sufficient to establish that the defendants knew the nature of the criminal enterprise and shared its objective. *Id.* In contrast, the court found insufficient evidence as to one defendant because the evidence showed only a single purchase of crack cocaine, without any indication that the drugs were resold for profit, and because there was no evidence that the defendant attended meetings where other drug transactions were discussed. *Id.* at 673. The court emphasized the relatively minor nature of the single drug transaction, and noted that "proof of the existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy." *Id.* (quotation and alteration omitted).

This court's decision in *Evans* highlights the importance of two kinds of evidence in evaluating a sufficiency of the evidence challenge to a drug conspiracy conviction. First, evidence establishing that a defendant purchased drugs on multiple occasions and for the purpose of resale, as opposed to a one-time purchase for personal use, is an indication that the defendant was aware of and shared common goals with the larger conspiracy.

*See id.* As this court has noted, "[w]here large quantities of narcotics are being distributed, each major buyer may be presumed to know that he is part of a wide-ranging venture, the success of which depends on performance by others whose identity he may not even know." *United States v. Watson,* 594 F.2d 1330, 1340 (10th Cir.1979). Second, evidence showing that the defendant attended meetings or was privy to information regarding the scope of the criminal conspiracy is also relevant for the same reasons. *Evans,* 970 F.2d at 673.

### a. Sufficiency of the Evidence as to Green

[27][28] Both kinds of evidence identified in *Evans* are present as to Green. The trial evidence showed that Green was a major source of supply for Small's drug operation, that he traveled to California for the purpose of obtaining large quantities of drugs for Small, and that Small was dependent on Green to supply the operation. Evidence that a defendant is a major supplier of drugs is sufficient in infer knowledge of the broader conspiracy. *See United States v. Dickey,* 736 F.2d 571, 584-85 (10th Cir.1984). Furthermore, the evidence showed that Green discussed the conspiracy's drug sales with Small, and that he provided equipment and assistance in converting the powder cocaine to crack cocaine. This evidence suggests that Green was privy to information regarding the nature and objectives of the criminal conspiracy. Based on this evidence, a jury could reasonably have concluded that Green was interdependent with Small's entire drug organization.

Green argues that the evidence at trial established the existence of multiple conspiracies rather than the single, overarching conspiracy alleged in Count I of the indictment, and that his role in these separate conspiracies "is confusing, at the very least. " He further argues that because there was evidence that Small used more *1184 than one supplier, it would have been impossible for a reasonable jury to determine which of Small's suppliers provided the cocaine Small eventually distributed to his dealers on the street. As already established, however, Green was a major source of supply for Small's drug operation. The fact that all

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164                                                             Page 23

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

of Small's distributors may not have been aware of each other, and that some of the drugs in the conspiracy may have come from other suppliers, is irrelevant to the question whether Green knew the essential objectives of the conspiracy and knowingly and voluntarily became part of it. As this court noted in *United States v. Harrison:*

The goals of all the participants need not be congruent for a single conspiracy to exist, so long as their goals are not at cross purposes.... [A] single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance.

942 F.2d 751, 756 (10th Cir.1991) (quotation and emphasis omitted).

[29] Although this court has said that two *competing* suppliers cannot be considered part of the same conspiracy when the evidence shows that the conspiracy could not utilize both suppliers simultaneously, the evidence in this case did not show that Small used one supplier to the exclusion of all others. *See id.* at 756-57. The existence of multiple dealers and suppliers does not show the existence of separate conspiracies as long as the activities are aimed at a common goal. *United States v. Ailsworth,* 138 F.3d 843, 851 (10th Cir.1998). In this case, the evidence was sufficient to show that Green shared the common goal with Small's drug organization of distributing crack cocaine for profit.

**b. Sufficiency of the Evidence as to Lloyd**

[30] The evidence was also sufficient for the jury to convict Lloyd on the conspiracy count. Testimony of Lloyd's co-defendants established that Lloyd was a frequent customer of Small's and that he had purchased crack cocaine from him on at least five to ten occasions. In addition, the jury found Lloyd guilty of two independent purchases of fourteen grams of crack cocaine from Small, and Lloyd does not contest that the evidence was sufficient to establish these purchases. A jury reasonably could have concluded that Lloyd was not merely

purchasing these drugs for personal consumption, but was instead furthering the objectives of the conspiracy by redistributing the drugs for profit. *See United States v. Ivy,* 83 F.3d 1266, 1285-86 (10th Cir.1996). In one conversation intercepted by the FBI wiretap, Small and Lloyd were caught discussing the possibility of Lloyd selling drugs in a particular location. Trial evidence also indicated that Small would "front" drugs to others, including Lloyd, an arrangement in which Small would provide crack cocaine on credit in exchange for payment from proceeds realized on sale. This kind of fronting arrangement strongly suggests that Lloyd was expected to redistribute the fronted drugs for profit.

The evidence further showed that Lloyd had at least one conversation with Small in which they talked about other crack cocaine dealers in Small's distribution network.[FN10] Although Lloyd may not have **\*1185** known all the dealers working for Small, no such knowledge is required for a showing of interdependence as long as Lloyd knew at least the essential objectives of the conspiracy. *See Mendoza-Salgado,* 964 F.2d at 1005. The jury in this case could reasonably have concluded from the intercepted telephone conversations that Lloyd was at least aware of the essential objective of Small's drug network. The jury could further have concluded that he knowingly and voluntarily advanced that objective by receiving and selling fronted drugs on behalf of Small. *See United States v. Roberts,* 14 F.3d 502, 511 (10th Cir.1993) (recognizing that fronting creates a situation of mutual dependence because the seller's ability to front drugs is dependent on his receipt of money due). Taken together and in the light most favorable to the government, this evidence was sufficient for a jury to determine that Lloyd was interdependent with the rest of Small's drug network.

FN10. Lloyd argues that the drug dealers discussed in this conversation were not convicted of being a part of the conspiracy charged in Count I of the indictment and that one of the individuals discussed, Max Cooper, was acquitted of the conspiracy charge. Even if Cooper was not a member

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164

Page 24

423 F.3d 1164
(Cite as: 423 F.3d 1164)

of the conspiracy alleged in the indictment, however, the content of the intercepted conversation indicates that he was distributing drugs for Small. Furthermore, the jury did convict Cooper of using a telephone to facilitate the drug conspiracy alleged in Count I. The jury could therefore have concluded that Lloyd's discussion of the activities of Cooper and others was relevant evidence of his knowledge of the broader objective of the conspiracy-that of distributing crack cocaine for profit.

### 2. Tommy Jones

[31] The district court found defendant-appellant Tommy Jones guilty after a bench trial of using a telephone to facilitate a drug felony in violation of 21 U.S.C. § 843(b), and aiding and abetting the distribution of more than five grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), and 18 U.S.C. § 2. On appeal, Jones challenges his conviction under § 843(b), arguing that it was not supported by sufficient evidence.

The evidence at trial showed that Jones and his girlfriend Danya Drew came to Denver together and were shortly thereafter arrested for reasons unrelated to the present criminal prosecution. Jones gave Drew the last of his money to pay for her bond, but Jones himself was not released because of an outstanding warrant for a parole violation in California. Drew located Willie Small's phone number in Jones' address book and called him to request money for a bus ticket to California. Small refused to help, however, until he first heard from Jones.

Later that day, Drew spoke to Jones on Small's cellular phone, and the conversation was captured on the FBI wiretap of that phone. Drew asked Jones, "Would you tell Willie to, um, do something for me so I can make some money?" Jones responded, "Um, yeah, put him on the phone." When Small picked up the phone, Jones said that he needed "it" if he was sent "down there," which the district court interpreted to mean that Jones needed money if he was sent to the Denver County Jail.

Small offered to give Drew a quarter-ounce of crack cocaine to sell, the proceeds of which could be used to put money into Jones' jail account. When Drew returned to the telephone, Jones asked her, "Hey, if he give you a quarter, right ... you be able to send me some money out to the county[?]" Drew answered that she would "do anything" for Jones. Shortly after this conversation, Small gave Drew a quarter ounce of crack cocaine. Instead of selling the cocaine as promised, however, Drew and others smoked all the crack cocaine that night. Based on the content of this conversation, the district court concluded that it was Jones' assent to Small's proposal that resulted in Small giving the crack cocaine to Drew.

Jones argues that, because Drew smoked all the crack cocaine without selling any of it, the evidence does not support his conviction for use of a telephone to *1186 facilitate the distribution of crack cocaine in violation of § 843(b). He cites United States v. Baggett, in which this court held that § 843(b) is not violated when the drug distribution facilitated with the use of a telephone is solely for the purpose of personal consumption. 890 F.2d 1095, 1097-98 (10th Cir.1989). The holding in Baggett, however, was predicated on the fact that the drug possession facilitated in that case did not constitute a felony. Id. at 1097 (citing 21 U.S.C. § 844(a)). Section 843(b) makes it unlawful "for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter." 18 U.S.C. § 843(b) (emphasis added). Because the simple possession at issue in Baggett was only a misdemeanor, it could not be said that the defendant's use of a telephone in that case facilitated a felony. In contrast, possession of more than five grams of crack cocaine is punishable by a maximum term of imprisonment of twenty years and thus constitutes a drug felony. See 21 U.S.C. § 844(a); 18 U.S.C. § 3559(a)(3). The evidence that Jones facilitated Drew's possession of that quantity of crack cocaine was for this reason sufficient for a jury to find a violation of § 843(b).

### E. United States v. Booker

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164                                                                                        Page 25

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

Some of the appellants claim that the district court's application of the United States Sentencing Guidelines ("U.S.S.G.") violated the Supreme Court's holding in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In *Booker,* the Supreme Court held that the Sixth Amendment requires that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756. The *Booker* remedial majority addressed the Sixth Amendment error resulting from mandatory application of the Guidelines by severing the statutory section requiring district courts to sentence within the Guidelines range. *Id.* at 756-57.

There are two distinct types of sentencing errors that a court could make in light of *Booker. United States v. Gonzalez-Huerta,* 403 F.3d 727, 731 (2005) (en banc). A sentencing court could violate the Sixth Amendment "by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily." *Id.* Alternatively, "a sentencing court could err by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction." *Id.* at 731-32. Appellants claim that the district court committed both kinds of *Booker* error in sentencing them under the Guidelines.

### 1. Alvin Green and Theolian Lloyd

[32] Green and Lloyd argue that their sentences are in conflict with *Booker* because the district court found facts by a preponderance of the evidence during sentencing. Because neither appellant raised this claim in the district court, we review only for plain error. *Id.* at 732. "Under that test, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) affects substantial rights." *United States v. Cotton,* 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (quotations and

alteration omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously *1187 affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 631-32, 122 S.Ct. 1781 (quotation and alteration omitted).

[33] Both Green and Lloyd fail to satisfy the first prong of the plain-error test in this case because the district court did not commit error under *Booker.* Both sentences were the minimum permitted by statute given the quantity of drugs found by the jury and appellants' prior felony drug convictions. *See* 21 U.S.C. § 841(b)(1)(A)(iii). The quantity of drugs was alleged in the indictment and found by the jury beyond a reasonable doubt. *See United States v. Jones,* 235 F.3d 1231, 1236-37 (10th Cir.2000) (holding that drug quantities under § 841(b) are essential elements of the offense that must be alleged in the indictment and found by the jury). Although the district court did make additional findings regarding Green's possession of a firearm and the quantities of drugs attributable to Lloyd for a determination of the sentencing range under the Guidelines, these findings did not increase appellants' sentences because in both cases the high end of the final Guidelines range was below the statutory minimum sentence.[FN11] Furthermore, this court has previously held that "the 'fact' of prior convictions ... need not be charged in an indictment and proven to a jury." *United States v. Moore,* 401 F.3d 1220, 1223 (10th Cir.2005).

FN11. For this reason, Lloyd's argument that the district court erred in finding eighty-four grams of crack cocaine attributable to him is irrelevant. Because the fifty grams required for imposition of the statutory minimum sentence was found by the jury, Lloyd would have been subject to the same sentence even if the district court had not made this finding.

Because the only facts necessary for appellants' sentences were either submitted to the jury or involved the fact of a prior conviction, the district court did not commit constitutional *Booker* error.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164                                                                        Page 26

423 F.3d 1164
(Cite as: 423 F.3d 1164)

*See Booker,* 125 S.Ct. at 756; *United States v. Payton,* 405 F.3d 1168, 1173 (10th Cir.2005). Nor did the court commit non-constitutional *Booker* error, because the court had no discretion to impose a sentence lower than the minimum required by statute. *See Payton,* 405 F.3d at 1173. The district court's sentence of Green and Lloyd was in conformity with *Booker,* and these appellants accordingly cannot demonstrate that the court committed plain error.[FN12]

> FN12. In addition to the sentences challenged by Lloyd and Green, both appellants were also sentenced to concurrent terms of imprisonment on their other counts of conviction. Appellants do not challenge the legality of their sentences on these other counts under *Booker,* and this court declines to raise the issue *sua sponte.* Likewise, where the other appellants in this case have challenged their primary terms of imprisonment but have not challenged their sentences to lesser concurrent terms, we decline to consider the legality of the unchallenged sentences.

### 2. Dwayne Van Dyke

Unlike most of the other appellants, Van Dyke was not subjected to a statutory minimum sentence because the government, in exchange for Van Dyke's cooperation, agreed not to file an information calling for the enhanced statutory penalty. *See* 21 U.S.C. § 851(a)(1) (requiring an information to be filed by the government prior to imposition of the enhanced statutory sentence). Nevertheless, Van Dyke was still subjected to enhanced penalties pursuant to the career offender provision in the Guidelines. *See* U.S.S.G. § 4B1.1 (2002). A defendant is considered a career offender under § 4B1.1 if: (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence *1188 or a controlled substance offense; and (3) the defendant has at least two prior felony convictions

of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

[34][35][36] Van Dyke argues that the district court's findings regarding each of these three requirements violated his Sixth Amendment rights under *Booker.* We disagree. First, the court's findings regarding the fact of prior convictions did not implicate the Sixth Amendment. *Moore,* 401 F.3d at 1223. Furthermore, whether the present offense and prior offenses constitute felonies that are crimes of violence or controlled substance offenses are questions of law unaffected by the Supreme Court's holding in *Booker. See id.* at 1224-26.[FN13] The only fact found by the judge potentially implicated by the Supreme Court's holding in *Booker* was the fact that Van Dyke was at least eighteen years old at the time he committed the offense of conviction. Although the district court did find this fact in imposing the career offender provision, Van Dyke's Sixth Amendment rights were still not violated because his sentence was below the maximum authorized by the facts found by the jury. From the facts admitted in the plea agreement and the fact of prior convictions, Van Dyke's maximum sentence under the Guidelines was 188 months based on an offense level of twenty-nine and a criminal history category of VI.[FN14] After application of the career offender guideline, the sentencing range arrived at by the district court was 262-327 months. The court, however, granted a substantial downward departure pursuant to the government's § 5K1.1 motion, sentencing Van Dyke to a term of 175 months' imprisonment. This sentence was below the maximum authorized by the jury's verdict, and Van Dyke's sentence therefore does not violate the Sixth Amendment. *See United States v. Yazzie,* 407 F.3d 1139, 1144 (10th Cir.2005) (en banc) (noting that a district court commits constitutional *Booker* error when it "makes factual findings (other than the fact of prior convictions), and imposes a sentence above the maximum that would apply in the absence of such findings").

> FN13. Van Dyke also argues that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164

Page 27

423 F.3d 1164
(Cite as: 423 F.3d 1164)

district court erred as a matter of law in classifying his prior conviction for attempted escape as a crime of violence. This court has previously held, however, that all escapes, including attempted escapes, are by their nature crimes of violence for purposes of the Guidelines because they inherently present a serious potential risk of physical injury to another. *United States v. Moudy,* 132 F.3d 618, 620 (10th Cir.1998) ("Every escape scenario is a powder keg which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so." (quotation and alteration omitted)); *see also United States v. Dickerson,* 77 F.3d 774, 777 (4th Cir.1996) (holding that felony attempted escape is a crime of violence under § 4B1.1). Furthermore, Application Note 1 of § 4B1.2(a) states that a "crime of violence" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2(a) cmt. n. 1 (2002). Such commentary is "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of," the guideline it interprets. *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). The district court therefore did not err in classifying attempted escape as a crime of violence under the Guidelines.

FN14. Based solely on the drug quantity admitted in the plea agreement, Van Dyke's base offense level was thirty-two pursuant to U.S.S.G. § 2D1.1(c)(4). In *United States v. Clark,* however, this court held that downward adjustments for acceptance of responsibility must be included in the calculation of the sentencing range authorized by the jury's verdict. 415 F.3d 1234, 1238-40 (10th Cir.2005). After a three-level downward adjustment for acceptance of responsibility, Van Dyke's base offense

level was twenty-nine.

*1189 [37] The district court did commit non-constitutional *Booker* error by applying the Guidelines in a mandatory fashion. *See Gonzalez-Huerta,* 403 F.3d at 731-32. This error amounts to plain error sufficient to satisfy the first two prongs of the plain-error analysis. *Id.* at 732. Nevertheless, because the district court exercised its discretion in departing downward pursuant to the government's § 5K1.1 motion, Van Dyke cannot demonstrate that his substantial rights were affected by the district court's error as required by the third prong of the plain-error test. The fact that Van Dyke was sentenced well below the bottom end of the Guidelines range makes it extremely unlikely that the district court would have imposed an even lower sentence under a purely discretionary Guidelines regime. Furthermore, as this court noted in *United States v. Ollson,* "once the government moved for downward departure under § 5K1.1, the district court exercised its discretion in both granting the motion and in deciding what degree of departure was appropriate." 413 F.3d 1119, 1121 (10th Cir.2005). Although the district court in this case granted the degree of departure recommended by the government, the court "nonetheless retain[ed] discretion to depart to the degree it [found] appropriate, regardless of a specific recommendation by the government." *Id.* If the court thought Van Dyke deserved an even lower sentence, it "had undoubted discretion to reduce the sentence below what it imposed." *Id.* Van Dyke's substantial rights were therefore unaffected by the district court's *Booker* error, and for this reason he cannot satisfy the third prong of the plain-error test. *See id.* (holding a similar *Booker* error to be harmless).

### 3. Dawan Eugene Smith

Defendant-appellant Dawan Eugene Smith pleaded guilty to one count of use of a telephone to facilitate a drug trafficking crime in violation of 21 U.S.C. § 843(b). Like Van Dyke, Smith was not subjected to a statutory minimum sentence. The district court calculated Smith's Guidelines range at seventy to eighty-seven months based on the quantity of drugs

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164

Page 28

423 F.3d 1164
(Cite as: 423 F.3d 1164)

he admitted in his plea agreement. Because the statutory maximum for his crime of conviction was forty-eight months under 21 U.S.C. § 843(d)(1), Smith's Guidelines range became forty-eight months pursuant to U.S.S.G. § 5G1.1. The district court accordingly imposed a forty-eight month sentence.

Smith appears to concede that all facts pertinent to his sentence were admitted in the plea agreement and that therefore his sentence did not violate the Sixth Amendment. Nevertheless, he argues that the district court violated *Booker's* remedial provision by applying the Guidelines in a mandatory fashion. Because Smith did not raise this argument in the district court, it is reviewed here for plain error.

[38][39] Even though the district court sentenced Smith well below the bottom end of the Guidelines range, the court under a purely discretionary Guidelines system could have imposed an even lower sentence. The district court therefore committed non-constitutional *Booker* error. Smith, however, cannot demonstrate that his substantial rights were affected by the district court's error as required by the plain-error test. Smith was given a sentence substantially below the normal Guidelines range. Because the district court is required to consider the Guidelines in imposing a sentence post-*Booker*, it is unlikely that the court would have decided to impose an even lower sentence under an advisory Guidelines scheme. *See United States v. Sierra-Castillo,* 405 F.3d 932, 936 n. 2 (10th Cir.2005). Smith has not identified any evidence in the record that would indicate otherwise. In **1190** fact, he concedes that "[t]here is simply no way of knowing what sentence the district court would have imposed if the [G]uidelines were advisory rather than mandatory." Smith has therefore failed to satisfy his burden of "demonstrating a reasonable probability that had the district court applied the post-*Booker* sentencing framework, he would have received a lesser sentence." *United States v. Trujillo-Terrazas,* 405 F.3d 814, 819 (10th Cir.2005).

#### 4. George Murray

Defendant-appellant George Murray was subject to

a 120-month statutory minimum sentence. Based on the district court's findings of drug quantity at sentencing, however, the court applied a base offense level under the Guidelines of twenty-eight, which combined with a criminal history category of V resulted in a Guidelines range of 130 to 162 months. The district court sentenced Murray to 150 months' imprisonment.

[40] The government concedes that the district court found facts that increased Murray's sentence under the Guidelines. The court's *Booker* error was therefore constitutional in nature. *See Gonzalez-Huerta,* 403 F.3d at 731. Furthermore, the government concedes that Murray raised the issue below, and this court must therefore remand for resentencing unless the error was harmless. *United States v. Lang,* 405 F.3d 1060, 1064 (10th Cir.2005). Constitutional *Booker* error will only be found harmless if the government can demonstrate beyond a reasonable doubt that the error did not affect the defendant's substantial rights. *Id.* at 1065. In *United States v. Dazey,* this court held that there are at least two ways that a defendant's substantial rights may have been affected in cases of constitutional *Booker* error. 403 F.3d 1147, 1175 (10th Cir.2005). First, a defendant's substantial rights may be affected if "a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence." *Id.* Second, a defendant's substantial rights may also be affected if there is "a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors of 18 U.S.C. § 3553(a), the district court judge would reasonably impose a sentence outside the Guidelines range." *Id.* (footnote omitted).[FN15]

> FN15. *United States v. Dazey,* 403 F.3d 1147, 1175 (10th Cir.2005), was decided in the plain-error context, in which the defendant has the burden to show an effect on substantial rights. *See United States v. Vonn,* 535 U.S. 55, 62-63, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002). In the harmless-error context, it is instead the government's burden to show that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164

Page 29

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

defendant's substantial rights have *not* been affected. *Id.* at 62, 122 S.Ct. 1043. Other than this shift in the burden of proof, however, there is no reason to believe that the substantial rights test for cases of plain error, as set forth in *Dazey,* is not equally applicable in the context of harmless error. *See* Fed.R.Crim.P. 52(a), (b) (requiring an effect on substantial rights in cases of both harmless error and plain error).

[41] At oral argument, the government contended that the district court's error was harmless because the court already exercised its discretion in sentencing Murray to the middle of the Guidelines range. From this, the government concluded that the sentence likely would have remained the same even if the district court had been operating under an advisory Guidelines scheme. *See United States v. Lawrence,* 405 F.3d 888, 908 (10th Cir.2005) (noting that a defendant's sentence would likely have been the same even under an advisory Guidelines system when the district court sentenced above the bottom of the Guidelines range). Even if the government is correct on this point, however, *1191 its argument at most establishes that the second alternative under *Dazey* has not been satisfied in this case. This court need not even reach the second *Dazey* alternative if it concludes that a jury likely would not have found the quantity of drugs required for Murray's sentence beyond a reasonable doubt. In *United States v. Mozee,* for example, this court concluded that a defendant's substantial rights had been affected even though he was sentenced to the top of the Guidelines range. 405 F.3d 1082, 1091, 1092 (10th Cir.2005). Although the defendant's sentence likely would have been the same or higher if the district court had been operating under a purely advisory Guidelines regime, the defendant was still able to show an effect on his substantial rights because the evidence in support of the sentencing enhancements applied by the district court was not overwhelming. *Id.* FN16

FN16. In *Mozee,* a plain-error case, the court nevertheless concluded that it would not exercise its discretion to correct the

error because the defendant had failed to show that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Mozee,* 405 F.3d 1082, 1092 (10th Cir.2005). The court held that there was no reason to believe that a defendant sentenced at the high end of the Guidelines range would receive a lesser sentence if the case were remanded to the district court for resentencing. *Id.* The showing of an effect on the fairness, integrity, or public reputation of judicial proceedings, while required in the plain-error context, is not applicable to cases of harmless error. *See Vonn,* 535 U.S. at 62-63, 122 S.Ct. 1043. Murray's sentence must therefore be reversed unless the government can show that his substantial rights were not affected by the district court's error.

Here, the indictment alleged and the jury found that the quantity of drugs involved in Murray's offense of conviction was more than five grams of crack cocaine. The indictment further stated that the quantity at issue was approximately seven grams. The government argued at sentencing that the actual quantity of drugs attributable to Murray for purposes of computing the Guidelines sentence was forty-two grams based on Murray's relevant conduct. Defense counsel vigorously contested this quantity and argued that Murray was responsible for only fourteen grams of crack cocaine or less. The district court concluded that the government had failed to prove the forty-two-gram quantity by a preponderance of the evidence, and instead found twenty-eight grams of crack cocaine attributable to the defendant. Other than the fact that the quantity found by the district court exactly split the difference between the quantities advocated by the government and the defendant, it is unclear from the record how the district court arrived at this finding. We cannot say that the evidence supporting the district court's conclusion was so strong that a jury would have found the same quantity beyond a reasonable doubt. We therefore conclude, based on circuit precedent, that the district court's factfinding by a preponderance of the evidence affected Murray's substantial rights, and that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

423 F.3d 1164                                                          Page 30

423 F.3d 1164
**(Cite as: 423 F.3d 1164)**

constitutional *Booker* error in this case was not
harmless. For this reason, Murray's case must be
remanded for resentencing.

### IV. CONCLUSION

For the foregoing reasons, the convictions and
sentences of all appellants except for George
Murray are **AFFIRMED.** As to Murray, we
**REMAND** this case to the district court with
instructions to vacate Murray's sentence and to
resentence him in accordance with *Booker.*

C.A.10 (Colo.),2005.
U.S. v. Small
423 F.3d 1164

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.