IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

```
ZEBEDEE E. HALL®, In Unlimited      :
Commercial Libility, Pursuant       :
to UCC Filing No. 24012454,         :
                                    :
                PETITIONER,         :
                                    :       CAUSE NO. 01-CR-214-𝒟
V.                                  :              ωψΔ
                                    :
UNITED STATES OF AMERICA,           :
                                    :
                RESPONDENT.         :
```

FILED
UNITED STATES DISTRICT COURT
DENVER, COLO.

APR 1 6 2007

GREGORY C. LANGHAM
CLERK

___

**MEMORANDUM OF LAW IN SUPPORT TO MR. HALL'S CHALLENGE TO THE
JUDGMENT AS VOID UNDER FED. R. CIV. PROC. 60 (b) (4)**

___

### QUESTION PRESENTED

H.R. 3190, WHICH LATER BECAME PUBLIC LAW 80-772; EXPIRED TWICE IN
CONGRESS DUE TO SINE DIE ADJOURNMENTS. PRESIDENT TRUMAN, VIOLATIVE
OF ARTICLE I, SECTION 7, CLAUSE 2, SIGNED AMENDMENTS INTO LAW PER-
TAINING TO AN EXPIRED BILL. WHERE PRESIDENT'S USURPATION IS IN
VIOLATION OF PRESENTMENT CLAUSE, DO ARTICLE III COURTS HAVE
JURISDICTION?

### INTRODUCTION

In the matter of ZEBEDEE E. HALL, (hereinafter Mr. Hall) accused in the above captioned matter/action, andas and for Mr. Hall's petition chellenging the judgment as void, in affidavit form, (facts duly alleged are deemed true unless denied or controverted by evidence), under Fed. R. Civ. Proc. Rule 60 (b)(4), therein, shows the court as follows:

### OATHS AND RESPONSES

Mr. Hall hereby and herein moves that all responses by the trial judge be submitted under Title 28, Section 453, United States Code. Further, the United States attorney is odered to respond under Oath.

Notwithstanding the above, Mr. Hall request the Court to take judicial notice of Rule 52(a), which provides; "in all actions tried upon facts without a jury, the Court

shall find facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58."

## BACKGROUND AND STATEMENT OF THE CASE

Mr. Hall was indicted on June 7, 2001, and later arrested on June 15, 2001, pusuant to Federal warrant in the above action, and proceeded to jury trial in or about September 2003. Thereafter Mr. Hall was found guilty and sentenced to 151 months inprisonment on April 15, 2005.

On January 23, 2007, the Tenth Circuit Court of Appeals reversed Mr. Hall's conviction on count 49 and remanded the cause back to the District Court for resentencing.

## FEDERAL RULES OF CIVIL PRACEDURE, RULE 60(b)(4) IS THE APPROPRIATE VEHICLE TO ADDRESS THE COURT'S LACK OF JURISDICTION

The question herein, presented in mulitiple parts is a staight-forward issue of the Court's authority to have heard this case. This action addresses the current concept of a Federal District Court's subject-matter jurisdiction of the Court's power to here a case. "Such jurisdiction can **never** be waived." Consequintly, defects in subject matter jurisdiction require correction. See United States v. Cotton, 535 U.S. 625 (2002). This Court had not the 'Statutory or Constitutional **power** to adjudicate the case'." See Steel Co. v. Citizen for Better Enviornment, 523 U.S. 83 (1998).

Rule 60 (b) (4), provides a party the 'opportunity to obtain vacatur of a judgment that is void for lack of subject matter jurisdiction, a consideration just as valid as Habeas cases as in any other, since absence of jurisdiction altogether deprives a Federal District Court of the power to adjudicate the rights of the parties. See Gonzales v. Crosby, 2005 U.S. lexis 5014 at 20.

It is the absence of legislative jurisdiction that causes the evaporation of subject matter jurisdiction.

The simple object here is jurisdiction. Mr. Hall has not an issue of time, as there are a

---

*****NOTE:** Any and all Fed. Rules, Statutes, and/or Case Law cited in this Motion/Memorandum are submitted **"In The Nature Of"** that particular Fed. Rule, Statute, and/or Case Cite. Further, ZEBEDEE E. HALL®, is a Trademark/Copyright and the Respondent and the Court are authorized to use it to respond to this Motion/Morandum.

wealth of case law which holds there is **no time limit** for filing a rule 60 (b)(4). See Klapprott v. United States, 335 U.S. 949, (rule 60 (b)(4) motion entertained more than 4 years after judgment entered). Rule 60 (b)(4) provides that a court may relieve a party from a final judgment, when 'the judgment is viod.' A judgment is **void** where the court lacked in personam or Subject matter jurisdiction or where the entry of the Order violated due process. See Triad Energy Corp. v. Mc Nell, 110 Fdr. 382 (1986). Unlike other motions to vacate under rule 60 (b), which are committed to the sound descretion of the court, a Court entertaining a rule 60 (b)(4) motion has no discretion and must grant such motion if it is determined that the Court lacked jurisdiction in the first instance. Id.

The usurpation of power has been observed within all branches of Federal Government, this is a true 60 (b)(4) action and should be decided as such.

### ARGUMENT

### THE TRIAL COURT IS BEREFT OF JURISDICTION OVER THE LOCUS IN QUO

Mr. Hall asserts that the executive branch, i.e., United States Attorney misrepresented to the Grand Jury the facts, since the facts fail to advocate that jurisdiction was absent over the locus in quo. This has been setteled as far beck as 1896 in Hanford v. Davies, 163 U.S. 273 (1896). The Supreme Court stated that it is well setteled that:

> "As the jurisdiction of a Court of the United States is limited in the sense that it has no jurisdiction than that confered by the Constitution and laws of the United States, the presumption is that a cause is without its jurisdiction unless the contrary affirmatively appears; and that it is not sufficient that jurisdiction may be inferred argumentatively from averments in pleadings, but the averments should be positive. Id at 279.

The exclusive legislative jurisdiction of the Federal government is not addressed in principle to subject matter, but in the geographical location. This was evident in United States v. Bevans, U.S. Lexis 364, where an offence of murder was committed on a ship of war while docked in a harbor in Massachusetts. The issue was whether

-3-

the executive branch could take cognizance over the offence committed. The Supreme Court held; "it is the nature of the place in which the ship lies, not the character of the ship itself, **that decides the question of jurisdiction.**" Id. Lexis 364 at 39. Why was this not addressed in Mr. Hall's case. Was the areas in which the alleged ofences committed, within the jurisdiction of Colorado? The Court went on: The law does not inquire into the nature of the employment or service in which the offender may have been engaged at the time of committing the offence; but only into the local situation or territory where it was committed." Id. Lexis 364 at 40.

It would be automatic that the prosecution must always prove legislative jurisdiction over the geographical location whereon the alleged prohibitive acts were purported to have been committed, otherwise a 'conviction could not be sustained.' See United States v. Benson, 495 F.2d 481 (1974). Thereby, Federal jurisdiction is **never presumed**, and can "never be waived." See United States v. Rogers, 23 F. 658 (1885). The Supreme Court expounded on this in Fort Leavenworth Railroad v. Lowe, 114 U.S. 525 (1885), where it stated:

> "In criminal prosecutions where the Federal government is a moving party it must not only establish ownership of the property which the crimes allegedly occured, but they must also produce documentation that the State has ceded the jurisdiction of that property to them."

Thereby, no jurisdiction exists in the United States to enforce Federal laws **until** consent to accept jurisdiction over the acquired lands hes been published and filed on behalf of the United States as provided. See 40 U.S.C. Section 255. This proved to be critical in Adams et al., v. United States, et al., 319 U.S. 312 (1943), where a civillian woman was sexually assaulted within the confines of camp Claiborne, Louisiana. The Fifth Circuit certified two questions to the Supreme Court, which ultimately came down to whether the Camp Claiborne was, at the time of the crime, within Federal criminal jurisdiction. The Court held:

> "Unless and until notice of acceptance of jurisdiction has been given, Federal Courts are without jurisdiction to punish under criminal laws of the United States and act committed on lands acquired by the United States. Id at HN1.

-4-

The act of October 9, 1940, 40 U.S.C., Section 255, provides that United States agencies and authorities may accept jurisdiction over lands acquired by the Unites States by filing a notice with the government of the State in which the land is located or by taking other similar appropriate action. <u>Letter by Janet Reno, Attorney General</u>. The Court retired the opinion with:

> "Since the government had not accepted jurisdiction in the manner required by the act, the Federal Court had no jurisdiction of the proceeding, in the view it is immaterial that Louisiana statutes authorized the government to take jurisdiction, since at the critical time jurisdiction had not been taken," Adams supra.

This is inherent under the two separate and distinct jurisdictional systems. "State jurisdiction" encompasses the legislative powers to regulate, control and govern, real and personal property, individuals, and enterprises within the territorial boundaries of any particular State. In contrast, Federal jurisdiction is extremely limited, lawfully exercised only in the areas **external** to legislative power and territory, and specifically "delegated" by the constitution.

Between October of 1775 and the middle of 1776, each of the colonies separately severed their ties and relations with England, several even adopted constitutions for the newly formed **independent** States. By July of 1776, the exercise of English authority in any and all colonies was not recognized to any great degree. The Formal **Declaration of Independence** was the capstone of this separation of colonies from England.

The legal effect of the declaration of independence was to make each new State a separate and independent **Sovereign**, over which there was no other government of superior power or "jurisdiction." This was clearly shown in M'ilvaine v. Coxe's Lessee, 8 U.S. (4 Cranch) 209 (1808), where it was held:

> "This opinion is predicated upon a principal which is believed to be undeniable, that the several States which composed this union, so far at least as regarded their municipal regulations, became entitled, from the time when they declared themselves independent, to all rights and powers to Sovereign States, and they did not derive them from concessions made by the British king. The treaty of peace contains a recognition of their independence, not a grant of it. From hence it results, that the laws of the

-5-

sovereign State, and as such were obligatory upon the people of such State, from the time they were enacted. Id. 4 Cranch at 212.

Additional authority of similar expression is found in Harcourt v. Gaillard, 25 U.S. (12 Wheat) 523 (1827):

> "There was no territory within the United States that was claimed in any other right than that of some one of the confederated States: therefore, there could be no acquisition of territory made by the United States distinct from, or independent of some one of the States. Id. 12 Wheat at 526, 527.

Thus, unequivocally, in July 1776, the new State possessed all sovereignty, powers, and **jurisdiction**, over all the soil and persons in their respective territorial limits.

This condition of Supreme sovereignty and jurisdiction of each State over all property and persons within the borders thereof continued not withstanding the adoption of the **Articles of Confederation** wherein in **Article II** it was expressly stated:

> "Each State retains its Sovereignty, freedom, and independence, and every power, jurisdiction and right, which is not by this Confederation expressly delegated to the United States, in Congress assembled.

The essence of this retention of each State jurisdiction is embodied in the Constitution. Which reads as follows:

> "To exercise exclusive legislation in all cases whatsoever over such district (not exceeding ten square miles) as may be cession of particular States, and acceptance of Congress becomes the seat of the government of the United States, and to exercise like authority over [all] places purchased by concent of the legislature of the States in which the same shall be for the erection of forts, magazines, arsenals, dock-yards and other needful buildings, [40 U.S.C. 3112]. Article I, Section 8, Clause 17.

The power of exclusive legislation under the 8th section of the 1st article of the Constitution, **which is jurisdiction**, is united with cession of territory, which is to be the free act of the States, Bevans, Lexis 364 at 20.

### A. THE CONSTITUTION OF THE UNITED STATES CREATED A GOVERNMENT, WHICH HAS JURISDICTION OVER CERTAIN, ENUMERATED SUBJECT MATTERS

It is only in the areas listed herein that Congress can enact laws, and when they do, Federal Courts are to enforce the law. When law does not come from an enumerated power, the Federal Courts are to prevent the government or Congress from

-6-

applying them, and the Federal constitution prescribes what the "jurisdiction" of the Federal government is by the enumerated powers:

* That government can regulate foreign and interstate Commerce,

* Fix the standards of weight and measurements,

* Establish uniform laws on bankruptcies,

* Coin money and provide for the punishment of counterfeiting of the coins and securities of the United States,

* Protect the arts and science by copyrights and patents,

* Punish for piracies and felonies committed on the high seas,

* Raise and support an army and navy,

* Lay and collect taxes by appointment,

* Indirect taxes by exercise, duties.

Mr Hall would urge that this is the extent of the legitimate jurisdiction of the Federal government. It is only these areas, supra, that a crime/offence against the United States can exist, and this is so only when Congress actually passes a law in one of these areas. But an act committed within a State, whether with honest or criminal intent, cannot be made an offense against the United States, unless it has some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States.

The Courts of United States, by virtue of this grant of judicial power, and in the absence of legislation by Congress, have no criminal jurisdiction whatsoever. See United States v. Fox, 95 U.S. 670, 672 (1877).

There are no common law offences for crime against the United States. See United States v. Bedford, 27 Fed. Cas. P.91. 103 (1847).

### B. THE DISTRICT COURT ERRED IN NOT DETERMINING JURISDICTION PRIOR TO ENTERTAINING THE CAUSE

It is the Court's duty to resolve the jurisdiction of the Court. Regardless of who

brings the action, the Court must make a legal finding as to it's authority to obtain venue and jurisdiction before the Court moves to entertain the cause before it. The general rule is that a proceeding conducted or decision made be a Court is legally void when there is an absence of jurisdiction over the subject matter. A Court devoid of jurisdiction over the case cannot make a decision in favor of either party, cannot dismiss the complaint for failure to state a claim, and cannot render a summary judgment, as a decision would be on the merits of the action. It can only dismiss the case for want of jurisdiction. However, a Court can set aside orders it made before the want of jurisdiction was discovered, and a judgment by the Court without jurisdiction over the subject matter can be set aside and vacated at any time by the Court that rendered it. See A. Am Jur 2d 60, 377.

The trial Court failed to make the appropriate required finding, and now in the case at bar, Mr. Hall asserts that the United States by and through, the United States attorney, lost it's jurisdiction, once it failed to determine/prove jurisdiction to hear this case at bar before proceeding with a trial within the United States District Court. (The trial Court had an obligation to compel the United States to prove jurisdiction in the best interests of justice).

Mr. Hall's position is that the question challenging jurisdiction was never waived. It is well setteled in the law that when jurisdiction of the Court, and the United States (as here) is challenged, thus, "**onus probandi** is the actor." Onus Probandi is the burden of proving the burden of proof, where, "the strict meaning of Onus Probandi," Davis v. Rogers, 1 Houst (Del) 44, is that if no evidence is adduced by the party on whom the burden is cast, the issue must be found against him. Id. Futhermore, "where jurisdiction is challenged it must be proved." See Hagan v. Lavine, 415 U.S. 528 (1974). It is not sufficient that jurisdiction of United States Courts be infered argumentatively from averments in pleadings, therefore, it follows that the necessary factual predicate may not be gleaned from briefs and arguments themselves; this principle

-8-

ciple of Federal jurisdiction applies whether the case is at the initial stages, or at the appellate stage.

Here, the Court and the government has not been granted jurisdiction through the constitution of the United States of America, to adjudicate matters beyound the legislation of the United States. And without jurisdiction the Court cannot proceed at all in any cause, jurisdiction is power to declare the law, and when it ceases to exist, the only fuction remaining to the Court is that of announcing the fact and dimissing the cause. And this is not less clear upon authority from upon principle." See Ex Parte Mc Cradle, 74, U.S. 506 (1869). Federal Courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and Statutes enacted by Congress pursuant thereto. See Marbury v. Madison, 1 Cranch 137, 173, 180 (1803). For that reason, "District Courts of limited jurisdiction, which has only powers conferred on it by this Title under 28 U.S.C.A. article III, and cannot assume jurisdiction." See Standard v. Olesen, 74 S.Ct. 768 (1954); Mc Nutt v. Gim, 56 S. Ct. 789 (1936).

Mr. Hall contends that the District Court which convicted him is one of limited and special jurisdiction, thus it's action must be confirmed to the particular cases, controversies, and parties (one of which is **not** Mr. Hall) over which the constitution and the laws have authorized it to act; any proceedings without the limits prescribed is **Coram non judice** and it's action a nullity. See Rhode Island, et al., v. Commonwealth of Mass., 37 U.S. 657 (1938).

### C. THE GOVERNMENT FAILED TO ESTABLISH FEDERAL INTERSTATE COMMERCE NEXUS

It was the United States attorney that failed to inform the Grand Jury or the Court that the Federal statutory provision under which Mr. Hall is charged failed to contain language of an interstate commerce nexus. The enumerated subsection under which Mr. Hall is unlawfully incarcerated and detained of his liberty, contain no language which could be construed as incorporating a commerce nexus. Thus, the langu-

-9-

age of the statute does not grant Federal subject matter jurisdiction, nor grant formal notice to the accused party that an alleged violation of Titles 18 and 21, also invokes an uncharged violation of the Federal interstate commerce statute, even though no prohibitive acts moved beyond the borders of the sovereign State or across State lines or international borders.

The Federal government does not have general police powers; therefore, a ligitimate application of an offence may only be applied if a connection to an alleged violation of the interstate commerce statute is stated.

Mr. Hall urges that where the instant matter is concerned, the U.S. attorney had failed **ab initio** to establish that the so-called prohibitive conduct of Mr. Hall moved beyond the borders of the sovereign State. Thus, in absence of the commerce charge, the government has failed to establish Federal subject matter jurisdiction over the alleged offence.

Mr. Hall argues that under our Federal system, the States possess primary authority for defining and enforcing precise statutory language of the act in question to determine whether it applies solely within the jurisdiction of the United States. There simply is no statutory language expressly stating that the act applies "extra jurisdictionally." This is particularly apparent from a review of the alleged offence, because it mentions nothing in reference to interstate commerce. And it is the Court's "duty to give effect, if possible, to **every clause and word of a statute.**" See United States v. Menasche, 348 U.S. 528 (1955). It is not a question of where the government can extend its jurisdiction, but whether Congress' intentions applied extraterritorially, where Congress has "not specifically defined," United States v. Bowman, 260 U.S. 94 (1922), the **locus** of the crime, in this situation, the Court seeking to ascertain Congress' intent must look to "the discription and nature of the crime and upon the territorial limitations upon the power and jurisdiction of a government to punish crime under the law of nation." Id. at 97-98.

-10-

### D. THIS ACTION REQUIRES A REVIEW OF THE ADMINISTRATIVE PROCEDURES ACT

Mr. Hall encourages the Court to review the Administrative Procedures Act, 44 U.S.C. § 1505 Et Seq, which provide the means for determining which statutes in any given act of Congress are applicable within Federal areas, and which statutes have "general" applicability within the territories, enclaves, and insular possessions, belonging to the Federal United States. At section 1505(a)(1), of title 44, of the United States Code, it is found that if a statute is not published in the Federal Register, the application of the statutory provisions is restricted to Federal agencies, or persons acting in their capacity as officers, agents, or employees of the Federal government.

In Hotch v. United States, 212 F.2d 280 (1954), the Court stated; "under our system of law, no act is punishable as a crime unless it is specifically condemned by the common law or by a statutory enactment of the legislature, (22 C.J.S., Crim. Law, at 17)." Id. at 283.

### E. REGARDLESS OF THE GOVERNMENT'S POSITION TITLE 21 IS CALLED INTO QUESTION AS A LEGAL NULLITY FROM INCEPTION

Within the above limits of Federal jurisdiction noted, it is now necessary to consider the inevitable, Titles 21 U.S.C. (and Title 3,18,28) are non positive law. This conclusion is difficult to challenge by any argument beyond this atstement: **an act in defiance of the constituion is not a law; it confers no rights; it imposes no duties; it affords no protections; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed. See Norton v. Shelby Co., 118 U.S. 425 (1886).**

The laws styled by the United States Code were never enacted as laws of the United States and are incompetent, completely naked of authority to found valid criminal prosecution. Therefore, the indictment, judgment and commitment resulting from the same is false.

### F. THE LEGISLATIVE HISTORY OF PUBLIC LAW 80-772

The bill on Federal Crimes and criminal procedure, which later became Public Law 80-772, was first introduced in the House of Representatives as H.R. 2200 during the 79th Congress, passed the House unanimously and was refered to the Senate Committee on judiciary on July 16, 1946, in the Second Session of the 79th Congress, but **never** passed the Senate and expired when the 79th Congress adjourned **sine die.** See 92 Congressional Record 9122, 9067 (July 16, 1946); 93 Cong. Rec. 5049 (May 12, 1947).

A similar bill, entitled "Crime and Criminal Procedure," was then reintroduced as H.R. 3190 during the First Session of the 80th Congress. The bill (with some amendments) passed the House
38 to 6 on May 12, 1947, and was referred to the Senate Committee on the judiciary the next day, in the First Session of the 80th Congress. See 93 Cong. Rec. 5048-5049 (May 12 1947), 5121 (May 13, 1947).

Again, the Senate did not take up the bill prior to the July 27, 1947 (conditional) intersession adjournment, in accordance with S. Con. Res. 33 Cong. Rec. 10439, 10522 (July 26, 1947). See the same. Upon President Truman's proclamation, Congress reconvened on November 17, 1947, and the First Session of the 80th Congress adjourned **sine die** on December 19, 1947, without the Senate passing H.R. 3190. See the same, and; Kennedy v. Sampson, 511 F.2d 430 444 N.4 (D.C. Cir. 1974).

H.R. 3190, which expired upon the **sine die** adjournment of Congress in 1947, was not reintroduced in the House again at any time in 1948 during thr Second Session of the 80th Congress. See 94 Cong. Rec. 568 (1948). Mysteriously, however, near the end of the Second Session of the 80th Congress, on June 14, 1948, H.R. 3190, with judiciary Committee amendments (Per S. Rept. No. 1620) surfaced in the Senate as if it had not never expired with the **sine die** adjournment in 1947 or as if it was passed once again by the House in 1948. See 94 Cong. Rec. 8075 (JUne 14, 1948).

The senate promptly passed the amended H.R. 3190 on June 18, 1948, and sent it

back to the House, expecting the House would adopt the amended bill. See Cong. Rec 8721-8722 (June 18, 1948). The House then "concurred" in the amendments that same day but never voted on the amended bill. See 94 Cong. Rec. 8864-8865 (June 18, 1948).

In accordance with H. Con. R. 218, the Second Session of the 80th Congress (conditionally) adjourned on June 20, 1948, with H.R. 3190 still to be signed by the Speaker of the House and the Presedent pro tempore of the Senate after the adjournment by H. Con. Res. 219. See the same, and see also <u>Kennedy</u> v. <u>Sanpson</u>, 511 F.2d at 444 N.5.

It was only after this final adjournment of the Second Session of the 80th Congress, and as authorized by H. Con. Res. 219, that the Speaker and the President pro tempore signed the enrolled H.R. 3190 and presented it to President Truman on June 23, 1948, for the President to sign the enrolled bill into law on June 25,1948. See 94 Cong. Rec. 9354, 9365 and 9367. Respectively; see also 94 Cong. Rec. D 557 (daily digest).

At the time H.R. 3190 was signed by the Speaker of the House and the President pro tempore of the Senate, the 80th Congress was not in open Session but it was fully adjourned **sine die.** See Kennedy, 511 F.2d at 444 N. 5.

The face of the engrossed bill as signed by the 80th Congress shows that the engrossed bill was passed and signed in the 80th Congress, 1947 Session, by the House of Representitives. However, the enrolled bill, which actually placed Public Law 80-772 into law, was altered from the engrossed bill (which showed a date enrollment in 1947 in the First Session of the 80th Congress), to make it appear that it passed both Houses in 1948 in the Second Session of Congress, thus, rendering it a **fraud** and **forgery.**

### G. THE SENATE AND THE HOUSE OF REPRESENTITIVES OF THE UNITED STATES WERE IN FACT <u>NOT</u> IN CONGRESS ASSEMBLED

A further problem with the enactment of public Law 80-772 derives from the enactment clause which accompanies the bill. 1 U.S.C. § 101 specifically sets forth the required form of the enact clause of all acts of Congress: "the enacting clause of

-13-

all Act of Conress **shall** be in the following form: 'be it enacted by the Senate and the House of Representitives of the United States of America in Congress assembled." (1 U.S.C. § 101, July 30, 1947, Ch. 388, 61 stat 634). However, Public Law 80-772, was not legally passed by both houses as shown herein, as H.R. 3190 expired **sine die** in the First Session of the 80th Congress and was **not introduced** as a new bill in the House in the Second Session of the 80th Conress. It was also not enacted in Congress assembled, as it was "signed into law" by the President pro tempore of the Senate and the Speaker of the House only **after**Congress adjourned. Therefore, the enactment clause for Public Law 80-772 is ivalid on it's face, and without a proper enactment clause, Public Law 80-772 itself is invalid on its face.

## H. THE COURT MUST ADDRESS JURISDICTIONAL CLAIMS

At this point, "it is most appropriate to restate certain basic principles that limit the power of every Federal Court. Federal Courts are not Courts of general jurisdiction; they have only the power that is authorized by Article III of the constitution and the statutes enacted by Congress thereto. See Marbury v. Madison, 1 Cranch 137 at 173-180; 2 L. Ed. 60 (1803); Bender v. Williamsport Area School District, 475 U.S. 534 at 511 (1996). See also Fed. R. Civ. Proc. Rule 26-37; Oppenheimer Fund Inc v. Sanders, 437 U.S. 340 (1978).

For that reason, every Federal Court has a special obligation to "satisfy itself of it's own jurisdiction in a cause under review." Even though the parties are prepared to concede it. See Mitchell v. Mauer, 293 U.S. 237 at 244 (1934) Id.

The United States Supreme Court has ruled if the record discloses that the lower Court was without jurisdiction, this Court will notice the defect although the parties make no contention concerning it. When the lower Federal Courts lacks jurisdiction, we have jurisdiction on appeal, not on the merits, but merely for correcting the error of the lower Court for entertaining the suit. See United States v. Carrick, 289 U.S. 435 (1936); Id. See also, Summers v. Mata, 449 U.S. 539 at N. 2 (1981); Louisville

Nashville Rail Co. v. Mottley, 211 U.S. 149 (1908).

This obligation to notice defects in a Court's subject matter jurisdiction assumes a special importance when a constitutional issue is presented.

In a long and venerable line of cases, the Supreme Court has held that without proper jurisdiction, a Federal Court cannot proceed at all, but can only note the jurisdictional defect and dismiss the cause for lack of jurisdiction. See Capron v. Van Noorden, 6 U.S. at 127, Ibid.

It is well settled that jurisdiction is established as threshold matter, which springs from the nature and limits of the judicial power of the United States and is inflexible and without exception. See Mansfield C&l. M. R. Co. v. Swan, 111 U.S. 379 (1984); Steel Company v. Citizens for a better enviornment, 523 U.S. 83 (1998).

This principle is grounded in "two centuries of jurisprudence affirming the necessity of determining jurisdiction before proceeding to the facts." Steel Co., 523 U.S. at 98-102. This reiterates the absolute purity of the rule that Article III jurisdiction is always an antecedent question. Id

Article III subject matter jurisdiction questions can be raised at any time and addressed by Federal Courts at any time on their own petition. See Mc Grath v. Kristensen, 340 U.S. 162 (1950). Lack of Article III jurisdiction cannot be waived and cannot be conferred upon a Federal District Court by consent, by action, or by stipulation. See Califonia v. La Rue, 409 U.S. 109 (1972). The validity of an order on sentencing of a Federal Court depends upon that Court having jurisdiction over both the subject matter and the defendant. See Stroll v. Gottlier, 305 U.S. 165 (1938).

Thus, unless the power and authority of a Court to perform a comtemplated act can be found in the constitution or laws thereunder, it is without jurisdiction and its acts are invalid. See Angel v. Bullington, 330 U.S. 183 (1947); Kokkonen v. Guardian Life Insurance Co. 512 U.S. at 377 ("Federal Courts are Courts of limited jurisdiction 'and' possess only that power authorized by Congress and statute."); Thomas v.

-15-

Arn, 474 U.S. 140 (1985); (quoting United States v. Payner, 447 U.S. 727 (1980)("even a sensible and efficient use of the supervisory power of the Court however, is invalid if it conflicts with constitutional or statutory provisions. A contrary result would confer on judiciary power to disregard the considered limitations of the law it is charged with enforcing.")

The presumption is that causes are not within the jurisdiction of Federal Courts unless the contrary affirmatively appears. It is to be presumed a cause lies outside the limited jurisdiction and the burden of establishing the contrary rest upon the government. See Bess v. Preston, 111 U.S. 252 (1884).

### I. PUBLIC LAW 80-772 IS NOT CONSTITUTIONAL SINCE IT WAS ENROLLED BY FRAUD

Facts established herein prove the following: H.R. 3190 was passed by the House in the First Session of the 80th Congress in 1947 and was then signed as an "engrossed bill", which establishes the fact that it passed the House in 1947 in the First Session of the 80th Congress. In the Second Session of the 80th Congress the senate passed H.R. 3190 but the House did not because it had **expired sine die** with the **sine die** adjuornment of Congress in 1947 and had not been reintroduced in the Second Session of the 80th Congress as new legislation. An "enrolled bill" is required to be in the identical form to an engrossed bill. "An enrolled bill is the final version passed in identical form by both Chambers and sent to the President" (C-SPAN Congressional Directory, 2004, emphasis added). However, the engrossed bill for Public Law 80-772 was altered by Congress to make it "appear" that it had passed both the Houses of Congress in 1948, as shown on the face of the enrolled bill, thereby rendering it a Fraud and a Forgery. The fraud rendered the passage of Public Law 80-772 unconstitutional and void from its inception as a matter of Law.

### J. ALL STATUTES A FORTIORI MUST BE CONSTITUTIONAL TO BE VALID

Since no constitutional basis exists for Mr. Hall's indictment, conviction, and sentencing, the Court has a constitutional duty to issue an order for his release.

(Mr. Hall request the Court take judicial notice of the Oath of Office sworn by the officers of the Court and U.S. attorneys).

"The constitution of the United States is Supreme Law of the Land and binds every forum whether it derives its authority from a State or from the United States." See Cook v. Moffat & Curtis, 46 U.S. 295 (1847); Dodge v. Woolsey, 59 U.S. 331 (1855).

The first three Articles of the Contitution establish the principle of Seperation of Powers, whereby no brance may exercise powers that properly belong to another or delegate its responsibilities to other branches, U.S. Const., Art. 1-3, with precedents.

An Act of Congress repugnant to the constitution is void. See Cooper v. Telfair, 4 Dall 14 (1800). And the Constitution must prevail where inconsistency with a statute is clear. See Powell v. Pennsylvania, 127 U.S. 687 (1888).

### K. TO BE CONSTITUTIONAL, CRIMINAL STATUTES MUST HAVE A CLEAR LEGISLATIVE BASIS

A charge of a crime is **society's moral condemnation of an individual with everlasting social stigma.** Therefore, since the charge of a crime in effect condemns an individual as an outcast in his own society, a charge of a crime must have a clear legislative basis. See United States v. Smull, 236 U.S. 405 (1915). Is this not why **penal** law are construed strictly because legislatures, not Courts, define crime and establish punishments. See Yates v. United States, 354 U.S. 298 (1957), overruled on other grounds.

"No stipulation by an executive official purporting to operate under a statute and a party affected by the official's actions can bring that statute into existence, even for purposes of a judicial decision as to its construction." See Independent Ins Agent of America, Inc v. Clarke, 965 F.2d 1077 (D.C. Cir. 1992). Where no law exists, no crime exists. Therefore, since no law exists **here,** no crime exists.

### L. IT IS THE COURT'S DUTY TO DECLARE LEGISLATION UNCONSTITUTIONAL

-17-

In Marbury, at 5 U.S. 177, the Supreme Court stated; "it is emphatically the duty of the judiciary department to say what the law is." Judicial intervention is appropriate "when the failure of Congress to adhere to its own rules implicates constitutional rights. See Metzen v. Federal Energy regulatory Commission, 673 F.2d 1282 (D.C. Cir. 1982).

### M. IT IS THE DUTY OF THE COURT TO DISCHARGE A PRISONER PURSUANT TO AN INVALID STATUTE

The requirement that a Court have jurisdiction over the person **before rendering** judgment is rested in Due Process and is a basis requirement that must be satisfied before a vilid judgment can be had or enforced. See Insurance Corp. v. Ireland, Ltd. v. Compagnie Des Bauxties de Guince, 456 U.S. 694 (1982). That requirement stems from Article III of the constitution. If the Court lacked jurisdiction, the judgment is invalid, unable to ripen with time into a valid judgment.

"Where there is clearly no jurisdiction over the subject matter, any authority exercised is usurped authority and for the exercise of such authority when the want of jurisdiction is known to the judge, no exercise is permissible." See Exparte Slesold, 100 U.S. 371 (1879).

### CONCLUSION

The harm in this case can only be augmented by this court's defiance to vindicate Articles of the Constitution. Mr. Hall has demonstrated the Court's lack of jurisdiction and the government's lack of standing to bring the suit. Therefore, the issue is legislative jurisdiction and this issue mandates correction.

By: *Zebedee Eli Hall*
Zebedee Eli Hall, Agent/Power of Attorney in Fact, for ZEBEDEE E. HALL®

c/o: #30428-013
Federal Correctional Institute
Post Office Box 6000
Florence, Colorado

## CERTIFICATE OF SERVICE

I, Zebedee Eli Hall, sui juris, a flesh and blood man, a living soul, sovereign, Agent/Power of Attorney in Fact for ZEBEDEE E. HALL®, do hereby and herein certify that on this 28 day of March, 2007, a true and correct copy of the foregoing: <u>Mr. Hall Challenges The Judgment As Void Under Fed. R. Civ. Proc. 60(b)(4)</u>, was sent to the persons below via U.S. Mail:

Willaim J. Leone/Kathleen M. Tafoya (Esquires)
United States Attorney's Office
1225 17th Street, 7th Floor
Denver, Colorado

Gregory C. Langham (Clerk Of the Court)
U.S. District Court Of Colorado
901-19th Street, Room A-105
Denver, Colorado

Paul D. Clemant (Solocitor General)
950 Pennsylvania Ave. NW
Room 5614
Washington, D.C.
Alberto Gonzalez (Attorney General)
U.S. Department Of Justice
950 Pennsylvania Ave. NW
Washington, D.C.

George W. Bush Jr. (President)
1600 Pennsylvania Ave.
The White House
Washington, D.C.

By: _____
Zebedee Eli Hall, Agent/Power of
Attorney in Fact for ZEBEDEE E. HALL®,
In Unlimited Commercial Libility and
Without Prejudice, UCC-1-207-308, c/o:

#30428-013
Federal Correctional Institute
Post Office Box 6000
Florence, Colorado

Zebedee Eli Hall, #30428-013
C/O FEDERAL CORRECTIONAL INSTITUTE
P.O. BOX 6000
FLORENCE, COLORADO [81226-6000]

PRIORITY MAIL
UNITED STATES POSTAL SERVICE®
WWW.USPS.COM
Label 107R, February 2006

RETURN RECEIPT REQUESTED

Gregory C. Langham (Court Clerk)
U. S. District Court of Colorado
901-19th Street, Room A-105
Denver, Colorado 80202

RECEIVED
UNITED STATES DISTRICT COURT
DENVER

APR 16 2007

GREGORY C. LANGHAM
CLERK



REGISTERED MAIL
United States Postal Service

RB 093 434 106 US

Label 200, July 1999    (102595) 99-M-1904

0000

U.S. POSTAGE PAID
CLEMENTON, NJ 08021
APR 11, 07
AMOUNT
$13.80
0002 6794-06