# ATTACHMENT

Westlaw.

473 F.3d 1295                                                                                                    Page 1
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

H
U.S. v. Hall
C.A.10 (Colo.),2007.

United States Court of Appeals,Tenth Circuit.
UNITED STATES of America, Plaintiff-Appellee/Cross-Appellant,
v.
Zebedee HALL, also known as "Zee," also known as "Zeke," Defendant-Appellant/Cross-Appellee.
**Nos. 05-1205, 05-1251.**

Jan. 23, 2007.

**Background:**  Defendant was convicted in the United States District Court for the District of Colorado, Wiley Y. Daniel, J., of conspiracy to distribute 50 or more grams of crack cocaine and possession and distribution of 50 or more grams of crack cocaine, and was sentenced to 151 months' imprisonment. Defendant appealed, and government cross-appealed sentence.

**Holdings:**  The Court of Appeals, Tacha, Chief Circuit Judge, held that:
(1) district court did not abuse its discretion in refusing to sever defendant's trial from that of codefendants;
(2) district court did not abuse its discretion in refusing to question other jurors after one juror was excused;
(3) any prosecutorial misconduct in closing argument was not plain error;
(4) evidence was insufficient to support conviction for possession and distribution of crack cocaine;
(5) district court did not clearly err applying offense level enhancement for possession of a dangerous weapon in connection with offense;
(6) prior conviction for which defendant

was pardoned was properly included in calculation of sentencing guidelines criminal history score; and
(7) sentence was unreasonable.

Affirmed in part, reversed in part, and remanded.

West Headnotes

**[1] Criminal Law 110 ⟺622.7(4)**

110 Criminal Law
    110XX Trial
        110XX(A) Preliminary Proceedings
            110k622 Joint or Separate Trials of Codefendants
                110k622.7 Grounds for Severance or Joinder
                    110k622.7(4) k. Conspiracy Cases. Most Cited Cases

**Criminal Law 110 ⟺622.7(10)**

110 Criminal Law
    110XX Trial
        110XX(A) Preliminary Proceedings
            110k622 Joint or Separate Trials of Codefendants
                110k622.7 Grounds for Severance or Joinder
                    110k622.7(10) k. Availability of Codefendant's Testimony at Joint Trial; Comment on Refusal to Testify. Most Cited Cases
In prosecution for possession and distribution and conspiracy to distribute crack cocaine, district court did not abuse its discretion in refusing to sever defendant's trial from that of codefendants; although defendant provided affidavit from codefendant indicating he would be willing to testify to defendant's innocence if they were tried separately, government's wiretap evidence would have directly contradicted

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case No. 1:01-cr-00214-RM   Document 3636-1   filed 09/29/08   USDC Colorado   pg 3 of 25

473 F.3d 1295                                                          Page 2
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

such testimony, and government could have impeached codefendant with his extensive list of prior convictions, and joint trial was in interest of judicial economy because same witnesses and exhibits were necessary in both trials. Fed.Rules Cr.Proc.Rules 8(b), 14, 18 U.S.C.A.

**[2] Criminal Law 110 ⟨⟨⟩⟩622.7(3)**

110 Criminal Law
    110XX Trial
        110XX(A) Preliminary Proceedings
            110k622 Joint or Separate Trials of Codefendants
                110k622.7 Grounds for Severance or Joinder
                    110k622.7(3) k. Prejudice; Fair Trial. Most Cited Cases

When defendants properly have been joined, a district court should grant a severance only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Fed.Rules Cr.Proc.Rules 8(b), 14, 18 U.S.C.A.

**[3] Criminal Law 110 ⟨⟨⟩⟩622.8(4)**

110 Criminal Law
    110XX Trial
        110XX(A) Preliminary Proceedings
            110k622 Joint or Separate Trials of Codefendants
                110k622.8 Proceedings
                    110k622.8(4) k. Evidence. Most Cited Cases

Inasmuch as severance is a matter of discretion and not of right, the defendant must bear a heavy burden of showing real prejudice to his case. Fed.Rules Cr.Proc.Rule 14, 18 U.S.C.A.

**[4] Criminal Law 110 ⟨⟨⟩⟩404.65**

110 Criminal Law
    110XVII Evidence
        110XVII(K) Demonstrative Evidence
            110k404.35 Particular Objects
                110k404.65 k. Weapons and Related Objects. Most Cited Cases

In prosecution for possession and distribution and conspiracy to distribute crack cocaine, district court did not abuse its discretion in admitting, as tools of the drug trade, shotgun found in car parked in yard of defendant's residence and various ammunition found inside residence; although gun was unloaded, ammunition found did not include shotgun shells, and there were no fingerprints on gun, gun was oiled and cleaned, it was sitting on top of other items in car and was easily accessible to defendant by reaching through car's T-top roof, video surveillance and wiretaps revealed defendant frequently returned to his residence immediately after negotiating drug transactions over the telephone, and police also found scales containing cocaine residue in residence. Fed.Rules Evid.Rule 403, 28 U.S.C.A.

**[5] Controlled Substances 96H ⟨⟨⟩⟩33**

96H Controlled Substances
    96HIII Offenses
        96Hk32 Sale, Distribution, Delivery, Transfer or Trafficking
            96Hk33 k. In General. Most Cited Cases

Some items like firearms, large sums of cash, weighing scales, and uncharged quantities of illegal drugs are generally viewed as tools of the trade, that is, means for the distribution of illegal drugs; as such, these items are probative of a defendant's participation in the drug distribution business.

**[6] Criminal Law 110 ⟨⟨⟩⟩868**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

110 Criminal Law
    110XX Trial
        110XX(J) Issues Relating to Jury Trial
            110k868 k. Objections and Disposition Thereof. Most Cited Cases

In prosecution for possession and distribution and conspiracy to distribute crack cocaine, district court did not abuse its discretion in refusing defense counsel's request to question other jurors after one juror was excused after she revealed to court that she heard defense counsel talking to defendant about gun being found after search for drugs; excused juror said she told other jurors about overhearing the conversation, but said she did not tell other jurors the substance of the conversation, and there was no evidence that any prejudicial information reached remainder of jury.

**[7] Conspiracy 91 ⟲43(12)**

91 Conspiracy
    91II Criminal Responsibility
        91II(B) Prosecution
            91k43 Indictment or Information
                91k43(12) k. Issues, Proof, and Variance. Most Cited Cases

Even if variance between evidence and government's theory of the conspiracy, which was not contained in indictment, could be basis for reversal of conviction, there was no such variance in defendant's prosecution for conspiracy to distribute crack cocaine; prosecutor's theory was that leader of conspiracy fronted drugs to newly released felons for sale and later reimbursement to leader, until those distributors became profitable enough to pay for drugs in advance, and defendant was not newly released from prison and did not need leader to front him drugs, but government also theorized that the conspiracy depended on distributors being at different stages, so

that those further along could provide funds allowing leader to front drugs to new distributors. Comprehensive Drug Abuse Prevention and Control Act of 1970, §§ 401(a)(1), (b)(1)(A)(iii), 406, 21 U.S.C.A. §§ 841(a)(1), (b)(1)(A)(iii), 846.

**[8] Conspiracy 91 ⟲43(12)**

91 Conspiracy
    91II Criminal Responsibility
        91II(B) Prosecution
            91k43 Indictment or Information
                91k43(12) k. Issues, Proof, and Variance. Most Cited Cases

A "variance" occurs when the conspiracy charged in an indictment is different from the evidence adduced at trial.

**[9] Criminal Law 110 ⟲1167(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(Q) Harmless and Reversible Error
            110k1167 Rulings as to Indictment or Pleas
                110k1167(1) k. Indictment or Information in General. Most Cited Cases

Not every variance requires reversal of a conviction; a variance is only reversible if it affects the substantial rights of the accused.

**[10] Criminal Law 110 ⟲1037.1(2)**

110 Criminal Law
    110XXIV Review
        110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
            110XXIV(E)1 In General
                110k1037 Arguments and Conduct of Counsel
                    110k1037.1 In General
                        110k1037.1(2) k. Partic-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case No. 1:01-cr-00214-RM   Document 3636-1   filed 09/29/08   USDC Colorado   pg 5 of 25

473 F.3d 1295                                                                Page 4
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

ular Statements, Arguments, and Comments. Most Cited Cases

In prosecution of defendant and codefendants for possession and distribution and conspiracy to distribute crack cocaine, any closing-argument misconduct by prosecutor in translating code words used during recorded drug transactions among cocconspirators was not egregious misconduct resulting in a miscarriage of justice, as required to establish plain error; although witnesses who testified as to meaning of code words did not do so in context of defendant's conversations, prosecutor's remarks about code words were in general reference to terminology common to some of the conversations among coconspirators, rather than in reference to specific recorded conversations in which defendant participated.

### [11] Criminal Law 110 ⚷1037.1(2)

110 Criminal Law
    110XXIV Review
        110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
            110XXIV(E)1 In General
                110k1037 Arguments and Conduct of Counsel
            110k1037.1 In General
                110k1037.1(2) k. Particular Statements, Arguments, and Comments. Most Cited Cases

In prosecution of defendant and codefendants for possession and distribution and conspiracy to distribute crack cocaine, any misconduct by prosecutor in stating in closing argument that there was not a big amount of dope found at defendant's house, when in fact no drugs were found at defendant's residence, other than cocaine residue on scales, was not egregious misconduct resulting in a miscarriage of

justice, as required to establish plain error; it was clear that prosecutor was entreating jury not to acquit defendant on conspiracy charge merely because police failed to recover drugs from his house.

### [12] Controlled Substances 96H ⚷80

96H Controlled Substances
    96HIII Prosecutions
        96Hk70 Weight and Sufficiency of Evidence
            96Hk80 k. Possessory Offenses.
Most Cited Cases

### Controlled Substances 96H ⚷82

96H Controlled Substances
    96HIII Prosecutions
        96Hk70 Weight and Sufficiency of Evidence
            96Hk82 k. Sale, Distribution, Delivery, Transfer or Trafficking. Most Cited Cases

Evidence was insufficient to establish that defendant possessed crack cocaine on or about date charged, as element of offense of possession and distribution of crack cocaine; although government introduced transcripts of three conversations recorded on charged date and previous day in which defendant and alleged drug supplier discussed price of drugs and agreed on price, video surveillance on charged date showed man identified as defendant by police officer briefly entering supplier's car, and there was evidence that defendant possessed crack at other times, there was no eyewitness testimony or video evidence putting defendant in possession of crack on or about charged date, and no testimony from anyone claiming to have bought crack from him on or about that date. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 401(a)(1), (b)(1)(A)(iii), 21 U.S.C.A. § 841(a)(1), (b)(1)(A)(iii).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case No. 1:01-cr-00214-RM    Document 3636-1    filed 09/29/08    USDC Colorado    pg 6 of 25

473 F.3d 1295                                                                                      Page 5
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

**[13] Criminal Law 110 ⟜1134.75**

110 Criminal Law
    110XXIV Review
        110XXIV(L) Scope of Review in General
            110XXIV(L)8 Sentencing
                110k1134.75 k. In General.
Most Cited Cases
    (Formerly 110k1147)

**Sentencing and Punishment 350H ⟜30**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(B) Extent of Punishment in General
            350Hk30 k. In General. Most Cited Cases

The court of appeals reviews sentences imposed for reasonableness; the court requires reasonableness in two respects: the length of the sentence, as well as the method by which the sentence was calculated.

**[14] Sentencing and Punishment 350H ⟜1365**

350H Sentencing and Punishment
    350HVI Habitual and Career Offenders
        350HVI(K) Proceedings
            350Hk1363 Recidivist or Habitual Offender Charge
            350Hk1365 k. Necessity of Special Allegations or Charges. Most Cited Cases

Statute requiring government to file information when seeking to enhance a defendant's punishment for drug offense based on prior convictions did not apply with respect to government's request for enhancement of defendant's sentencing guidelines sentence for possession and distribution and conspiracy to distribute crack cocaine, since those enhancements had no effect on the statutory maximum or minim-

um sentence applicable to defendant. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 411(a)(1), 21 U.S.C.A. § 851(a)(1).

**[15] Jury 230 ⟜34(8)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
                230k34(5) Sentencing Matters
                    230k34(8) k. Drug Offenses. Most Cited Cases

Enhancement of defendant's sentencing guidelines range in his sentencing for possession and distribution and conspiracy to distribute crack cocaine based on district court's findings as to drug quantity and defendant's possession of a dangerous weapon did not violate defendant's Sixth Amendment right to trial by jury, since court applied the guidelines as advisory rather than mandatory. U.S.C.A. Const.Amend. 6; U.S.S.G. § 2D1.1(b)(1), (c)(3), 18 U.S.C.A.

**[16] Jury 230 ⟜34(6)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
                230k34(5) Sentencing Matters
                    230k34(6) k. In General. Most Cited Cases

After decision in *United States v. Booker* making sentencing guidelines advisory, a constitutional violation lies only where a district court uses judge-found facts to enhance a defendant's sentence mandatorily under the guidelines, and not where a court

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

473 F.3d 1295                                                                                   Page 6
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

merely applies such facts in a discretionary manner. U.S.C.A. Const.Amend. 6; U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[17] Sentencing and Punishment 350H ☞726(3)**

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(B) Offense Levels
            350HIV(B)3 Factors Applicable to Several Offenses
                350Hk726 Dangerous Weapons or Destructive Devices
                    350Hk726(3) k. Possession and Carrying. Most Cited Cases
In sentencing defendant for possession and distribution and conspiracy to distribute crack cocaine, district court did not clearly err in applying sentencing guidelines offense level enhancement for possession of a dangerous weapon in connection with offense; shotgun was found in car parked right outside door of defendant's residence, gun was easily accessible to defendant by reaching through car's T-top roof, and police also found scales containing cocaine residue in residence. U.S.S.G. § 2D1.1(b)(1), 18 U.S.C.A.

**[18] Sentencing and Punishment 350H ☞726(3)**

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(B) Offense Levels
            350HIV(B)3 Factors Applicable to Several Offenses
                350Hk726 Dangerous Weapons or Destructive Devices
                    350Hk726(3) k. Possession and Carrying. Most Cited Cases

**Sentencing and Punishment 350H ☞ 963**

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(H) Proceedings
            350HIV(H)2 Evidence
                350Hk963 k. Burden of Proof.
Most Cited Cases

**Sentencing and Punishment 350H ☞ 973.5**

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(H) Proceedings
            350HIV(H)2 Evidence
                350Hk973 Degree of Proof
                    350Hk973.5 k. Factors Enhancing Sentence. Most Cited Cases
    (Formerly 350Hk973)
In applying the sentencing guidelines offense level enhancement for possession of a dangerous weapon in connection with a drug trafficking offense, the government bears the initial burden of proving possession of the weapon by a preponderance of the evidence; this burden is satisfied when the government demonstrates that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant. U.S.S.G. § 2D1.1(b)(1), 18 U.S.C.A.

**[19] Sentencing and Punishment 350H ☞963**

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(H) Proceedings
            350HIV(H)2 Evidence
                350Hk963 k. Burden of Proof.
Most Cited Cases
For purposes of applying the sentencing guidelines offense level enhancement for possession of a dangerous weapon in connection with a drug trafficking offense, if the government meets its initial burden of proving possession of the weapon by a pre-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case No. 1:01-cr-00214-RM   Document 3636-1   filed 09/29/08   USDC Colorado   pg 8 of 25

473 F.3d 1295                                                                 Page 7
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

ponderance of the evidence, the burden shifts to the defendant to show that it is clearly improbable the weapon was connected with the offense. U.S.S.G. § 2D1.1(b)(1), 18 U.S.C.A.

**[20] Sentencing and Punishment 350H ☞799**

350H Sentencing and Punishment
  350HIV Sentencing Guidelines
    350HIV(E) Prior or Subsequent Misconduct
      350Hk799 k. Effect of Subsequent Circumstances. Most Cited Cases
In defendant's sentencing for possession and distribution and conspiracy to distribute crack cocaine, defendant's prior conviction under Louisiana law for felony armed robbery, and his later conviction for being a felon in possession of a firearm based on robbery conviction, were properly included in calculation of defendant's sentencing guidelines criminal history score, even though defendant was pardoned for robbery offense by operation of Louisiana statute mandating pardons for first offenders upon completion of sentence; there was nothing to suggest that pardon was related to defendant's innocence or an error of law, and, under Louisiana law, it did not restore defendant's right to possess firearms. U.S.S.G. § 4A1.2(j), 18 U.S.C.A.; LSA-R.S. 15:572.

**[21] Sentencing and Punishment 350H ☞645**

350H Sentencing and Punishment
  350HIII Sentence on Conviction of Different Charges
    350HIII(D) Disposition
      350Hk645 k. Total Sentence Deemed Not Excessive. Most Cited Cases

683

350H Sentencing and Punishment
  350HIV Sentencing Guidelines
    350HIV(B) Offense Levels
      350HIV(B)2 Factors Peculiar to Particular Offenses
        350Hk683 k. Conspiracy and Racketeering. Most Cited Cases

**Sentencing and Punishment 350H ☞686**

350H Sentencing and Punishment
  350HIV Sentencing Guidelines
    350HIV(B) Offense Levels
      350HIV(B)2 Factors Peculiar to Particular Offenses
        350Hk686 k. Drugs and Narcotics. Most Cited Cases

**Sentencing and Punishment 350H ☞779**

350H Sentencing and Punishment
  350HIV Sentencing Guidelines
    350HIV(E) Prior or Subsequent Misconduct
      350Hk779 k. In General. Most Cited Cases
Defendant's below-Guidelines 151-month sentence for possession and distribution and conspiracy to distribute crack cocaine was unreasonable by virtue of district court's incorrect calculation of applicable advisory sentencing guidelines range; after calculating applicable guidelines range of 235-293 months, court decided to reduce defendant's criminal history category from three to one, so that defendant's guidelines range would be lower than those of codefendants with more serious criminal records, and court concluded that resulting guidelines range was 151-188 months, but correct range for defendant's offense with criminal history category of one was

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

188-235 months. 18 U.S.C.A. § 3553(a).

**[22] Sentencing and Punishment 350H**
⊂⟶34

350H Sentencing and Punishment
   350HI Punishment in General
      350HI(B) Extent of Punishment in General
         350Hk33 Effect of Statute or Regulatory Provision
         350Hk34 k. In General. Most Cited Cases

Procedural error in application of statutory sentencing factors renders resulting sentence unreasonable. 18 U.S.C.A. § 3553(a).

**[23] Sentencing and Punishment 350H**
⊂⟶34

350H Sentencing and Punishment
   350HI Punishment in General
      350HI(B) Extent of Punishment in General
         350Hk33 Effect of Statute or Regulatory Provision
         350Hk34 k. In General. Most Cited Cases

District court's failure to consider a defendant's non-frivolous argument that variance from Sentencing Guidelines is warranted under statutory sentencing factors renders the sentence procedurally unreasonable such that resentencing is required. 18 U.S.C.A. § 3553(a).

**\*1299** Submitted on the briefs: FN\*
Zebedee Hall, pro se.

    FN\* After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R.App. P. 34(a)(2); 10th Cir. R.

34.1(G). The case is therefore ordered submitted without oral argument.

Stephen M. Wheeler, Wheeler Law Offices, PC, Evergreen, CO, for Appellant/Cross-Appellee.
William J. Leone, United States Attorney, Kathleen M. Tafoya, Assistant United States Attorney, and James C. Murphy, Assistant United States Attorney, Office of the United States Attorney for the District of Colorado, Denver, CO, for Appellee/Cross-Appellant.

Before TACHA, Chief Circuit Judge, BARRETT, and O'BRIEN, Circuit Judges.

TACHA, Chief Circuit Judge.
Following a jury trial, Defendant-Appellant Zebedee Hall was found guilty of one count of conspiracy to distribute fifty or more grams of crack-cocaine and aiding and abetting the same, see 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), 846, and 18 U.S.C. § 2, and one count of possession and distribution of fifty or more grams of crack-cocaine and aiding and abetting the same, see 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) and 18 U.S.C. § 2. The District Court sentenced him to 151 months' **\*1300** imprisonment. Mr. Hall now appeals his convictions and sentence on a variety of grounds, and the Government cross-appeals Mr. Hall's sentence. We have jurisdiction under 28 U.S.C. § 1291, and AFFIRM in part, REVERSE in part, and REMAND for resentencing.

## I. BACKGROUND

In September 2000, after receiving a tip about a large scale crack-cocaine operation headed by Willie Small, the FBI Metro Gang Task Force ("Task Force") began an

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case No. 1:01-cr-00214-RM   Document 3636-1   filed 09/29/08   USDC Colorado   pg 10 of 25

473 F.3d 1295                                                                                    Page 9
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

investigation. The Task Force worked with an informant who made multiple controlled purchases of crack-cocaine from Mr. Small and his associates while wearing a wire. It also used visual surveillance, video cameras, pen registers, and trap-and-trace devices to investigate Mr. Small's organization. The task force then filed an exhaustive 100-page summary of the investigation in federal district court seeking authorization to place a wiretap on Mr. Small's cellular and home phones. The court granted the authorization. The wiretaps were used to collect additional information about the operation over the course of several months.

On June 7, 2001, the FBI simultaneously executed numerous search and arrest warrants against suspected members of the drug conspiracy. Mr. Hall was one of the twenty-seven defendants ultimately charged in a seventy-seven count second superceding indictment that was centered around the large crack-cocaine distribution conspiracy headed by Mr. Small. Eighteen defendants pleaded guilty to various charges, and Mr. Hall and six others were tried together in a jury trial that lasted from September 22, 2003, to November 13, 2003. The Government summarized its theory of the conspiracy as follows:

> The conspiratorial organization followed a pattern typically referred to as a "hub and spokes" conspiracy. Willie Small was at the center of the conspiracy whose objective was to distribute crack cocaine for money. Willie Small had set up an enterprise dedicated to giving convicted felons an opportunity to get back into the business of crack distribution upon their release from prison. Small would "front", or give on consignment without payment of money, crack cocaine to various convicted felons as they were re-entering so-

ciety. Once they had sold that original amount of crack cocaine and re-paid the original purchase price, they could receive more crack cocaine, again on consignment, and re-sell that to make another profit. Eventually, it was the goal of the conspiracy that the re-developed distributor would become profitable enough to pay for crack cocaine in advance in ever-enlarging amounts, thus enabling Small to begin the process again with another newly released felon. The conspiracy depended upon the distributor felons being at different stages in the process of re-establishing their illegal businesses in order to provide funds to be able to "stake" a new member to crack cocaine in the beginning. One of the major reasons for making up his organization of convicted felons was Small's comfort level in dealing with people he felt relatively certain would not inform to police, even if caught with controlled substances. This structure gave a measure of comfort to all the members of the conspiracy, also.

The jury found Mr. Hall and his co-defendants guilty of various drug offenses. This court upheld the convictions and sentences of Mr. Hall's co-defendants in **\*1301** *United States v. Small,* 423 F.3d 1164 (10th Cir.2005). We now consider Mr. Hall's appeal.

## II. DISCUSSION

### A. Pretrial Motions

#### 1. Motion to suppress wiretap evidence.

Prior to trial, Mr. Hall and his co-defendants moved to suppress the Government's wiretap evidence, arguing that inac-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

473 F.3d 1295
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

Page 10

curate and misleading statements in the application and supporting testimony tainted the findings of the judge who approved the wiretap. Indeed, a defendant may challenge a facially sufficient affidavit on the ground that the police included deliberate or reckless falsehoods that were material to the district court's finding that the wiretaps were necessary. *Small,* 423 F.3d at 1172 (citing *Franks v. Delaware,* 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). The District Court held a five-day hearing to determine the propriety of suppressing the wiretap evidence. Based on the testimony and evidence presented, the District Court denied the defendants' motion, concluding that the allegedly false statements were either not inaccurate or were not made intentionally or with reckless disregard for the truth. The court also concluded that the statements were not material to the issuing court's finding of necessity.

Mr. Hall raises challenges identical to those raised by his co-defendants in *Small.* We concluded that the District Court did not err in denying the motion to suppress. *See Small,* 423 F.3d at 1172-78. Mr. Hall concedes that this ruling controls his case. Accordingly, we need not repeat that analysis here.[FN1]

> FN1. In his reply brief, Mr. Hall raises a new challenge to the admission of the wiretap evidence-namely, that the wiretap was not conducted with minimal interception of non-criminal activities. We decline to address this argument raised for the first time in a reply brief. *See United States v. Murray,* 82 F.3d 361, 363 n. 3 (10th Cir.1996).

*2. Motion to sever Mr. Hall's trial from*

that of his co-defendants.

[1] Mr. Hall moved to sever his trial from that of his co-defendants, arguing that a joint trial would be prejudicial because he would suffer from the spillover effect of evidence against his co-defendants, *see Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (noting that prejudice may arise where evidence of a co-defendant's wrongdoing erroneously leads a jury to conclude that the defendant is guilty), and in order to allow him to present exculpatory testimony that he could not present in a joint trial. With respect to the latter contention, Mr. Hall provided an affidavit from Mr. Small, one of his co-defendants, indicating that he would be willing to testify to Mr. Hall's innocence if they were tried separately. After a hearing, the District Court denied the motion. Mr. Hall argues that this decision was error. Mr. Hall no longer argues that he was prejudiced by any spillover evidence entered against his co-defendants. Rather, on appeal, he argues only that the District Court's refusal to sever his trial prevented him from presenting exculpatory testimony from Mr. Small-specifically, that Mr. Small never sold drugs to Mr. Hall.

[2][3] Multiple defendants may be tried jointly "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed.R.Crim.P. 8(b). Joint trials of defendants who are indicted together are preferred because "[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." **\*1302***Zafiro,* 506 U.S. at 537, 113 S.Ct. 933 (internal quotation marks omitted). If joinder "appears to prejudice a defendant[,] [however,] ... the court *may* order separate trials of counts, sever the de-

Case No. 1:01-cr-00214-RM   Document 3636-1   filed 09/29/08   USDC Colorado   pg 12 of 25

473 F.3d 1295                                                                    Page 11
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

fendants' trials, or provide any other relief that justice requires." Fed.R.Crim.P. 14(a) (emphasis added). We review the district court's denial of a motion to sever for an abuse of discretion. *United States v. Apperson,* 441 F.3d 1162, 1190 (10th Cir.2006). "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933. "Inasmuch as severance is a matter of discretion and not of right, the defendant must bear a heavy burden of showing real prejudice to his case." *United States v. McConnell,* 749 F.2d 1441, 1444 (10th Cir.1984)

In *McConnell,* this Court laid out seven factors relevant to evaluating Mr. Hall's claim that the District Court's failure to sever his trial prevented him from presenting exculpatory evidence from Mr. Small:

> 1) the likelihood that the co-defendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege; 2) the significance of the testimony in relation to the defendant's theory of defense; 3) the exculpatory nature and effect of such testimony; 4) the likelihood that the co-defendant's testimony would be impeached; 5) the extent of prejudice caused by the absence of the testimony; 6) the effect of a severance on judicial administration and economy; 7) the timeliness of the motion.

*Id.* at 1445; *see also United States v. Martinez,* 76 F.3d 1145, 1152 (10th Cir.1996). The District Court considered these factors and found Mr. Hall's timely motion "completely without merit." The court assumed that it was likely that Mr. Small would waive his Fifth Amendment privilege and testify and that the nature of the testimony would be exculpatory. However, the court noted that Mr. Small's testimony "completely lacks any substance or credibility," because the wiretap evidence directly contradicts it and because the Government would impeach Mr. Small's testimony with his extensive list of prior convictions. As such, the court concluded, Mr. Hall would not be prejudiced by the absence of Mr. Small's testimony "because its exculpatory value would be effectively nullified." Finally, the District Court observed that a joint trial was in the interests of judicial economy because the exact same witnesses and exhibits would be necessary in both trials. We agree. The District Court did not abuse its discretion by denying Mr. Hall's motion to sever.

*3. Motion to exclude co-conspirators' out-of-court statements.*

Both Mr. Hall and his co-defendants filed a motion *in limine* to exclude the admission of co-conspirators' statements that were captured in the form of wiretap recordings. The District Court denied the motion. Although hearsay statements are generally not admissible at trial, *see* Fed.R.Evid. 802, "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay, and is therefore admissible as substantive evidence against the party, Fed.R.Evid. 801(d)(2)(E). For a statement to be admissible under Fed.R.Evid. 801(d)(2)(E), the District Court must first find the following elements by a preponderance of the evidence: "(1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; and (3) that the statements **\*1303** were made in the course

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case No. 1:01-cr-00214-RM   Document 3636-1   filed 09/29/08   USDC Colorado   pg 13 of 25

473 F.3d 1295                                                                    Page 12
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

of and in furtherance of the conspiracy." *United States v. Sinclair,* 109 F.3d 1527, 1533 (10th Cir.1997). After a two-day hearing on the motion, during which the Government submitted a detailed description of the evidence it would present at trial to demonstrate the existence of the conspiracy and the individual defendants' participation in the conspiracy, the court found by a preponderance of the evidence that each element of the above test was satisfied and provisionally admitted the evidence.FN2

We review the admission of evidence for an abuse of discretion and "we will not disturb an evidentiary ruling absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error in judgment." *United States v. Dowlin,* 408 F.3d 647, 659 (10th Cir.2005) (alteration and quotation omitted).

> FN2. In admitting the evidence on a provisional basis, the District Court explained that if the Government's proof at trial failed to conform to its proffered evidence, the defendants remained free to move for appropriate sanctions, including mistrial.

Although his brief is not entirely clear on this point, Mr. Hall appears to argue that because the wiretap conversations between him and Mr. Small included the use of "code words" to conceal their criminal dealings, and because the Government presented no expert witness to interpret those words, the District Court could not have properly found that a criminal conspiracy existed, that Mr. Hall participated in it, or that the statements were made in the course of and in furtherance of the conspiracy. But Mr. Hall fails to specifically identify any co-conspirator hearsay statements that were actually admitted at trial

against him; nor does he provide citations to the record where these statements might be found. *See* Tenth Cir. R. 28.2(C)(2), (3)(a). "Due to these failures, this court cannot even attempt to assess the merits of his argument." *United States v. Mc-Clatchey,* 217 F.3d 823, 835-36 (10th Cir.2000). As such, the issue is waived. *Id.* at 836.FN3

> FN3. Mr. Hall also suggests in his reply brief that it was the District Court's *provisional* ruling prior to trial that was in error because it allowed the Government to make broad assertions about the defendants' roles in the conspiracy. He concedes, however, that "no [c]o-conspirator made a statement [at trial] directly implicating [Mr. Hall]." Ap. Reply Br. at 10. Moreover, Mr. Hall fails to provide relevant record citations and cites no authority for his theory that this objection to the provisional ruling constitutes a valid basis for reversal under Fed.R.Evid. 801(d)(2)(E). This argument is waived.

*4. Motion to exclude firearms evidence admitted as "tools of the trade."*

[4] Mr. Hall maintains the District Court erred in admitting into evidence, as "tools of the drug trade," an unloaded shotgun and various ammunition (but no shotgun shells) that were discovered during the execution of a search warrant at Mr. Hall's residence. The ammunition was discovered inside Mr. Hall's house, while the shotgun was discovered in an inoperable car parked outside his residence. Citing Fed.R.Evid. 403, Mr. Hall argued to the District Court that the probative value of this evidence is far outweighed by the danger of unfair prejudice. Specifically, he contended that the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Government could not link Mr. Hall to the shotgun because it was seized from an abandoned car while Mr. Hall was asleep in his bedroom; there were no fingerprints on the gun; there was no evidence that drug-dealing ever went on in his home; no shotgun shells were discovered during the search; and the search was executed approximately a week after the last date of **1304** the conspiracy alleged by the Government. Mr. Hall also notes that he was not charged with a firearms offense.

[5] Some items like "firearms, large sums of cash, weighing scales, and uncharged quantities of illegal drugs" are generally viewed as "tools of the trade"-"that is, means for the distribution of illegal drugs." *United States v. Martinez,* 938 F.2d 1078, 1083 (10th Cir.1991). As such, these items are probative of a defendant's participation in the drug distribution business. *Id.* The Government is not required to prove that the firearms or ammunition were used for a particular transaction in order for the evidence to be probative. That the police did not uncover the items until after the charged conspiracy was alleged to have ended does not mean that they were not involved in the ongoing conspiracy before it ended. Furthermore, "[i]t is basically immaterial to the admissibility inquiry in cases like these whether the accused has been charged with an offense directly related to his or her possession of a 'tool of the trade.'" *Martinez,* 938 F.2d at 1083.

Though the shotgun was found in an abandoned car, the gun itself was oiled, cleaned, and spotless. It was sitting on top of other items in the car and it was easily accessible to Mr. Hall because the car, a T-top, was right outside the backdoor and one could grab the gun simply by reaching down through the roof of the car. Further-

more, the video surveillance and wiretaps revealed that Mr. Hall frequently returned to his residence immediately after negotiating drug transactions over the phone with Mr. Small. The Government also pointed out that in addition to the weapons-related evidence, the police recovered other "tools of the trade" in their search-namely, $2,700 in cash and two scales that were found to have residue of cocaine on them. Based on the foregoing, we find no abuse of discretion in the District Court's decision to admit this evidence.

*B. Motion for a New Trial Based on Juror Misconduct*

[6] On the fifth day of trial, one of the jurors advised the District Court that she had overheard defense counsel talking about the case outside the courtroom. The District Court questioned the juror on the record about what she heard. She revealed that she heard counsel talking about Mr. Hall and one of his co-defendants, Alvin Green, and that they mentioned "the gun wasn't found until after they searched for the drugs." She further admitted telling at least two other jurors about overhearing the conversation, although she testified that she did not tell them the substance of what she heard. The juror was excused, but the District Court declined defense counsels' request to question the other jurors about what they knew. Mr. Hall maintains that the District Court committed reversible error by failing to question jurors concerning their potential exposure to remarks overheard by another juror who was subsequently excused.

We review a district court's decision regarding juror misconduct or bias for an abuse of discretion. *Small,* 423 F.3d at 1181. Mr. Green appealed the District Court's ac-

Case No. 1:01-cr-00214-RM   Document 3636-1   filed 09/29/08   USDC Colorado   pg 15 of 25

473 F.3d 1295                                                          Page 14
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

tions as they related to this issue and this Court concluded that "[g]iven that there is absolutely no evidence that any prejudicial information reached the remainder of the jury, the district court did not abuse its discretion in denying defense counsels' request to question the other jurors." *Id.* There is no material difference between Mr. Green's and Mr. Hall's challenge. Therefore, the prior decision by this Court is controlling.

**\*1305** *C. Variance in the Conspiracy Charge*

[7][8][9] Count One of the second superceding indictment charged Mr. Hall and several others with conspiracy to distribute and possession with intent to distribute crack-cocaine. Mr. Hall contends that there was a prejudicial variation between the evidence presented at trial and the conspiracy alleged by the Government. A variance occurs when the conspiracy charged in an indictment is different from the evidence adduced at trial. *United States v. Windrix,* 405 F.3d 1146, 1153 (10th Cir.2005). But not every variance requires reversal of a conviction-a variance is only reversible "if it affects the substantial rights of the accused." *Id.*

Importantly, Mr. Hall does not contend that the evidence adduced at trial did not support the conspiracy as charged in the indictment. Rather, he contends that the evidence as it related to him did not conform to the Government's "hub-and-spokes" theory of the conspiracy. As noted above, the Government's overarching theory of the conspiracy was that Mr. Small would recruit recently released felons and front them drugs until they had enough business that they could pay for the drugs in advance. Mr. Hall contends that there was a fatal variance between the Government's theory of the conspiracy and the evidence against him in that Mr. Hall had not been recently released from prison and he was never "fronted" drugs by Mr. Small.

Even assuming that the Government's theory of the case, not contained in the indictment, could be the basis for reversing a conviction if the evidence against the defendant varied from the proffered theory, we would not do so in this case. The Government's theory of the conspiracy was that it was dependent on the distributors being at different stages in the process of establishing their illegal businesses. This aspect of the conspiracy was crucial for Mr. Small to be able to front drugs to newly released felons who could not pay for their drugs in advance. That Mr. Hall was not a recently released felon and that he had an established business and did not need Mr. Small to front him drugs is not inconsistent with the Government's theory of the case. As such, we reject this claim.

*D. Prosecutorial Misconduct During Closing Arguments*

Mr. Hall argues he was denied due process because of various improper comments that the prosecutor made during her closing argument. Because no objection was made at the time, we review for plain error, and will reverse "only if, after reviewing the entire record, we conclude that the error is obvious and one that would undermine the fairness of the trial and result in a miscarriage of justice." *United States v. Gonzalez-Montoya,* 161 F.3d 643, 650 (10th Cir.1998) (quotation omitted); *see also United States v. Visinaiz,* 428 F.3d 1300, 1311 (10th Cir.2005) ("Plain error must be so 'egregious' as to result in a 'miscarriage of justice.' "). "We review the prosecutor's

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

comments within the context of the entire case." *Visinaiz,* 428 F.3d at 1311.

[10] Mr. Hall first objects to the prosecutor's "translation" of certain "code words" the defendants used in conducting their drug deals. During the trial, the Government presented the testimony of participants in several of the recorded conversations as to the meaning of various "code words" used during the drug transactions. None of these witnesses testified as to the meaning of the words in the context of Mr. Hall's conversations with Mr. Small. Mr. Hall therefore argues that the lack of testimony supporting the prosecutor's comments during closing argument **\*1306** amounts to prosecutorial misconduct. We disagree.

The particular portion of the prosecutor's remarks discussing these "code words" was not in reference to specific recorded conversations between Mr. Hall and Mr. Small. Rather, the comments refer generally to terminology common to some of the recorded conversations. The prosecutor did not specifically address Mr. Hall until later in her closing argument and she did not seek to explain any of the conversations between Mr. Hall and Mr. Small by use of coded language. To the extent that the prosecutor's general discussion of code words had anything to do with the evidence against Mr. Hall, given the context of the entire trial, this does not constitute "egregious" misconduct resulting in a miscarriage of justice. *See United States v. Dazey,* 403 F.3d 1147, 1171 (10th Cir.2005) (holding various improper statements made during closing argument were not sufficiently egregious or prejudicial to warrant reversal under plain error standard of review).

Mr. Hall also argues that the prosecutor

misrepresented that Mr. Hall was videotaped meeting with Mr. Small and Mr. Green on May 18, 2001. At trial, a police officer testified that he saw a white pick-up truck arrive at Mr. Small's apartment and that the occupant went inside the apartment. He also testified that he had written in his surveillance logs for that day that the pick-up truck "belongs to" Mr. Hall. A review of the testimony regarding this video, taken as a whole, offers sufficient support for the prosecutor's discussion of the events during closing arguments, and we conclude there is no basis for reversal under plain error review. *See id.*

[11] Finally, Mr. Hall argues that the prosecutor misstated the evidence regarding the items recovered from the search at Mr. Hall's residence. Specifically, he calls attention to the fact that the prosecutor referred to "guns" though only one gun was found during the search. In context, however, it is clear that the prosecutor's reference to "guns" included those guns recovered at Mr. Small's residence as well. Mr. Hall also complains that the prosecutor said that "[t]here wasn't a big amount of dope found at [Mr. Hall's] house" and then suggested that perhaps he had hid it. Mr. Hall notes that *no* drugs were found in his residence-save the cocaine residue on the scales-and there was no evidence at trial that he hid any drugs. It is clear that the prosecutor was entreating the jury to not acquit on the conspiracy charge merely because the police failed to recover drugs from Mr. Hall's house. "The prosecutor is entitled to argue to the jury that it should draw reasonable inferences from the evidence to support the government's theory of the case." *Id.* at 1170. In any event, neither of these comments were so "egregious" as to warrant reversal. *See id.* at 1171.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*E. Sufficiency of the Evidence on the Possession Charge*

[12] Mr. Hall argues that there was insufficient evidence to support his conviction on Count Forty-Nine of the indictment, which charged that "[o]n or about April 7, 2001" Mr. Hall "knowingly distributed and possessed with intent to distribute ... cocaine base" and intentionally aided and abetted the same. To convict Mr. Hall of this charge, the Government was required to prove, at a minimum, that he "(1) possessed the controlled substance; (2) knew he possessed the controlled substance; and (3) intended to distribute or dispense the controlled substance." *United States v. Bowen,* 437 F.3d 1009, 1014 (10th Cir.2006) (quotation omitted). Mr. Hall argues that the Government failed to **\*1307** prove that he possessed crack-cocaine because no law enforcement officer ever testified that they saw Mr. Hall with the drug on April 7; nor were there any witnesses who testified they received the drug from Mr. Hall.

The Government did not introduce into evidence crack-cocaine related to the alleged April 7 transaction; eyewitness testimony or video surveillance evidence putting Mr. Hall in possession of crack-cocaine on or around April 7; or testimony from any persons alleged to have purchased crack-cocaine from Mr. Hall on or about that date. The evidence related to this count of conviction included the transcripts of three telephone calls made between Mr. Hall and Mr. Small on April 6 and April 7 purporting to orchestrate a drug transaction. During the first call, the two discuss the price of drugs. Mr. Hall seeks to buy "four" but not at the price at which Mr. Small is willing to sell them. "Four" refers to the number of ounces of drugs Mr. Hall

wishes to purchase. In the next phone call, the pair agree to meet the following morning, April 7. They speak again on April 7 when they agree to "do two for ... sixteen" (meaning two ounces for sixteen hundred dollars). Video surveillance on April 7, shortly after the last telephone call, showed one man exiting a white pick-up truck and briefly entering Mr. Small's car. While watching the video at trial, City of Aurora Police Officer Steven Stanton identified Mr. Hall as the man who entered Mr. Small's car.

We confronted a similar factual scenario in *United States v. Baggett,* 890 F.2d 1095 (10th Cir.1989). In that case, the defendant was charged with possession of heroin under 21 U.S.C. § 844(a). Similar to this case, the evidence that the defendant possessed the drugs in question on the day listed in the indictment included three recorded phone calls made by the defendant to a suspected drug dealer during which she arranged to purchase cocaine and heroin. *Id.* at 1096. Also during the call, the defendant arranged to meet the dealer at a specified time and place. *Id.* Police officers then surveilled the area and saw the drug dealer meeting with a "white female" driving a car registered to the defendant. *Id.* No witness observed a drug exchange between the two; nor did anyone testify to seeing the defendant with any drugs that day. *Id.* at 1097. The transaction was alleged to have taken place when the defendant briefly entered the drug dealer's car. *Id.* at 1096. The defendant later admitted to using heroin around the time alleged in the indictment. *Id.* We held that the evidence was insufficient to establish that the defendant possessed heroin. *Id.*

We acknowledged that "[i]t is not necessary that the Government have direct evid-

473 F.3d 1295                                                                           Page 17
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

ence to support a conviction for possession,"*id.,* but explained that where "the Government fails to seize and analyze the chemical composition of the alleged narcotic substance, there must be enough circumstantial evidence to support an inference that the defendant actually did possess the drugs in question,"*id.* We noted that such evidence may include the following:

> [E]vidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal **\*1308** narcotic by the defendant or others in her presence.

*Id.* (quoting *United States v. Dolan,* 544 F.2d 1219, 1221 (4th Cir.1976)) (alterations omitted).

On the evidence presented in *Baggett,* we stated that "[i]f the prosecution is not going to present direct evidence of drug possession, its circumstantial evidence must include some testimony linking defendant to an observed substance that a jury can infer to be a narcotic." *Id.* at 1097. The prosecution in that case presented no evidence that the defendant actually possessed a substance and that the substance was a narcotic. While other courts have not gone so far as to require that evidence include an "observed substance that a jury can infer to be a narcotic," there is little doubt that a defendant's own inculpatory statements captured on wiretaps must be corroborated by other circumstantial evidence of possession such that a jury may properly infer the specific drug was actually possessed.

In *United States v. Bryce,* 208 F.3d 346 (2d Cir.1999), the Second Circuit similarly reversed a defendant's conviction for possession when the only evidence of the charge were his phone calls made purporting to sell the drug. As in this case, federal law enforcement officers investigated several individuals suspected of narcotics trafficking. On August 5 and 6, 1997, officers intercepted telephone calls between the defendant and others during which the defendant used coded phrases to arrange a sale of powder cocaine. *Id.* at 349.[FN4] He was later arrested and charged with conspiracy to possess and actual possession with intent to distribute cocaine on August 5 and 6. *Id.*

> FN4. Unlike this case, the defendant in *Bryce* was not seen meeting with either of the people with whom he was purported to have sold drugs on the dates in question.

Though his conviction on the conspiracy charge was affirmed, the Second Circuit reversed his conviction on the possession charge. Citing this Court's opinion in *Baggett,* the court noted that the prosecution did not introduce into evidence cocaine, residue or paraphernalia; eyewitness testimony or video surveillance putting the defendant in possession of cocaine, "or any substance resembling cocaine," on the relevant dates; or testimony from anyone alleged to have purchased cocaine from the defendant on or around those dates. *Id.* at 352. The defendant's uncorroborated, inculpatory statements did not sufficiently demonstrate that he possessed cocaine. *Id.* at 356.

By contrast, in *United States v. Sanchez*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case No. 1:01-cr-00214-RM   Document 3636-1   filed 09/29/08   USDC Colorado   pg 19 of 25

473 F.3d 1295                                                                                              Page 18
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

*DeFundora,* 893 F.2d 1173 (10th Cir.1990), we upheld convictions for distribution of cocaine though no cocaine related to those counts was seized or admitted into evidence. In that case, the government had presented testimony from a witness who purchased cocaine from the defendant on eight separate occasions-those eight transactions became the basis for eight counts of distribution against the defendant; she testified that she tried the cocaine and that when she ingested it "it affected her in the same way as cocaine had affected her in the past." *Id.* at 1176. There was also corroborating testimony in that the witness was able to resell the substance as cocaine and that law enforcement officers later seized a substance in the defendant's possession that was determined to be cocaine, which we noted "lend[s] credence to the conclusion that the defendant was dealing in cocaine." *Id.*

We see no meaningful difference between the evidence of possession of heroin in *Baggett* and the evidence of Mr. Hall's **\*1309** possession of crack-cocaine here. The Government suggests that other evidence supports the jury's conclusion that Mr. Hall possessed crack-cocaine: (1) law enforcement officers intercepted a call on April 9, 2001 during which Mr. Hall seeks to buy powder cocaine from Mr. Small; (2) law enforcement officers intercepted a call on April 10, during which Mr. Hall and Mr. Small discuss how to cook powder cocaine; (3) a witness testified that she delivered cocaine (powdered or crack-she was not sure which) to Mr. Hall at Mr. Small's request at some other time; and (4) on June 7, law enforcement officers executed a search warrant at Mr. Hall's residence and found drug paraphernalia including scales with cocaine residue on them and $2,700 in cash. While this evidence

may be sufficient to establish that Mr. Hall possessed crack-cocaine at some time, the indictment charged Mr. Hall with possession and distribution on or about April 7, 2001. None of this evidence shows that Mr. Hall possessed or distributed crack-cocaine at that time. *See* Fed.R.Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith); *see also Bryce,* 208 F.3d at 352 (evidence that defendant possessed narcotic at some other time does not prove that he possessed it at the time specified in the indictment). In sum, we conclude that the Government's evidence is insufficient to sustain the possession and distribution conviction.

## III. SENTENCING

The probation office prepared a Presentence Report ("PSR") that recommended a total offense level of 40 and a criminal history category of III, resulting in an advisory Guidelines imprisonment range of 360 months to life. The probation office calculated Mr. Hall's offense level first by finding that a total of 4,495 grams of crack-cocaine were attributable to Mr. Hall. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1(a)(3) (instructing courts to calculate offense level by reference to drug quantity involved); U.S.S.G. § 1B1.3(a) (the base offense level is determined by reference to the quantity and type of drugs attributable to the defendant); *United States v. Topete-Plascencia,* 351 F.3d 454, 459 (10th Cir.2003) ("[T]he district court may consider the amount of drugs the defendant knew or should have known were involved in the conspiracy in calculating a defendant's relevant conduct for purposes of a conspiracy conviction."). This resulted in a base offense level of 38.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

The probation office then added a two-point enhancement for Mr. Hall's possession of a dangerous weapon (the shotgun), pursuant to § 2D1.1(b)(1), resulting in a total offense level of 40. The probation office then determined that Mr. Hall's criminal history category was III based on a 1984 conviction in Louisiana for felony armed robbery, a 1990 misdemeanor conviction in Colorado for driving while intoxicated, and a 1991 conviction in California for being a felon in possession of a firearm.

Mr. Hall raised a number of objections to the PSR. At the sentencing hearing, the District Court concluded that only 392 grams of crack-cocaine were attributable to Mr. Hall. The court's finding, which yielded a base offense level of 34, see U.S.S.G. § 2D1.1(c)(3), was based on the Government's evidence of the specific calls and transactions where Mr. Hall was a direct participant. The District Court agreed with the probation officer that the two-point weapon enhancement under § 2D1.1(b)(1) applied, which resulted in a total offense level of 36. Finally, the court determined that the probation officer correctly determined Mr. Hall's criminal history category to be III. This produced an **1310** advisory Guidelines sentencing range of 235 to 293 months.

Next, the District Court considered the sentencing factors provided under 18 U.S.C. § 3553(a). The court explained that five of the seven defendants at trial were convicted on the conspiracy charge and that four of them had received sentences of 240 months to life imprisonment due to prior qualifying drug convictions. The court then noted that Mr. Hall's criminal history stood in stark contrast to those defendants because he had never been previously convicted of a drug offense and his prior

felony conviction-for which he was later pardoned-was twenty years old. Because of the differences in criminal history, the court deemed that sentencing Mr. Hall within the applicable Guidelines range, which would cause Mr. Hall to be sentenced for as long as the other defendants, was unwarranted. It specifically cited its obligation to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The District Court then sentenced Mr. Hall to 151 months. The court explained how it arrived at the sentence as follows:

> [I]f for criminal history purposes Mr. Hall had not been given criminal-history points for the armed robbery conviction and the felon-in-possession conviction, he would only have one criminal history point[,] which would have placed him in criminal history category I. And the range of incarceration for criminal history category [I] is 151 to 188 months. And the Court concludes that a sentence of 151 months is a fair, appropriate, and reasonable sentence....

The following day, the Government filed a motion to correct the sentence pursuant to Fed.R.Crim.P. 35(a) and 36, which permit a court to "correct a sentence that resulted from arithmetical, technical, or other clear error." Fed.R.Crim.P. 35(a); see also Fed.R.Crim.P. 36 (at any time, a court may "correct a clerical error in a judgment, order, or other part of the record"). Because the District Court's stated reasoning for imposing the below-Guidelines sentence referred only to the criminal history portion of the Guidelines, the Government suggested that the court inadvertently misread the sentencing table of the Guidelines, see U.S.S.G. § 5A: the advisory Guidelines

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

sentencing range for an offense level of 36 and a criminal history category of I is 188 to 235 months, not 151 to 188 months. *See id.* The District Court denied the Government's motion, maintaining that there was no error.

On appeal, Mr. Hall raises several challenges to his sentence. He contends that (1) the District Court lacked jurisdiction to enhance his sentence based on prior convictions because the Government failed to file an information notifying Mr. Hall of its intent to seek an enhanced penalty as required by 21 U.S.C. § 851(a)(1); (2) the District Court erred by attributing to him drug quantities not found by the jury beyond a reasonable doubt; (3) the District Court erred by enhancing his sentence for possession of a weapon that was neither present during the offense nor otherwise connected with the offense; and (4) the District Court erred in computing his criminal history score by including his pardoned conviction for armed robbery. The Government cross-appeals the sentence on the ground that the court's below-Guidelines sentence is unreasonable. We address each contention in turn.

[13] We review sentences imposed for reasonableness. *United States v. Kristl,* 437 F.3d 1050, 1053 (10th Cir.2006). "We require reasonableness in two respects-'the length of the sentence, as well as the *method* by which the sentence was calculated.'***1311*** " *United States v. Lopez-Flores,* 444 F.3d 1218, 1220 (10th Cir.2006) (quoting *Kristl,* 437 F.3d at 1055). A sentence cannot be considered reasonable if the method by which it is calculated is unreasonable. *Kristl,* 437 F.3d at 1055. In determining whether the method by which a sentence is calculated is reasonable, we review the district court's factual

findings for clear error and its legal determinations de novo. *Id.* at 1054.

**A. Section 851 Information**

[14] First, Mr. Hall contends that the Government could not seek an enhancement based on his criminal history because it did not file an information pursuant to 21 U.S.C. § 851. That provision provides:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1). This statute only requires the Government to file an information "in situations in which a defendant's statutory maximum or minimum is enhanced and not in situations where the defendant's increased sentence under the Guidelines is within the statutory range." *United States v. Allen,* 24 F.3d 1180, 1184 (10th Cir.1994) (alteration and quotation omitted); *see also United States v. Flowers,* 464 F.3d 1127, 1131 (10th Cir.2006) (explaining that § 851"impose[s] strict requirements on the government before the government can seek an increase in the *statutory mandatory maximum or minimum sentence* " (emphasis added)). The Guidelines enhancements applied by the District Court had no effect on the statutory maximum or minimum sentence applicable to Mr. Hall. As such, the § 851 information was not required.

**B. The Drug Quantity**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Mr. Hall raises two challenges to the use of drug quantity to enhance his sentence. He first contends that he should have been sentenced under 21 U.S.C. § 841(b)(1)(C), rather than 21 U.S.C. § 841(b)(1)(A), because he claims the indictment failed to specify the drug amount involved in the crime. Indeed, we have held that "[a] district court may not impose a sentence in excess of the maximum set forth in 21 U.S.C. § 841(b)(1)(C)[,] [which is twenty years,] unless the benchmark quantity of cocaine base for an enhanced penalty is alleged in the indictment in addition to being submitted to the jury and proven beyond a reasonable doubt." *United States v. Jackson,* 240 F.3d 1245, 1248 (10th Cir.2001), *overruled on other grounds by United States v. Prentiss,* 256 F.3d 971, 981 (10th Cir.2001). Contrary to Mr. Hall's assertions, however, the indictment did specify the amount of drugs involved in the conspiracy. Count One of the second superceding indictment charged Mr. Hall with conspiring to distribute and to possess with intent to distribute "a mixture and substances containing a detectable amount of cocaine base ... weighing more than fifty grams." And, in fact, the jury specifically found that the amount of crack-cocaine involved in the conspiracy count was "50 grams or more." As such, Mr. Hall's argument has no merit.

[15][16] He next contends that under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and **\*1312***United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the relevant quantity of drugs for sentencing purposes is no more than the quantity the jury found him to possess beyond a reasonable doubt-that is, 50 grams.

This argument is also without merit. "After *Booker,* a constitutional violation lies only where a district court uses judge-found facts to enhance a defendant's sentence *mandatorily* under the [Guidelines], and not where a court merely applies such facts in a discretionary manner." *United States v. Rodriguez-Felix,* 450 F.3d 1117, 1130 (10th Cir.2006). Because the post-*Booker* Guidelines are discretionary, a district court may continue to find facts, including drug quantity, by a preponderance of the evidence. *See id.* at 1130-31.

As noted above, the District Court found that 392 grams of crack-cocaine were attributable to Mr. Hall. Although he does not say so explicitly, he appears to argue that the District Court's determination on this point was clearly erroneous. We find no clear error in the District Court's determination. It relied on the Governments' wiretap evidence in which Mr. Hall places various orders for crack-cocaine or powdered cocaine with Mr. Small. There was also evidence that Mr. Small and Mr. Hall met shortly after Mr. Hall placed the orders.

*C. The Weapons Enhancement*

Mr. Hall first contends that the weapons enhancement under § 2D1.1(b)(1) violates his Sixth Amendment rights as stated in *Apprendi, Blakely*, and *Booker,* because a jury did not find, nor did he admit, facts that would justify such an enhancement. Again, *Booker* makes clear that judicial fact-finding by a preponderance of the evidence standard is unconstitutional only when it operates to increase a defendant's sentence mandatorily. *See Rodriguez-Felix,* 450 F.3d at 1130. Because the District Court here indisputably applied the Guidelines in a discretionary fashion, there

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

473 F.3d 1295
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

Page 22

is no Sixth Amendment violation.

[17][18][19] Next, Mr. Hall argues that the enhancement should not have applied because the Government did not show that he possessed the shotgun or that it was "present during the offense." In applying this enhancement, the Government bears the initial burden of proving possession of the weapon by a preponderance of the evidence. *United States v. Williams,* 431 F.3d 1234, 1237 (10th Cir.2005). "This burden is satisfied when the government demonstrates that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *Id.* (internal quotation marks omitted). Evidence that the weapon was found in a location where drugs or drug paraphernalia is stored establishes the necessary showing. *Id.* "If the government meets this initial burden, the burden shifts to the defendant to show that it is clearly improbable the weapon was connected with the offense." *Id.* at 1238 (internal quotation marks omitted); *see also* U.S.S.G. § 2D1.1 cmt. n. 3 (if the weapon is present, the adjustment should be applied "unless it is clearly improbable that the weapon was connected with the offense").

The District Court's determination of the facts supporting the application of the enhancement is not clearly erroneous. As discussed, *supra,* in section II.A.4, the shotgun was found in a car sitting right outside Mr. Hall's residence and easily accessible through the top of the vehicle. In addition, other drug paraphernalia was found at the house, including scales with cocaine residue on them. These facts establish the necessary temporal and spatial relationship between the weapon, the drug trafficking activity, and Mr. Hall. Accordingly, the burden shifts to Mr. Hall to **\*1313** demon-

strate that it is "clearly improbable" that the firearm was connected to his drug trafficking offense. He has failed to meet this burden.

*D. Consideration of a Pardoned Offense in Calculating Criminal History.*

[20] In calculating a defendant's criminal history category, the Guidelines provide that "[s]entences for expunged convictions are not counted." U.S.S.G. § 4A1.2(j). Mr. Hall received a pardon for his 1984 conviction for felony armed robbery from the State of Louisiana. He therefore contends that this conviction, and his later conviction for being a felon in possession of a firearm, should not be counted in calculating his criminal history.

Application Note 10 to § 4A1.2(j) provides:

> *Convictions Set Aside or Defendant Pardoned.* A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, *e.g.,* in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted. However, expunged convictions are not counted.

U.S.S.G. § 4A1.2(j) cmt. n. 10.

Mr. Hall received a first offender pardon pursuant to La.Rev.Stat. Ann. § 15:572, which operates to restore "all rights of citizenship." *See* La.Rev.Stat. Ann. § 15:572(b)(1) ("A first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence...."). However, as the Louisi-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case No. 1:01-cr-00214-RM   Document 3636-1   filed 09/29/08   USDC Colorado   pg 24 of 25

473 F.3d 1295                                                          Page 23
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

ana Supreme Court and the letter submitted by Mr. Hall from the Louisiana Department of Public Safety and Corrections acknowledges, such pardons do not restore a felon's right to possess firearms. *See State v. West,* 754 So.2d 408, 410 (La.App.2000). There is nothing to suggest that Mr. Hall's pardon, which is granted as a matter of course to first time offenders, was in any way related to innocence or an error of law. Indeed, the letter he submits as evidence of the pardon indicates that his right "to receive, possess or transport firearms" was unaffected by the pardon. Therefore, the conviction was properly counted in assessing his criminal history, as was his felon-in-possession conviction, for which the armed robbery was the predicate felony.[FN5]

> FN5. Mr. Hall suggests, without argument or citation to authority, that the Guidelines' distinction between sentences expunged because of innocence or errors of law and pardons unrelated to those factors violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment, as well as the Eighth Amendment's prohibition of cruel and unusual punishment. Because Mr. Hall fails to meaningfully develop these arguments, we will not address them on appeal. *See United States v. Banks,* 451 F.3d 721, 728 (10th Cir.2006) (declining to address on appeal an issue unsupported by legal argument or authority).

*E. Consideration of the § 3553(a) Sentencing Factors*

[21][22] We now consider the Government's cross-appeal. As noted above, "[r]easonableness has both procedural and substantive components." *United States v. Cage,* 451 F.3d 585, 591 (10th Cir.2006). "To be reasonable, a sentence must be 'reasoned,' or calculated utilizing a legitimate method." *Id.* Ordinarily, any procedural irregularity in calculating the sentence occurs when the district court determines the applicable Guidelines range. *See id.*(stating that sentences based on a misapplication of the Guidelines are procedurally unreasonable). Here, however, the Government claims that the District Court committed a procedural**1314** error in its application of the § 3553(a) sentencing factors to fashion a below-Guidelines sentence. We now hold that such an error in applying those factors renders the resulting sentence unreasonable.

[23] Although we have never required a district court to recite any "magic words" to show that it has fulfilled its obligation to be mindful of the factors Congress has instructed it to consider in § 3553(a), we have nevertheless required the court to give reasons for imposing a particular sentence. *United States v. Sanchez-Juarez,* 446 F.3d 1109, 1115-16 (10th Cir.2006) (citing 18 U.S.C. § 3553(c)). As such, when a district court fails to consider a defendant's non-frivolous argument that a variance from the Guidelines is warranted under § 3553(a), for example, the failure renders the sentence procedurally unreasonable such that resentencing is required. *See id.* at 1117-18. Meaningful appellate review of the length of a sentence requires this result because "[a] district court's explanation" of the reasons for a sentence "will assist us in our determination of whether" a sentence is substantively reasonable. *See id.* at 1117.

It may be that the 151-month sentence the District Court imposed in this case would be *substantively* reasonable. But in impos-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ing such a sentence, the District Court expressly tethered its ruling to its determination of the applicable Guidelines range, which it had already calculated based on an offense level of 36 and a criminal history category of III. The only reason the court proffered for its determination that Mr. Hall's sentence should be lower than the applicable Guidelines range and that of his co-defendants was that he had a comparatively mild *criminal history.* The court made no mention of the offense characteristics. Yet in fashioning a sentence that takes the § 3553(a) factors into account, the court consulted the Guidelines and calculated a hypothetical Guidelines sentence based not only on a lower criminal history category (I instead of III), but also based on a lower *offense level* (34 instead of 36). Generally, when "a sentence that varies from the advisory Guidelines range is nevertheless tethered to the Guidelines themselves [by, taking into account, *e.g.,* criminal history, offense characteristics, and offense levels], we will likely consider this a reasonable methodology." *United States v. Bishop,* 469 F.3d 896, 907 (10th Cir.2006). Here, however, the court effectively ignored the instant offense's characteristics as computed in the offense level. The range supported by the District Court's sentencing rationale-with a criminal history of I and offense level of 36-is in fact 188 to 235 months incarceration. *See*U.S.S.G. § 5A. We cannot countenance the court's methodology without any explanation as to why such a determination was made.

Having concluded that the reasoning provided by the District Court for the below-Guidelines sentence is procedurally deficient, we remand to the District Court with instructions to vacate Mr. Hall's sentence and to resentence Mr. Hall in a manner not inconsistent with our discussion. In doing so, we in no way intend to express an opinion in regard to what the ultimate sentence should be.

## IV. CONCLUSION

We REVERSE Mr. Hall's conviction for possession and distribution of crack-cocaine under 21 U.S.C. § 841(a)(1) for insufficiency of the evidence. We AFFIRM Mr. Hall's conviction for conspiracy under 21 U.S.C. § 846. We further hold that though the District Court correctly applied the Guidelines, the sentence was nevertheless**1315** procedurally unreasonable. We therefore REMAND for resentencing.

C.A.10 (Colo.),2007.
U.S. v. Hall
473 F.3d 1295, 72 Fed. R. Evid. Serv. 330

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.