IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Crim. No. 01-CR-00214-WYD
Civil Action No. 07-CV-00367-WYD

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

v.

4. ALVIN GREEN,
    a/k/a, Mel Dog,

        Defendant/Movant.

## UNITED STATES' RESPONSE TO ORDER TO CLARIFY

The United States responds to this court's order (doc. 3727) to clarify and supplement its answer (doc. 3444) to Green's § 2255 motion (doc. 3429). The court's order contains ten bullet points and indicates the court has "been unable to review references to certain material in the record either because no citation is provided or because within the provided citation the page numbers and the volumes of the record on appeal do not match." The government responds seriatim. In the interests of clarity, the government will reiterate each concern expressed in the court's order and then provide additional clarification or explanation.

## Dachaun Davis' Testimony

The first request for clarification pertains to the government's answer to issue I of Green's § 2255 motion, where Green argues his trial counsel was ineffective in failing to cross-examine a government witness regarding a prior inconsistent statement the witness made concerning Green's involvement in drug trafficking. *See* Green's Memorandum of Law (doc. 3427) at 5. Green points out that during interviews with the FBI, Dachaun Davis told investigators Green was not involved with them in distributing drugs, but at trial, after "receiving a deal" with the government, he testified to the contrary. Green argues that "[h]ad counsel conducted a proper investigation of the discovery materials, counsel would have found the inconsistencies," cross-examined Davis on them, and "this would have provided the jury with a reasonable doubt regarding Petitioner's guilt."*Id*. at 8-9.

Clarify references in the answer to the "initial debriefing," "later debriefing," "pretrial statement," and "prior statement" discussed on pages 5-8 of the answer, and supplement the answer discussing these debriefings and statements with consistent terminology and citations to the record.

Green's motion and memorandum do not identify any specific statements Davis made, either before or at trial, and do not provide any indication were such statements may be found in the record. In responding to these allegations, the government located and cited Davis' trial testimony, where he admitted on direct examination that in February of 2003, he went to

the U.S. Attorney's Office and gave a statement to investigators. In that statement he did not tell them about Green's involvement because he felt sympathy for Green. Davis later changed his mind, and when he returned a second time he told investigators the truth - that he had seen Green with large amounts of money, guns, and drugs. This testimony is quoted in the government's Answer (doc. 3444) and cited as "ROA, Vol. XXXIX (Day 6 - 9/29/03) at 1254-1255 (attachment 3)." *See* Doc. 3444 at 5-7. The citation is correct and the relevant transcript pages are attached to the Answer. *See* Doc. 3444-4. As indicated above, Green does not cite to any documents reflecting Davis' pre-trial statements and it is unclear if any such documents are contained in the record on appeal. The trial transcripts do not appear to show that any document reflecting the prior inconsistent statement – which Davis admitted he made – was used or admitted during Davis' testimony.[1] However Green's counsel touched briefly on this issue when he asked Davis on cross-examination if, during his first interview with the FBI, he had identified "Bear and P" as Willie Small's primary sources. Davis agreed that was correct. *See* Vol. XLI (Day 8 - 10/1/03) at 1639, ls. 10-13.

---

[1] A written document reflecting pre-trial statements – assuming for the sake of argument one existed – would have been hearsay and probably inadmissable under Fed.R.Evid. 801(d)(1) if offered by the defense.

**Transcript/Wiretap Exhibit Citations**

The next four requests for clarification pertain to transcript and trial exhibit citations which demonstrate Green's drug dealing activity. The government cited this evidence in its Answer to show that abundant evidence corroborates Dachaun Davis' trial testimony that Alvin Green was involved in obtaining drugs from California and supplying them to Willie Small (who then distributed the drugs to dealers who worked for him). Davis testified for a number of days and his testimony also shows that Green assisted Small in distributing drugs in Denver.

Clarify the page/volume references to: "Green took monthly trips to California to purchase cocaine." Vol. XLIX, 57-58 (testimony of Dwayne Van Dyke), Oct. 10, 2003

*See* Vol. XL (Day 7 - 9/30/03) at 1406, ls. 17-25, to 1407, ls. 1-15. Dachaun Davis testifies that "Mel" went to California, "maybe about once a month or once or twice a month," and when "Mel" got back they had more crack cocaine. Davis also testified, *id*. at 1407, ls. 12-13, that Green's nickname was Mel. *See also* Vol. XXXIX (Day 6 - 9/29/03) at 1249 (Green's nickname was Mel or Mel dog).

Clarify the page/volume references to: "Trial testimony showed that a kilogram of cocaine cost approximately $20,000." Vol. LI, 78-79 (testimony of Steve Stanton), October 21, 2003.

*See* Vol. LI (Day 15 - 10/21/03) at 2868.[2] The kilogram price of around $20,000 may be found at lines 22 & 25.

Clarify the page/volume references to: "Small needed Green to supply drugs because some of his former suppliers ran into legal problems and stopped coming to Colorado." Vol. LIV, 72 (testimony of Ms. Johnson), October 24, 2003.

*See* Vol. LIV (Day 18 - 10/24/03) at 3306 to 3308. At page 3306, Ms. Johnson testifies that Green (aka, Mel) went to California to get "dope" for Willie Small. Green went to purchase a large amount of dope and he had large amounts of money (ls. 17-25). At pages 3307-08, Ms. Johnson testified that Willie Small had other sources of supply, such as "Bear" and "YC," but that "[t]hey just sort of vanished," apparently because "they were selling drugs from Arizona and something, the house where they were selling drugs got busted when they came to Denver." *Id*. at 3307, ls. 15-25. *See also* Vol. XLIX (Day 13 - 10/10/03), where Dwayne Van Dyke testifies that Bear was a source of supply. *Id*. at 2547, ls. 13-25; and at 2548-49. Van Dyke – also a supplier to Willie Small – testified that he dealt with Alvin Green after Troy

---

[2] Citations are to the consecutively paginated trial transcript. Some transcript copies are also individually paginated by the court reporters (*i.e.*, each volume begins with page 1). In its Answer, the government at times cited the individual volume page numbers. To avoid confusion, all citations herein are to the consecutive page numbers reflecting the entire trial.

Anderson (another California source) "got indicted." *Id.* at 2549, ls. 24-25.

Clarify the page/volume references to: "Green directs Small to send the expense money to a name different from his own in California." Vol. LIII, 194-95 (testimony of Steve Stanton, Jr.), October 23, 2003.

The primary citation for this, as stated in the Answer, is trial exhibit 432, a wiretap call between Willie Small and Alvin Green, in which Green gives Small the name Dejon Durden to use in wiring money to him in Los Angeles, through Western Union. *See* Exhibit 432 at 3, 6. *Cf.* Exhibit 448 at 2 (Green to Small: "Who did you send it to? To Dejon, right?"). Exhibit 432 reflects a call that took place on May 26, 2001, and Officer Stanton is testifying about the events of this day. *See* Vol. LIII (Day 17 - 10/23/03) at 3217, l. 6 (although *cf.* l. 8, where he misstates the date as May 6). Officer Stanton testifies he's never heard of a person named "Dejon Durden." *Id.* at 3217, ls. 23-25. Officer Stanton also testifies the money probably was not for drugs, it was for transportation. *Id.* at 3218, ls. 1-19. Officer Stanton then testifies regarding trial exhibit 472 at 2, dated May 29, 2001, where Willie Small tells someone that "I'm still waiting on this fool to get back from California," and that "he really don't even bring it back. Somebody else bring it back." (Small is talking about who brings the drugs back, and the transportation money Officer Stanton describes was probably to pay this other person's expenses.)

## Jury Instruction Citations

The last five requests for clarification pertain to the court's instructions to the jury. The page numbers cited in the government's answer are all correct. However upon reviewing its Answer and the transcripts, the government has discovered that the volume number cited – LIII – is wrong. The correct volume number is LVIII. This error occurred because the District Court Clerk's letter to the Tenth Circuit forwarding the record on appeal mistakenly cited volume LVIII as volume LIII. *See* Attachment 1 at 6.[3] Notwithstanding the error, it is possible to locate the cited instructions by the page number alone.

Clarify the page/volume references to instruction number 9, which advised the jurors that in certain instances "evidence was admitted only concerning a particular party or only for a particular purpose" and cautioned them against using the evidence "for any other purpose or against any party not specifically mentioned." Vol. LIII, 4123, [date].

Volume LVIII (Day 22 - 10/30/03) at 4123. The first quote is at lines 12-14; the second quote is at lines 17-18.

---

[3] This is an observation, not a criticism of the Clerk's office. The record is long and complicated and citation errors are understandable. Counsel respectfully suggests that one way to minimize such errors in the future would be to number record volumes with arabic rather than roman numerals. The Clerk's office mistakenly showed a progression of volumes from LVII, to LIII, to LIX. This should have read: LVII, to LVIII, to LIX. Such an error is less likely to happen, perhaps, if the progression is: 57, 58, 59.

Clarify the page/volume references to instruction number 27, which cautioned the jury: "It is your duty to give separate and personal consideration to the case of each defendant." [citation]. "The instruction required the jury to analyze the evidence with regard to each defendant, "leaving out of consideration entirely any evidence admitted solely against some other defendant or defendants." *Id.* at 4131.

Volume LVIII (Day 22 - 10/30/03) at 4131. The first quote is at lines 17-18; the second quote is at lines 20-22.

Clarify the page/volume references to instruction number 28, which further cautioned the jury to consider separately the evidence and charges against each defendant and not to allow a verdict on one charge to "control your verdict as to any other offense charged against the defendant or against any other defendant." *Id.* at 4132.

Volume LVIII (Day 22 - 10/30/03) at 4132, ls. 9-11.

Clarify the page/volume references to the statement: "In order to render a guilty verdict, the jury was instructed it must find each element of the offense 'as to each defendant.'" Vol. LIII, 4134, [date]. "Those elements are: 1. That two of more persons agreed to distribute or to possess with intent to distribute crack cocaine; 2. That the conspiracy involved 50 grams or more of crack cocaine; 3. That the defendant knew the essential objectives of the conspiracy; 4. That the defendant knowingly and voluntarily agreed to become involved in the conspiracy; and 5. That the alleged conspirators were interdependent." Vol. LIII at 4134, [date].

Volume LVIII (Day 22 - 10/30/03) at 4134. The first quote is at line 2; the

second quote is at lines 3-11.

Clarify the page/volume references to the statement: "Element no. 2 required the jury to find: 'That the conspiracy involved 50 grams or more of crack cocaine.'" *Id.* Element nos. 3 and 4 required the jury to find that each defendant knew the essential objectives of the conspiracy and knowingly and voluntarily agreed to become involved in the conspiracy." [citation].

Volume LVIII (Day 22 - 10/30/03) at 4134, ls. 5-6 & 7-10.

If the court has further questions regarding these citations, counsel is available at the number cited below.

                Respectfully Submitted,

                DAVID M. GAOUETTE
                Acting United States Attorney

                s/ James C. Murphy
                By: James C. Murphy
                Assistant United States Attorney
                1225 Seventeenth Street, Suite 700
                Denver, Colorado  80202
                Telephone:(303) 454-0100
                Fax: (303) 454-0461
                E-mail: james.murphy3@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on June 8, 2009, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following e-mail addresses:

**Vincent James Oliver**
Vjoliverlawyer@cs.com

        DAVID M. GAOUETTE
        Acting United States Attorney

        s/ James C. Murphy
        By: James C. Murphy
        Assistant United States Attorney
        1225 Seventeenth Street, Suite 700
        Denver, Colorado  80202
        Telephone:(303) 454-0100
        Fax: (303) 454-0404
        E-mail: james.murphy3@usdoj.gov

        Counsel for Plaintiff
        United States of America