PROB 12
(02/05-D/CO)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

U. S. A. vs. EDWARD PALMER                Docket Number: 01-cr-00214-WYD-09

**Petition for Issuance of Arrest Warrant Due to Violation of Supervised Release**

      COMES NOW, Andrea L. Bell, probation officer of the Court, presenting an official report upon the conduct and attitude of Edward Palmer who was placed on supervision by the Honorable Wiley Y. Daniel sitting in the court at Denver, Colorado, on the 18th day of December, 2003, who fixed the period of supervision at 4 years on Count 18 and 3 years on Count 20, and imposed the general terms and conditions theretofore adopted by the court and also imposed special conditions and terms as follows:

1. The defendant shall participate in a program of testing and treatment for drug abuse, as directed by the probation officer, until he is released from the program by the probation officer. The defendant shall abstain from the use of alcohol or other intoxicants during the course of treatment and shall pay the cost of treatment as directed by the probation officer.

RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:

See attachment hereto and herein incorporated by reference

PRAYING THAT THE COURT WILL ORDER the issuance of a warrant for violations of supervised release and that the petition and warrant be sealed until the arrest of the defendant. Subsequent to the arrest of the defendant, that the Court consider revocation of supervised release.

      ORDER OF THE COURT

| | |
|---|---|
| Considered and ordered this 10th day of July, 2013, and ordered filed under seal and made a part of the record in the above case. | I declare under penalty of perjury that the foregoing is true and correct.<br><br>*s/ Andrea L. Bell*<br>Andrea L. Bell<br>Senior U.S. Probation Officer |
| s/ Wiley Y. Daniel<br>Wiley Y. Daniel<br>Senior U.S. District Judge | Place: Denver, Colorado<br>Date:  July 9, 2013 |

## ATTACHMENT

On July 31, 2009, and June 22, 2010, the conditions of supervised release were read and explained to the defendant.  On that date, he acknowledged in writing that the conditions had been read to him, that he fully understood the conditions, and that he was provided a copy of them.  The defendant's term of supervised release commenced on July 31, 2009.

The defendant has committed the following violations of supervised release:

**1.     VIOLATION OF THE LAW:**

On or about September 20, 2012, the defendant committed the offenses, Second Degree Kidnaping, in violation of C.R.S. § 18-3-302(1), a Class 4 felony; Felony Menacing, in violation of C.R.S. §18-3-206(1)(a)/(b), a Class 5 felony; Weapon Possession by Previous Offender, in violation of C.R.S. §18-12-108(1), a Class 6 felony; Third Degree Assault, in violation of C.R.S. §18-3-204(1)(a), a Class 1 misdemeanor; and a sentencing enhancement for commission of violent crime with a weapon.  These offenses, if convicted, constitute both Grade A and Grade B violations of supervised release.

This charge is based on the following facts:

On September 20, 2012, officers of the Aurora police department were dispatched to 19772 E. Villanova Place in Aurora, Colorado, on the report of a kidnaping.  Upon arrival, officers contacted Jennifer Soto, a friend of the defendant's wife, Danielle Wills.  According to Ms. Soto, Danielle Wills had told her the defendant had been sending her threatening text messages, and Danielle Wils feared the defendant would come over to "cause trouble".  In addition to Ms. Soto, there were two other adult witnesses to the incident, Shaneika Robinson, the 20-year-old daughter of Ms. Wills, and Javon Swain, the 19-year-old son of Ms. Soto.

According to police reports, the defendant forced his way into the house by punching in the screen of the storm door and unlocking the front door when Ms. Wills would not let him enter.  After entering the residence, the defendant grabbed Ms. Wills by the hair and dragged her out of the residence.  Once outside, they fought physically for a short period and then the defendant forced Ms. Wils into his vehicle and drove away.

The witnesses heard the defendant say he had a gun, but did not observe the gun.  One witness heard the defendant stat he was going to kill Ms. Wills and her daughter, Ms. Robinson.  After the defendant took Ms. Wills, the witnesses observed Ms. Wills' cell phone in the yard and a black satchel that contained a box of 9mm bullets.

Officers located the defendant's vehicle a few blocks away.  Ms. Wills was located at a residence nearby where she had sought help.  She had visible injuries.  Ms. Wils recounted a similar version of the incident to police at the residence, and stated she

knew the defendant had a gun but did not see it.  When they were stopped at an intersection a short distance away, the defendant opened the trunk and told her he was "going to get rid of her."   She exited the car and the defendant pointed a black and silver handgun at her.  She advised officers that she and the defendant are under federal supervision and are prohibited from possessing a firearm.  It was noted that the neighbors who provided Ms. Wills refuge heard a single shot fired near the area where the defendant was last observed walking away from intersection.  The defendant was arrested a short distance away.  He denied having assaulted Ms. Wills, possessing, or firing a firearm.

A 9mm firearm was recovered a short distance  from the scene where the defendant had been walking.   Forensic testing on this weapon and the ammunition are pending.

In Arapahoe County District Court, Docket No. 2012-CR-2060, the defendant appeared for preliminary hearing on February 19, 2013.   The Court found probable cause and bound the matter over for further hearing.  The defendant entered a plea of not guilty on May 3, 2013, and a trail has been set for September 16, 2013.

## 2.     POSSESSION AND USE OF A CONTROLLED SUBSTANCE:

On or about June 15 or 16, 2013, the defendant used or administered a controlled substance, marijuana, which had not been prescribed to him by a physician.  This constitutes a Grade C violation of supervised release.

This charge is based on the following facts:

On June 17, 2013, the defendant submitted a urine specimen, which tested positive for marijuana.  I met with the defendant on June 27, 2013, and he admitted having used marijuana at a family wedding on the weekend prior to the urine test (June 15 -16, 2013).  He reported it was a "spur of the moment thing" that he did not think about.  He claimed that he believed using marijuana was acceptable because it is legal in Colorado.  I reminded the defendant that marijuana remains a controlled substance in federal statutes and is prohibited.  He provided the following written statement:

> "At a family wedding and decided to try a cannbus (sic) stick thinking it was legal not knowing it could violate me.  My levels are going down because I'm not a smoker.  This is my first positive and that is no excuse."

I inquired if the defendant had smoked marijuana beyond the weekend of the wedding.  He denied any other use of marijuana.

On June 28, 2013, the specimen collected on June 17, 2013, was confirmed by GC/MS from Alere Laboratories to be positive for marijuana.

3.      **POSSESSION AND USE OF A CONTROLLED SUBSTANCE:**

On or about June 27, 2013, the defendant used or administered a controlled substance, marijuana, which had not been prescribed to him by a physician.  This constitutes a Grade C violation of supervised release.

This charge is based on the following facts:

On June 27, 2013, I met with the defendant to discuss a positive urine test for marijuana that was collected on June 17, 2013.  The defendant admitted to using marijuana on a one-time basis at a family wedding, occurring on June 15-16, 2013.  He denied any further use.

A second urine specimen was collected at this appointment on June 27, 2013, which also tested positive for marijuana.  This second specimen was confirmed by GC/MS from Alere Laboratories on July 1, 2013.

In order to determine whether this positive test result may be attributed to residual use, an interpretation was requested of Alere Laboratories.

According to David Green, Ph.D., Laboratory Director, the test interpretation for this second sample yielded the following opinion:

> "It is my opinion the donor continues to use THC.  Recent research by Dr. Huestis and Smith has clearly demonstrated the expected ratio for clearance in social users.  The research demonstrates the clearance of THCA from the urine of a social user is 5 days using a 15 ng/ml cut-off level and 7 days using a 6 ng/ml cut-off level.  The time period between collections for the specimens listed above was 20 days."