UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 01-cr-00214-WYD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

19. SAMMY LEE WOODS,

      Defendant.

_____

**MINUTE ORDER**
_____

ORDER ENTERED BY SENIOR JUDGE WILEY Y. DANIEL

      THIS MATTER is before the Court on defendant, Sammy Lee Woods's, Pro Se Request For Appointment Of Counsel [ECF No. 4015] and Motion Requesting Sentencing Relief [ECF No. 4013].   These are Woods's third requests for such relief. Woods previously filed motions requesting identical relief on December 19, 2013 [ECF No. 4008] and August 28, 2012 [ECF No. 3907].   On January 9, 2014 and August 30, 2012, I issued minute orders [ECF Nos. 3908 and 4011] denying those motions as moot because I denied Woods's original Motion For Reduction Of Sentence [ECF No. 3544] and the United States Court of Appeals for the Tenth Circuit affirmed that ruling.   [*See* ECF No. 3899].

      Because the instant motions are duplicative of the relief sought in Woods's prior motions, which I denied, it is

      ORDERED that the Request For Appointment Of Counsel [ECF No. 4015] and Motion Requesting Sentencing Relief [ECF No. 4013] are **DENIED**.

      Dated:   July 29, 2014

UNITED STATES COURT OF APPEALS OF          ORIGINAL COPY
THE TENTH CIRCUIT

UNITED STATES OF AMERICA                    CRIM.NO.01-cr-00214-WYD

v.

SAMMY LEE WOODS


          Petitioner appeals District Court Ruling of
Denial July 29,2014.This denial was ruled without facts and finding
of law,and Petitioner request for sentencing reduction was raised
pursuant to 705,706,709,712,713 and §3553(a)

          COMES NOW,SAMMY LEE WOODS,Pro-Se,in this matter without

counsel and asking this Honorable Court to grant jurisdiction to

hearing this Motion for reconsideration for a sentence reduction

based on new amendments.A hearing was requested by Petitioner Woods

based on the amendment pursuant to §3553(a)factor.Pursuant to Amend-

ment 705,706,709,712,713 and §3553(a)1B1.10(c)The Commissioner made

Amendment 750 retroactive by adding it to the list of amendments

found at 1B1.10(c).

          This Appeal for reconsideration focusses on whether

Woods is entitled to relief under the new amendments since 2010

and the Sentencing Commissioner's actions decriminalizing cocaine

base convictions and making those decriminalizing penalties retro-

active to final judgments.The Judge makes a ruling in his recent

ruling without "facts and finding of law" and in Woods case by

his understanding all that is required for such a sentence modi-

fication is that the sentence sought to be modified was pursuant

to the 1984 Sentencing Reform Act,(i.e.,the Federal Sentencing

Guidelines), and that the sentencesought to be modified is sub-

ject to an action by the Federal Sentencing Commission that has

1

been made retroactive to final judgments.In Woods case he be-
lieves that both of these qualifying criteria apply.

First,the Sentencing Commission has decriminalized cocaine
base offenses imposed pursuant to the 100-1 ratio,former penal-
ties,to the current penalties calculated at an 18-1 ratio cocaine
base to cocaine powder.This decriminalization effects substanti-
cally Woods sentence.The decriminalization has been made retro-
active to final judgments, and thousands of inmates are now re-
ceiving the benefit of this decriminalization and this Court is
aware of this.

Woods 240 Month Sentence is no longer subject to the man-
datory minimum sentence outlined in 21 USC§841(b)(1)(A).Because
the retroactively applicable changes in the cocaine base senten-
cing laws,if any mandatory sentence is to be considered,that man-
datory minimum sentence is that outlined in 21 USC §(b)(1)(B).That
mandatory minimum is 5 years,coupled with the statutory enhance-
ment outlined in 21 USC§851,this would result in a mandatory mini-
mum sentence of only one hundred twenty(120)months of confinement,.

Woods understand that the majority of the courts do not a-
gree that the Guidelines decriminalization that was made retro-
active by the Sentencing Commission applies to mandatory minimum
sentences. Woods believe only the First Circuit has found that
Congress's intent in passing the decriminalizations, and the Sen-
tencing Commission's concurrent making of the decriminalizations
retroactive apply to ALL cocaine base sentences,whether those
sentences were mandatory minimum sentences,or not.

It is not Congress' intent that controls.The Supreme Court,
for the past 25 plus years,has held that any federal sentence must

be imposed pursuant to the Guidelines to be constitutional.The
sentencing statutes CANNOT be used for any sentence imposed after
1998, as the statutes have been superceded by the Guidelines,for
a collection of reasons, and this is Supreme Court precedent with-
out question.I will direct this Court to the case MISTRETTA v.
UNITED STATES,448 US 361(1998).ANy sentence imposed pursuant to
the former statutes implicate indeterminate sentencing, and this
is precisely the thing that the Supreme Court was eliminating in
its holding in MISTRETTA.

The use of the statutory mandatory minimums,per se,instead
of as channeled through the Guidelines,is precisely the type of
indeterminate sentencing regime that the Supreme Court ABOLISHED
in MISTRETTA.And today,the proof is in the reality of what is oc-
curring.Thousands of inmates in federal prison are being accorded
modifications of their sentences.Only a few,Woods included,are
being denied modification pursuant to 28 U.S.C.§994(o),(promulga-
tio of amenments);§994(u)(retroactivity).

And when relief is denied it is predicated on the legal
fiction that the mandatory minimum sentence imposed was NOT IM-
POSED PURSUANT TO THE GUIDELINES, rather pursuant to the former
sentencing statutes,to wit: 21 USC 841(b)(1)(B).This cannot be
because, in MISTRETTA,the Supreme Court specifically mandated
sentencing pursuant to the Guidelines, and not the former statutes.
Woods SENTENCE was imposed pursuant to the Guidelines,18 USC§3551,
The position that Woods will further be advancing in this Appeal
is contrary to the position Woods has taken with any counsel.

I.

ISSUE ONE

3

> The United States is mistaken in its claim:"The Court sentenced the defendant to the statutory mandatory minimum 240 months."

1. Judgment was entered April 29,2004 and filed of record in this case on May 3,2004. The United States had every opportunity to file a notice of appeal in this case, but the United States waived that right.As a result,with respect to this judgment and the United States being required by law to give full accord to its contents, this judgment is final. The United States is just as bound by the contents of the judgment in this case as Woods is.Woods is serving the 240 month sentence provided for in this judgment.The United States, also,is equally bound by this provision in this final judgment,to wit:

> "The defendant is sentenced as provided in pages 2 through 8 of this judgment.The sentence is im posed pursuant to the Sentencing Reform Act of 1984."

2. It is axiomatic that the "Sentencing Reform Act of 1984" is now commonly known as the Federal Sentencing Guidelines.The Federal Sentencing Guidelines are found in the United States Code to wit: 18 USC §3551,et.seq. The United States, therefore,is estopped from claiming that Woods' sentence is imposed pursuant to any other statute other than the Sentencing Guidelines which are codified in 18 USC § 3551,et.seq.

3. The United States is attempting to create an impermissible legal presumption that sentences in the federal system can be imposed pursuant to any other statute other than the Guidelines.This effort is not a "legal presumption" as much as it is a "legal fiction". Sentences in the federal criminal justice system are mandated to be imposed pursuant to the Guidelines. There can be no more consideration of the "statutes"that preceeded imposition of the

4

Federal Sentencing Guidelines. Third, listing an amendment in §1B1. 10(c) therefore has the effect of making that amendment "retro-active" for Defendant Woods to benefit from it. The Commission's organic statute vests the Commission with discretion both to for-mulate and promulgate amendments to the Guidelines Manual, and to "specify in what circumstances and by what amounts the sentence of prisoners serving terms of imprisonment for [an] offense may be reduced. "See U.S.C.§990(o)(Promulgation of amendments);§994(u)(retroactivity).

4.                    **CRACK COCAINE AMENDMENTS.**

The Commission promulgated Amendment 706 in May 2007, and it became effective on November 1, 2007. Amendment 706 amended the drug quantity table located as §2D1.1(c) of the Guidelines Manual to lower the base offense levels, and hence the guideline ranges, applicable to drug offenses involving certain quantities of crack cocaine. The amendment accomplished this by reducing the base level s applicable to the mandatory minimum threshold quantities of crack cocaine(5 grams for five-year minimum, and 50 grams for the ten year mandatory minimum) downward by 2-levels each, and extra-polating that change throughout the remainder of the drug table. See U.S.S.G.App.C.amendment 706(effective Nov.1,2007).The effect of the amendment was to lower the base offense level for many quantities of crack cocaine by 2-levels(the amendment is there commonly referred to as the **"crack minus two"amendment).**The next year, the Commission made 706 retroactive by adding it to the list of amendments found at USSG §1B1.10(c).

Defendant is asking this Court to grant this Motion for reduction pursuant to Amendment 706, U.S.Sentencing Guidelines

Manual app.C,amend.706(2007),which amended the drug quantity table in U.S.Sentencing Guidelines Manual §2D1.1(c).See UNITED STATES OF AMERICA,v.JOE HIGHTOWER,346 Fed.Appx.377;2009 U.S. LEXIS 22187 No.08-1501 October 8,2009,Filed. The Commission promulgated Amendment 750 responded to the Fair Sentencing Act of 2010,in which Congress altered the mandatory minimum penal-ties applicable to crack cocaine offenses and further instruct-ed the Commission to take certain action with respect to the re-levant guideline provisions.By re-promulgating the temporary, emergency amendments that took effect the previous year,Amend-ment 750 amended the drug quantity table located at §2D1.1 of the Guideline Manual to assign offenses involving 28 or more crack cocaine a base offense level of 26,assign offenses invol-ving 280 grams or more of crack cocaine a base level of 32, and then extrapolate those changes proportionally upward and down-ward throughout the drug table.See USSG.App.C.amend.750(effec-tive Nov.1,2011);id.amend.748(effective Nov.1,2010).This had the effect of lowering the base levels applicable to many quantities of crack cocaine.Compare USSG §2D1.1(c)(1)(2009)(pre-amendment), The next year,the Commission made Amendment 750 retroactive by adding it to the list of amendments found at 1B1.10(c).

Woods was found to be in possession of 1.062 grams of crack cocaine and was sentenced to what appeared to be a life sentence,this quantity is actually less than one gram of crack. This quantity is not calculated on the drug table.TAKE NOTICE that on December 11,2007,the Sentencing Commission promulgated Amendments 712 and 713 which together,operated to make 706 re-troactive.|346 Fed.Appx 379| Amendments 712 and 713 themselves became affective as of March 3,2008.TAKE NOTICE under the cur-

rent Colorado Cocaine Laws,Woods was sentenced by using the same
Code Section that is attached with this Motion under 18-18-101,
et seq.18-18-405.Please see Case 01-cr-00214-WYD-19.Woods seek
a reduction of sentence based now on 3553(a) .

## CONCLUSION

The United States and the District Court is attempting to create
impermissible legal presumption that sentences in the federal
system can be imposed pursuant to any other statute other than
the Guidelines.This effort is not a "legal presumption"as much as
it is a "legal fiction" Sentences in the federal criminal justice
system are mandated to be imposed pursuant to the Guidelines.There
can be no more consideration of the "statutes" that preceeded im-
position of the Federal Sentencing Guidelines.

This reality is neither new,nor unique.In 1988,almost 26
years ago,the United States Supreme Court addressed this issue,
and the Court unequivocally resolved this issue.MISTRETTA v.U.S.
488 US 361(1988). Mandatory minimum sentences from the previous
indeterminate sentencing statutes were never intended by Congress
to be applied.ID.,MISTRETTA,at 488 US at 374.It is axiomatic that
the Guidelines do adopt certain parameters and thresholds contain-
ed in the former sentencing statutes, but this does not mean that
the former statutes survived the adoption of the Guidelines as
being viable in federal sentencing.

The goal in passing the Guidelines was to resolve the
seemingly intractable dilemma of excessive disparity in criminal
sentencing."ID.,MISTRETTA,supra.,at 488 US at 384.It is simply
legal fiction for the United States to conclude,now 26 years
later, that the former statutory mandatory minimum sentences ap-

ply to prevent a modification of Woods sentence under the New Amendments pursuant to Amendment 706,712,713 and Amendment 750 retroactive by adding it to the list of amendments found at § 1B1.10(c).See UNITED STATES OF AMERICA,v.JOE HIGHTOWER,UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT 346 Fed.Appx.377; 2009 U.S.LEXIS 22187.Woods unlike Joe Hightower seek a sentence reduction based on amendment 706,ROA,Vol.11 at 41.Woods asserts in this motion that application of the amended guidelines for crack cocaine related offenses would result in a significant lowerring of his guideline range,Woods is now 56 years old at the filing of this motion,Woods have been incarcerated for 14 plus years of his life,the realtively small likelihood of recidivism my exemplary post-conviction behavior,Please see Woods progress reports both past and present included with this Motion.I have regular contact with my family and childrens and grand childrens, a reduction of Woods sentence would not pose a safety factor"See Judgment in Criminal Case"also included with this Motion.

For purposes Woods asserts that he had done more time incarcerated to effectuate the purpose of 18 U.S.C.§3553(a)."Id. at 45.Woods is eligible for a limited reduction pursuant to Amendment 706.Id.at 51.Woods is requesting this Honorable Court for a full and Honest and complete reevaluation of his sentence.However,to grant modification all this Court needs to do is apply now existing laws.The decriminalization of cocaine offense sentences has been retroactively applicable since November 1,2010, over 3 years ago.Woods also submit with this Motion a copy of his Judgment and Criminal Case Order which will show that he is not a public risk.

Woods has been incarcerated for over 14 years for a simple pos-
session of crack co-caine and I ask this Court for a reduction
of sentence based upon an Intervening Post-Sentencing change in
the United States Sentencing Guidelines pertaining to Cocaine
base"CRACK"offenses(Category 9) and the Corollary Criminal His-
tory Category(Amendment 12)which lowers Petitioner's term of im-
prisonment.However, equally real,is the reality that the United
States has been systemmatically thwarting Congressional intent in
passing this law, and in the President's intent in signing the
law into law, and in the Sentencing Commission's passing the
guideline changes and making them retroactively applicable,by
creating the legal fiction that these changes affect only "special"
cases, and not all cases.Second,precedent,already established,sup-
ports the reality that Congress intended all federal inmates in-
carcerated on cocaine base cases, to have their sentences reduced.
"We generally presume Congress is knowledgeable about existing law
pertinent to the legislation it enacts." GOODYEAR v MILLER,486 US
174, 184-85.In this case, Congress passed the Fair Sentencing Act,
and the Sentencing Commission enacted Guideline Amendments,speci-
fically to remedy one of the longest standing disparities in fede-
ral sentencing, the 100 to 1 ratio between cocaine powder and co-
caine base sentences.

      To suggest that Congress,et.al.were not aware of the fede-
ral prisoners subject to that disparity is nonsense.To suggest
that Congress and the Sentencing Commission intended to leave
certain victims of the disparate sentencing in prison,while re-
leasing only a select few is equally nonsensical and nonsequitur.
Everyone was knowledgeable of the law,and the law presumes such,

9

not says Woods, but says the United States Supreme Court.ID.
And these presumptions bind this Court to apply the new law and
modify Woods sentence.This Court is constrained to"...apply the
new law in effect at the time it renders its decision,unless do-
ing so would result in manifest injustice or there is statutory
direction or ligislative history to the contrary."BRADLEY v.
RICHMOND,416 US 696,711(1974).

## A FINAL CONSIDERATION

Without briefing,at this time,the final consideration,
Woods would simply pose a question, one empirical in its simpli-
city, and too complicated for a mere pro se litigant to address,
unless ordered to do so. However, there exists a judicial creation,
rule of law known commonly as the "Rule of Lenity." It is Woods
understanding that the Rule of Lenity mandates that when two
statutes control,especially in the circumstance of two sentencing
statutes,the less severe option must be applied. In Woods case,if
he is bound by a former law,when a less severe current law applies
to the circumstances of his case, would the Rule of lenity not ap-
ply? With respect to this issue Woods could find nothing on the
issue,making this issue one of first impression.Woods invites the
opportunity to brief the issue for this Court, and would encourage
doing so,if this Court,after reading this objection,is of a mind
to deny relief,notwithstanding the arguments and authorities ad-
vanced in this objection.

## PRAYER FOR RELIEF

WHEREFORE, Woods prays this Court grants modification of
Woods sentence, to the end that Woods be resentenced to a Guideline
sentence not to exceed 120 months confinement.Woods prays for any

and all other relief to which he is entitled.If Woods is bound
by the statues and Codes for confinement,then he is bound to be
sentenced by the Code Section of the Colorado CoCaine laws,see
Colorado Cocaine laws enclosed with this Motion.Woods asserts that
at issue when the United States writes a law and a particular
State enacts a law that prohibits the same conduct,is that type
of legislation by either or both lawful or is there something
wrong.The Supreme Court has said there is something wrong.Woods,
argue that the District Court continue to show bais in its rulings
when in fact the court is bound to make rulings based on facts and
findings,Woods has requested the District Court to identify the
facts to the case and determine the law that is applied to the
facts.

The federal statute that requires the court to make finding
of fact and conclusion of law is F.R.Civ.52(a).Woods submitted a
Motion on other merits such as 705,706,28 U.S.C.§994(o)(p)(pro-
mulgation of amendments);994(u)(retroactivity).§1B1.10(c)709,712,
713, and 3553(a) factors for sentencing.See UNITED STATES OF
AMERICA v. JOE HIGHTOWER,UNITED STATES COURT OF APPEALS FOR THE
TENTH CIRCUIT 346 Fed.appx.377;2009 U.S.App.LEXIS 22187 No.08-
1501 October 8,2009,filed.Woods,request this Court to modify his
sentence pursuant to the new 3553(a)sentencing factor and impose
a sentence below the NEW amended guideline range.

Respectfully Submitted,

/s/ *Sammie Lee Woods*

Sammie Lee Woods,Reg.No.30425013
Federal Prison Camp
c/o P.O.Box 2000,D
Millington,Tennessee 38083
DEFENDANT PRO SE

11

CERTIFICATE OF FILING BY MAIL AND

CERTIFICATE OF SERVICE

I,Sammie Lee Woods,being an incarcerated person, and pursuant to 28 USC §1746,DECLARE UNDER PENALTY OF PERJURY,that the original of this DOCUMENT was duly FILED BY MAIL,by depositing same in the Institution's mail Depository for legal mail,postage prepaid and addressed to:UNITED STATES COURT OF APPEALS,CLERK OF THE COURT,1823 Stout Street,Denver,Colorado 80257,on the _8th_ day of September,2014.

Sammie Lee Woods#30425013
DECLARANT/DEFENDANT PRO SE

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT
Office of the Clerk
Byron White United States Courthouse
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

Chris Wolpert
Chief Deputy Clerk

September 12, 2014

Mr. Jeffrey P. Colwell, Clerk
United States District Court for the District of Colorado
Alfred A. Arraj U.S. Courthouse
901 19th Street
Denver, CO 80294-3589

**RE:   Misdirected notice of appeal in D.C. No. 01-CR-00214-19-WYD.**

Mr. Colwell:

Enclosed, please find plaintiff's pleadings which are construed as a misdirected
Notice of Appeal sent to this court in error on behalf of Sammy Lee Woods.

Please process pursuant to Fed. R. App. P. 4(d) as of September 12, 2014.

Very truly yours,

*Elisabeth A. Shumaker*

ELISABETH A. SHUMAKER, Clerk

cc: Sammy Lee Woods, #30425-013, Federal Prison Camp, P.O. Box 2000,
     Millington TN 38083

EAS/kf

# UNITED STATES DISTRICT COURT

## DISTRICT OF COLORADO

FILED
UNITED STATES DISTRICT ...
DENVER, COLORADO

MAY - 3 2004

GREGORY C. LANGHAM
CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE**<br>(For Offenses Committed On or After November 1, 1987) |
| v. | CASE NUMBER: 01-CR-214-19-D |
| | Ronald Gainor, Appointed |
| SAMMY LEE WOODS | (Defendant's Attorney) |

**THE DEFENDANT:** Was found guilty on counts one, fifty, and sixty-two of the Second Superseding Indictment after a plea of not guilty.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Numbers |
|---|---|---|---|
| 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(iii); 18 U.S.C. § 2 | Conspiracy to Distribute and Possess with Intent to Distribute Fifty or More Grams of Cocaine Base, Aiding and Abetting | 06/07/01 | One |
| 21 U.S.C. § 843(b); 18 U.S.C. § 2 | Use of a Communications Facility to Possess with Intent to Distribute Cocaine Base, Aiding and Abetting | 05/09/01 | Fifty |

The defendant is sentenced as provided in pages 2 through 8 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

Defendant's Soc. Sec. No.: 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

Defendant's Date of Birth: 11/23/57

Defendant's USM No.: 30425-013

Defendant's Residence Address:

Federal Detention Center
9595 West Quincy Avenue
Littleton, Colorado 80123

Defendant's Mailing Address:
SAME

April 21, 2004
Date of Imposition of Judgment

Signature of Judicial Officer

Wiley Y. Daniel, U.S. District Judge
Name & Title of Judicial Officer

4/29/04
Date

I, Gregory C. Langham, Clerk of the
United States District Court for the
...district... do certify that
the foregoing is a true copy of an
original document remaining on file
and record in my office.
WITNESS my hand and SEAL of said
Court this __ day of May 2004
GREGORY C. LANGHAM
By _____
Deputy

DEFENDANT:  SAMMY LEE WOODS
CASE NUMBER:  01-CR-214-19-D

Judgment-Page 2 of 8

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 U.S.C. § 841(a)(1) and (b)(1)(C); 18 U.S.C. § 2 | Possession with Intent to Distribute 1.062 Grams of Cocaine Base, Aiding and Abetting | 06/15/01 | Sixty-Two |

Colorado Cocaine Laws - CO Cocaine Laws - FindLaw for the Public

**More information on Illegal Drug Laws**

| Code Section | 18-18-101, et seq. 18-18-405 |
|---|---|
| Possession | Class 4 felony; Subsequent Offense: twice or more within 6 months and amount greater than 28.5 g.: Defendant shall be sentenced to the Dept. of Corrections for at least the minimum and fined no less than $1000 but not over $500,000 with no probation or suspension |
| Sale | Class 3 felony; Sale to minor within 1000 ft. of school or public property–Dept. of Corrections for minimum 5 yrs.; Subsequent offense near school: 20 yrs. |
| Trafficking | – |

Crack Cocaine Laws

## Crack Cocaine Laws

- Under current federal law, someone caught with five grams of crack cocaine gets a certain five-year sentence -- while someone would have to be in possession of 500 grams of the white, powdered cocaine to trigger the same mandatory prison time.
- The proportion and number of inmates serving time for federal drug convictions has mushroomed since 1986, when Congress enacted a number of mandatory minimum sentences for drug crimes -- including those involving crack cocaine.
- H.R. 4026, the "Powder-Crack Cocaine Penalty Equalization Act of 2002" is a bill being considered in Congress that would change the current crack cocaine and powder cocaine ratios, created in the Anti-Drug Abuse Act of 1986.
- The average crack cocaine sentence, 120 months, is greater than: the 103-month average sentence for robbery; the 76-month average sentence for arson; the 64-month average sentence for sexual abuse; and the 31-month average sentence for manslaughter. United States Sentencing Commission, 1999 Sourcebook of Federal Sentencing Statistics.
- Sentences for crack offenders are roughly two to six times as great as sentences for powder cocaine offenders distributing equivalent quantities of drugs. Testimony of the Honorable Deanell Reece Tacha, United States Sentencing Commission, before the House Subcommittee on Crime, June 29, 1995.
- The average sentence for crack cocaine (ten years) is thirty-five percent longer than the average methamphetamine sentence and fifty-two percent longer than the average powder cocaine sentence. United States Sentencing Commission, 1999 Sourcebook of Federal Sentencing Statistics 69.
- While a majority of crack users in the United States are white, 94 percent of those sentenced under the incomparably severe penalties for crack cocaine are black or Hispanic. Leadership Conference on Civil Rights, Justice on Trial: Racial Disparities in the American Criminal Justice System 30 (2000); United States Sentencing Commission, 1999 Sourcebook of Federal Sentencing Statistics 69.
- Amid widespread criticism directed at the severity and disparate impact of the crack sentencing regime, the Sentencing Commission has twice called for reduced crack penalties, noting A[t]he current penalty structure results in a perception of unfairness and inconsistency.@ United States Sentencing Commission, Special Report to Congress: Cocaine and Federal Sentencing Policy 8 (April 1997).

# ATTACHMENT

1

1

2          MS. TAFOYA:  ,.

3          MR. GOLLA:  ,.

4          MR. TILL:  ,.

5          MR. BANTA:  ,.

6          MR. JOYCE:  ,.

7          MR. ELDRIDGE:  ,.

8          MR. GAINOR:  ,.

9          MR. SCHLIE:  ,.

10         (In open court at type in 09 a.m.)

11             THE COURT:  Let's get the jury.

12         (Jury in at 9:12 a.m.)

13             THE COURT:  You may be seated.

14             Good morning.  Let's continue with Mr. Gainor's

15     cross-examination.

16             MR. GAINOR:  Yes, Your Honor.

17                 CROSS-EXAMINATION CONTINUED

18     BY MR. GAINOR:

19     Q   Good morning, Officer Stanton?

20     A   Good morning, sir.

21     Q   When we broke for the day yesterday, I believe you and I

22     were discussing, were beginning to discuss the phone calls
that

23     were played between Sammy Woods and Willie Small.

24     A   Yes, sir.

25     Q   And I think -- and correct me if I'm wrong -- that we
had

2

- Cross

1    agreed from looking at some of the exhibits that that time

2    frame, those phone calls that you testified to on direct

3    started, I believe that first one was on April 3, Exhibit
38,

4    which we got out for you, and then phone calls running until

5    June 9, which would have -- the last one would have been
552.

6    A    Yes, sir.

7    Q    Does that sound accurate to you?

8    A    Yes, sir.

9    Q    And aside from these phone calls, you also testified
over a

10   series of, I think it was a day and a half or almost three

11   days, that there were different modes of surveillance that
were

12   utilized in this investigation, did you not?

13   A    Yes, sir.

14   Q    One of those modes of surveillance was a stationary
camera

15   that was -- that was posted some, at some particular
altitude,

16   I'm not sure exactly where it was.  Maybe you can tell me,
that

17   was just recording people coming in and out of that
apartment

18   location.

19   A    That is correct, yes, sir.

20   Q    Okay.  And then in addition to that stationary camera,
what

21   did you call it, CCTV?

22   A    Yes, sir.

23   Q    Closed circuit TV?

24   A    Yes, sir.

25   Q    All right.  And then in addition to that camera that was

3

- Cross

1  stationary, there were also other people MARK with, I imagine

2  camcorders that they carried with them, other officers that

3  filmed at a different angle in that location?

4  A  Yes.  There's other officers in the area.  I wouldn't say

5  that all of them had video cameras with them, but there was

6  officers in the area.

7  Q  Okay.  And some of them may have had a video camera; some

8  of them did not.

9  A  That would be correct, yes, sir.

10  Q  So, in addition to those police officers that were down,

11  let's say either behind vehicles or in vehicles with a

12  camcorder, you might have had other police officers acting in a

13  visual surveillance without a camera, correct?

14  A  That would be correct, yes, sir.

15  Q  All right.  So let's get back to that April 3 to June 9

16  time frame.  Just so we are clear, you personally never saw

17  Sammy Woods engaging in a hand-to-hand transaction, money for

18  crack cocaine, correct?

19  A  Myself personally, no, sir.

20  Q  All right.  Sammy Woods was not observed redistributing

21  crack cocaine; in other words, exchanging crack cocaine for

22  money, to anyone else.

23  A  That would be correct, sir.

24  Q  I know that you spoke about other codefendants that were,

25  for lack of a better term, listed in that count one conspiracy,

4

- Cross

1    but just so we're clear, Sammy Woods was never surveiled or

2    seen.

3        (Williams here) meeting with or assisting that group of

4    what you called user defendants, you know, Miss Brewer, he

5    never met with Miss Brewer?

6    A   Not to my knowledge, no, sir.

7    Q   Never supplied her drugs?

8    A   Not to my knowledge, no, sir.

9    Q   And her husband is Daniel McIntyre.

10   A   Yes, sir.

11   Q   He was never seen with Mr. McIntyre?

12   A   No, sir to my knowledge, no, sir.

13   Q   Now, these user defendants were originally charged in this

14   big conspiracy, this 31-person or this 26-person conspiracy

15   within count one, correct?

16   A   I believe that's true, yes, sir.

17   Q   Well, you know it's true.  You were involved in this case

18   for two and a half years.  You know there were all part of a

19   large conspiracy, count one was a 26-person and then a

20   30-person conspiracy, with the users were contained, their

21   names were contained in that conspiracy indictment, correct?

22   A   Well, correct, but since there was supersedings, I'm not

23   sure exactly which one.  That's all.

24   Q   Oh, all right.  But with regard to those users that I've

25   mentioned, Angela Brewer, Daniel McIntyre, they were originally

5

\- Cross

1    charged in this big conspiracy, but later their conspiracy

2    charge disappeared, it was dismissed, correct?

3    A   That's my understanding, yes, sir.

4    Q   Now, we talked about no contact with Miss Brewer, no

5    contact with Daniel McIntyre with Sammy Woods Woods.   Now
you

6    also mentioned a it your man McKnight.   You also classified
him

7    as a user as well, right?

8    A   Yes, sir.

9    Q   And you have no surveillance or observation that Sammy

10   Woods met or assisted Mr. McKnight in getting any drugs.

11   A   That would be correct, yes, sir.

12   Q   All right.

13   Q   What other users or people that you would categorize as

14   users were charged in that conspiracy; any other
individuals?

15   A   Now, which one are you discussing, one, two, or three?

16   Q   Well, let me rephrase the question.   Let's go to Tommy

17   Jones and Dayna Drew, if we can, for a minute.   You're
familiar

18   with those names, those individuals?

19   A   Oh, yes, sir.

20   Q   There's no evidence that Sammy Woods either helped or
even

21   knew those group of people, also charged in this big

22   conspiracy, Tommy Jones and Dayna Drew, correct?

23   A   That would be correct, yes, sir.

24   Q   And the conspiracy charges against these individuals,
they

25   were also charged in count one, correct, with the
conspiracy,

6

- Cross

1  at one particular point, through a superseding indictments
and

2  so on?

3  A  Yes, sir, I believe so.

4  Q  All right.  And their conspiracy charge disappeared as

5  well, correct, against Tommy Jones?

6  A  That's my understanding, yes, sir.

7  Q  The conspiracy charge against Dayna Drew disappeared as

8  well, correct?

9  A  Yes, sir.

10  Q  There's no evidence that Sammy Woods made it over to
Club

11  Mixx; you never, you and your surveillance people never saw
him

12  go into Club Mixx?

13  A  Not my knowledge, he's never gone to Club Mixx.

14  Q  Have no information that he assisted anyone inside of
Club

15  Mixx with drugs, obtaining drugs and so on, because he never

16  made it in there?

17  A  That is my understanding, yes, sir.

18  Q  All right.  So the users or the people that you
categorize

19  as the users in count one, he had no contact with.  He had
no

20  contact with the Tommy Jones group.  He had no contact with
the

21  Club Mixx group.  That's a fair and accurate summary of your

22  testimony over the past five, ten minutes?

23  A  Yes, sir.

24  Q  You don't have any surveillance that indicates he met
with

25  Mr. Starkey?  I'm talking about Sammy Woods.

7

- Cross

1    A    No, sir.

2    Q    That he assisted Mr. Starkey in the, in the getting of

3    drugs or the obtaining of crack cocaine.

4    A    No, sir.

5    Q    You have no surveillance or evidence to suggest that

6    Mr. Woods met with Mr. Palmer, correct?

7    A    That would be correct.

8    Q    Any evidence of any exchanges of contraband between

9    Mr. Woods and Mr. Lewis, who is also a defendant who is charged

10    in count one?

11    A    That would be correct, yes, sir.

12    Q    And Mr. Lewis was also charged with a conspiracy at one

13    point?

14    A    That's correct, yes, sir.

15    Q    And that charge disappeared for Mr. Lewis; he's not been

16    convicted of a conspiracy.

17    A    That's my understanding, yes, sir.

18    Q    Nor was Mr. Palmer, he was not convicted of conspiracy?

19    A    That's my understanding, yes, sir.

20    Q    Mr. Starkey was not convicted of conspiracy?

21    A    That was my understanding.

22    Q    Any evidence that Sammy Woods had a hand-to-hand exchange

23    or helped Mr. Gaddis eye?

24        MS. TAFOYA:   Objection, Your Honor?

25    BY MR. GAINOR:

8

- Cross

1    Q   Get any drugs?

2         MS. TAFOYA:   Rule 403 says confusion of the issue,

3    these people aren't here today, they haven't been witnesses.

4         THE COURT:   Overruled.   Ins cross-examination.

5    BY MR. GAINOR:

6    Q   As I was saying, Officer Stanton, no evidence that

7    Mr. Woods had an exchange of drugs with Mr. Gaddis.

8    A   That's correct.

9    Q   Mr. Gaddis was originally charged with conspiracy in count

10   one, like Mr. Woods?

11   A   My understanding, yes, sir.

12   Q   And that charge also mysteriously disappeared.

13        He's not been convicted of conspiracy, Officer

14   Stanton, has he?

15   A   No, sir.

16   Q   Mr. Starkey, Mr. Palmer, Mr. Lewis, Mr. Gaddis,

17   Mr. Mendinghall, have not been convicted of conspiracy.

18   A   That would be correct, yes, sir.

19   Q   Miss Brewer, Mr. McIntyre, Mr. McKnight have not charged --

20   have not been convicted of conspiracy.

21   A   That's correct, sir.

22   Q   Mr. Jones, miss drew has not been convicted of conspiracy?

23   A   That's correct, yes, sir.

24   Q   There's in evidence that Mr. Woods met with or helped

25   Mr. Clark get drugs or redistributed drugs to Mr. Clark.

9

- Cross

1    A   That's correct, yes, sir.

2    Q   Mr. Clark was also charged with conspiracy, at one
point?

3    A   Yes, sir.

4    Q   You testified over a series of three days on

5    direct-examination, and I don't remember whether or not you
had

6    any role with regard to the Roz Parker buys.   Were you
involved

7    in this investigation at that particular time, during the

8    hand-to-hands of the buys between Roz Parker and another

9    defendant in this case?

10   A   Yes, sir.

11   Q   Mr. Woods was not involved in that during the series of

12   nine buys?

13   A   No, sir.

14   Q   During direct examination, Miss Tafoya played for you a

15   video.   I believe it was 748.   And it occurred on May 25 of

16   2001.   And it had to do with the time Mr. Vandyke arrived at

17   Mr. Small's apartment.   Do you remember, that sir?

18   A   Oh, yes, sir.

19   Q   And that was also a day that Sammy Woods came to the

20   apartment.   Do you remember that, sir?

21   A   Yes, sir.

22   Q   But you've also heard testimony from sitting in this

23   courtroom that on that day, Mr. Woods met with Mr. Small in
a

24   different part of the house.

25   A   I have heard testimony to that, yes, sir.