In the United States District Court
for the District of Colorado

Case No.  01-CR-00214-WYD-1

United States of America,

          Plaintiff,

v.

Willie Small,

          Defendant.

Motion for a Reduced Sentence of Time Served Under § 404 of the First Step Act

Defendant Willie Small respectfully requests that the Court impose a reduced sentence of time served, pursuant to the First Step Act.[1]  In support, Mr. Small states:

## I.        Introduction

Mr. Small is eligible for relief under § 404 of the First Step Act because: (1) he was convicted of "covered offenses"—specifically, he was convicted of crack cocaine offenses arising under 21 U.S.C. §§ 841(b)(1)(A)(iii) and 841(b)(1)(B)(iii); (2) he was not sentenced under the Fair Sentencing Act of 2010; and (3) and he has not previously been denied relief under the First Step Act.

This Court should exercise its discretion under the First Step Act and impose a reduced sentence of time served.  Mr. Small is a non-violent offender who has been in federal custody since June 2001.  In the over 18 years he has spent behind bars, he has proven himself to be a model inmate.  His disciplinary record is essentially spotless, and he is close to completing a 7,200-hour electrical utility worker apprenticeship.  Thanks to his hard work and family support, Mr. Small is in a good position to reenter society.  In light of this extraordinary rehabilitation, no further incarceration is necessary.  This Court should order Mr. Small's immediate release.

---

[1] The government opposes the relief requested in this motion.

II.     **Procedural History and Factual Background**

A. **Mr. Small is sentenced to a mandatory term of life imprisonment for selling crack cocaine.**

On November 13, 2003, Mr. Small was convicted after trial of numerous counts arising from his involvement in a conspiracy to distribute cocaine base, or crack cocaine.  Relevant here, his convictions included one count of conspiracy to possess with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(iii); three counts of distribution and possession with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(b)(1)(A)(iii); and 17 counts of distribution and possession with intent to distribute 5 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(b)(1)(B)(iii).  Mr. Small was also convicted of multiple counts of possession with intent to distribute crack cocaine, in violation of 18 U.S.C. § 841(b)(1)(C); multiple counts of use of a communication facility to conspire to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 843(b); and one count of money laundering, in violation of 18 U.S.C. § 1956(1)(A)(i).[2]

Before trial, the government filed a prior felony information pursuant to 21 U.S.C. § 851, identifying five prior convictions for felony drug offenses—three of which were for simple possession.  *See* Information 21 U.S.C. § 851 (Attachment A).  As a result, Mr. Small faced a mandatory minimum term of life imprisonment on the conspiracy and possession with intent to distribute counts arising under 21 U.S.C. § 841(b)(1)(A)(iii).

Mr. Small also faced a mandatory term of life imprisonment for the offense under the 2003 edition of the U.S. Sentencing Guidelines.  The presentence investigation report (PSIR) asserted that "the type and amount of drugs involved in this offense was in excess of 1.5 kilograms of cocaine

---

[2] One count of engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a), was dismissed at sentencing. *See* Sentencing Tr. at 8:20-10:3.

base," resulting in a preliminary base offense level of 38.  PSIR ¶ 44 (Attachment B).  The PSIR

added four levels to the base offense level pursuant to § 2D1.5(a)(1), in light of the conviction for

Continuing Criminal Enterprise, and applied a two-level enhancement for possession of a firearm.

*Id.* at ¶¶ 44-45. Because the maximum offense level under the guidelines was 43, this resulted in a

total offense level of 43.  *Id.* at ¶ 53.  The PSIR also concluded that Mr. Small had a criminal history

category of VI, based on five prior drug convictions (including three for simple possession), and a

misdemeanor for driving without a license.  *Id.* ¶¶ 71-85; *see also* Sentencing Tr. at 3:2-4:24 (Attach-

ment C) (clarifying that one of the distribution offenses listed in his PSIR was actually for simple

possession); Information 21 U.S.C. § 851 ¶¶ 2-5 (identifying three prior convictions for simple pos-

session).  With an offense level of 43 and a Criminal History Category of VI, the guidelines required

the district court to impose a life sentence.  *See* U.S.S.G. Ch. 5, pt. A (2003).

Despite the severity of Mr. Small's charges and the resulting guideline range, he was not a

high-level offender.  As defense counsel noted at sentencing, the phone calls recorded by the gov-

ernment "were replete with Mr. Small talking about how he couldn't make any money, talking about

how he owed people money," and Mr. Small "lived in an apartment building that was . . . not the

nicest apartment building around."  Sentencing Tr. at 12:5-9.  Three of Mr. Small's prior drug con-

victions, moreover, were for simple possession, and one involved just 0.22 grams of cocaine.  *See*

PSIR ¶¶ 71-80; *see also* Sentencing Tr. at 3:2-4:24 (clarifying that one of the distribution offenses

listed in his PSIR was actually for simple possession); *id.* 15:14-17 (Mr. Small stating at sentencing

that his record included "posessions of less than 2 or 3 grams of powder cocaine . . . small amounts"

when he "wasn't a drug dealer," but "a drug user").  These charges were rooted in Mr. Small's

longstanding issues with substance abuse and addiction.  He used marijuana daily from when he was

a teenager until the time of his arrest, and was a heavy user of crack cocaine in his 30s.  *See* PSIR

¶¶ 104-08.

At Mr. Small's April 21, 2004, sentencing, the district court found that the offense involved 1.5 kilograms or more of crack cocaine, Sentencing Tr. at 17:22-18:1, and adopted the presentence report's calculations of the sentencing guidelines, concluding that the guideline sentence was life imprisonment, *id.* at 19:1-7. At this time, the guidelines were mandatory. The district court therefore imposed the statutory maximum sentence on each count of conviction, including a sentence of life imprisonment on each of his 18 U.S.C. §§ 841(b)(1)(A) and (b)(1)(B) counts; and a 30-year term on each of his § 841(b)(1)(C) counts.[3] *See* Judgment at 6 (Attachment D). All of the sentences were ordered to run concurrently. *Id.* The district court also imposed an eight-year term of supervised release. *Id.* at 7.

**B. Over nearly two decades in prison, Mr. Small achieves a nearly spotless disciplinary record and demonstrates his commitment to rehabilitation, in spite of the life sentence hanging over his head.**

Mr. Small is now 64 years old and has been in federal custody since June 15, 2001. PSIR at 8-9. As of September 26, 2019, he has spent over 18 years and 3 months (or 219 months) in prison for this offense.

In that time, Mr. Small has paid off his financial obligations, "maintain[ed] positive family ties on a consistent basis," and developed "a good rapport with staff and other inmates." BOP Progress Report at 3 (Attachment E). Over the nearly two decades that he has spent in prison, he has incurred only a single, minor disciplinary infraction for possessing an unauthorized item in 2003, over 15 years ago. *Id.* at 2.

Meanwhile, Mr. Small has worked assiduously to improve himself. He is currently participating in the Residential Drug Abuse Program (RDAP). BOP Progress Report at 1, 2. And since 2016, he has worked for the UNICOR factory at FCI Phoenix, where he helps to manufacture cable for

---

[3] Mr. Small was also sentenced to eight-year terms on each of his § 843(b) phone counts, and one 20-year term for money laundering. *See* Judgment at 6.

the military.  *See* Apprenticeship Program Report (Attachment F).  He has now nearly completed a 7,200-hour Electronics Utility Worker apprenticeship, including training in measurements, basic electronics, and use and care of tools and equipment.  *Id.*  Mr. Small "has consistently earned out-standing and above average work evaluations" for his work.  BOP Progress Report at 1.

### C.  Mr. Small's application for executive clemency is granted and his life sentence is commuted to 300 months.

In 2016, Mr. Small applied for clemency.  *See* Clemency Application (Attachment G).  He cited many factors that favored sentencing relief, including that his sentence would likely be "sub-stantially lower" today.  Clemency App. at 1.  It was unlikely that the § 851 notice would have been filed if Mr. Small were prosecuted at the time of his application, based on clemency counsel's own extensive experience as a federal criminal practitioner.  *Id.*  The probation officer who had com-pleted Mr. Small's PSIR in 2004 agreed that the sentencing judge would have imposed a shorter sen-tence if he could have done so legally.  *Id.*

Mr. Small also emphasized that he was a relatively low-level, non-violent offender.  Clem-ency App. at 2.  Consistent with the non-violent nature of the instant offense, he noted that his criminal history consisted primarily of petty offenses and drug cases—with no violent offenses other than a 1985 municipal assault conviction, for which he had been sentenced to probation.  *Id.* at 2, 4. And while his underlying conviction was serious, he was no kingpin, but a relatively low-level of-fender without ties to any large-scale criminal operation.  *Id.* at 3-4.

On January 19, 2017, Mr. Small's application was granted.  *See* Executive Grant of Clemency, at 7 (Attachment H).  His sentence was reduced from life imprisonment to 300 months, and he was made eligible for RDAP.  *Id.*  He is currently scheduled to be released on March 26, 2023, when he is 68 years old.

Since his sentence was commuted, Mr. Small has made plans for his return to the commu-nity.  He intends to move in with his brother John Small, a longtime Denver resident who works for

a roofing company. John and his wife Michelle are active in their church community, which will be another source of support to Mr. Small when he is released. *See* Clemency App. At 6. Mr. Small also hopes to put his UNICOR experience to good use by finding a manufacturing job. He has also secured a social security card for when he is released. *See* BOP Progress Report at 3.

### III.    Legal Background

#### A.   The 1986 Drug Act establishes a 100-to-1 crack-to-powder sentencing ratio.

Mr. Small was sentenced under the Anti-Drug Abuse Act of 1986 (1986 Drug Act), which "treated crack cocaine crimes as far more serious" than equivalent powder cocaine crimes. *Dorsey v. United States*, 567 U.S. 260, 266 (2012). Under that law, the mandatory minimums set forth in § 841(b)(1)(B) "applied . . . to an offender convicted of possessing with intent to distribute only 5 grams of crack (as compared to 500 grams of powder)," while the even more severe penalties set forth in § 841(b)(1)(A) applied "to one convicted of possessing with intent to distribute only 50 grams of crack (as compared to 5,000 grams of powder), thus producing a 100-to-1 crack-to-powder ratio." *Id.*

The Sentencing Commission incorporated the penalty structure of the 1986 Drug Act "into the first version of the Guidelines themselves," calibrating the base offense levels for drug offenses to the statutory mandatory minimums for the relevant quantity of drugs. *Dorsey*, 567 U.S. at 267. For example, "the first Guidelines Drug Quantity Table associated 500 grams of powder cocaine with an offense level of 26, which for a first-time offender meant a sentencing range of 63 to 78 months (just above the 5-year minimum), and it associated 5,000 grams of powder cocaine with an offense level of 32, which for a first-time offender meant a sentencing range of 121 to 151 months (just above the 10-year minimum." *Id.* "Further reflecting the 1986 Drug Act's 100-to-1 crack-to-powder ratio, the Table associated an offense level of 26 with 5 grams of crack and an offense level of 32 with 50 grams of crack." *Id.*

6

**B. Congress responds to widespread criticism of the 100-to-1 crack-to-powder ratio by enacting the Fair Sentencing Act.**

In the decades that followed, the federal crack-cocaine sentencing regime was the subject of "almost universal criticism from representatives of the Judiciary, criminal justice practitioners, academics, and community interest grouops." U.S. Sentencing Comm'n, *Report to Congress: Cocaine and Federal Sentencing Policy* at 2 (2007).[4]  In particular, critics contended that those laws "overstate[d] the relative harmfulness of crack cocaine relative to powder cocaine"; "swe[pt] too broadly and appl[ied] most often to lower level offenders"; "overstate[d] the seriousness of most crack cocaine offenses"; "fail[ed] to provide adequate proportionality"; and "mostly impact[ed] minorities." *Id.* at 8.

In 2010, Congress responded to these criticisms by enacting the Fair Sentencing Act, which prospectively modified the sentencing provisions applicable to crack cocaine offenses, including conspiracy to possess with intent to distribute and possession with intent to distribute crack cocaine. *See* Public Law 111-220, § 2, 124 Stat 2372, 2372 (2010) ("Fair Sentencing Act").  Relevant here, the Fair Sentencing Act modified 21 U.S.C. § 841(b)(1)(A)(iii) to raise the quantity threshold for a sentence of 10 years to life imprisonment (or mandatory life with two prior convictions for a felony drug offense) from 50 grams of crack cocaine to 280 grams; and it modified 21 U.S.C. § 841(b)(1)(B)(iii) to raise the quantity threshold for a sentence of five to 40 years (or 10 years to life imprisonment with a prior conviction for a felony drug offense) from 5 grams of crack cocaine to 28 grams. *Id.* § 2(a).  "The change had the effect of lowering the 100-to-1 crack-to-powder ratio to 18-to-1." *Dorsey*, 567 U.S. at 269.

The Fair Sentencing Act went into effect immediately upon enactment on August 3, 2010, and the Supreme Court held that the new penalty structure would apply to any defendant sentenced

---

[4] https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/drug-topics/200705_RtC_Cocaine_Sentencing_Policy.pdf

after August 3, 2010, even if the offense was committed prior to that date. *Dorsey*, 567 U.S. at 281.

But the Fair Sentencing Act did not apply retroactively, leaving intact many sentences that were im-

posed from 1986 through 2010 under the pre-Fair Sentencing Act penalty structure.

### C. The Sentencing Commission amends the Sentencing Guidelines in response to criticism of crack-cocaine sentencing.

Since Mr. Small was originally sentenced in February 2004, the Sentencing Commission has

also responded to the widespread criticism of crack-cocaine sentencing by repeatedly reducing the

severity of the guidelines applicable to crack cocaine offenses.  *See* Amendment 706, U.S.S.G. App'x

C, Vol. III at 226-27; Amendments 748 and 750, U.S.S.G. App'x C, Vol. III at 376, 391-93; and

Amendment 782, U.S.S.G. App'x C, Vol. IV at 60.  These amendments were expressly made retro-

active.

Prior to the First Step Act, however, Mr. Small was not eligible for relief under these retroac-

tive guidelines amendments.  A defendant is only eligible for a sentencing reduction based on a ret-

roactive change to the guidelines if such a change "has the effect of lowering the defendant's appli-

cable guideline range." U.S.S.G. § 1B1.10(a)(2)(B).  Although these amendments have had the effect

of lowering the base offense level applicable to Mr. Small's offense from 38 to 34, *see infra*, they did

not lower his advisory guidelines range because he remained subject to a statutory mandatory term

of life imprisonment under 18 U.S.C. §§ 841(b)(1)(A) and 851.  Because that statutory sentence was

higher than the guidelines range that would otherwise apply, his guidelines range remained life im-

prisonment, U.S.S.G. § 5G1.1(b), at least until the passage of the First Step Act.

### D. The First Step Act provides relief for certain individuals sentenced for crack-cocaine offenses under the 1986 Drug Act.

The First Step Act of 2018 was enacted in order to provide relief for prisoners sentenced un-

der the pre-Fair Sentencing Act regime.  *See* Public Law 115-391, § 404, 132 Stat 5194, 5222 (2018)

("First Step Act").  Under § 404 of the First Step Act, courts may reduce the sentence of any pris-

oner who is still serving a sentence for a crack-cocaine offense if that sentence was imposed when

the pre-Fair Sentencing Act penalty structure still applied.

Section 404 of the First Step Act establishes its remedy in a few simple steps.  First, it de-

fines what offenses are covered by its remedy, providing that "the term 'covered offense' means a

violation of a Federal criminal statute, the statutory penalties for which were modified by section 2

or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010."  First Step

Act § 404(a).  Second, it provides that "[a] court that imposed a sentence for a covered offense may,

on motion of the defendant . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sen-

tencing Act of 2010 . . . were in effect at the time the covered offense was committed."  *Id.* § 404(b).

Finally, it provides the following narrow limitations on this resentencing power: A court shall not

entertain a motion for the imposition of a reduced sentence "if the sentence was previously imposed

or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sen-

tencing Act of 2010," or "if a previous motion made under this section to reduce the sentence was,

after the date of enactment of this Act, denied after a complete review of the motion on the merits."

*Id.* § 404(c).

In sum, a prisoner sentenced under a statutory subsection that was modified by the Fair Sen-

tencing Act is eligible for a reduced sentence unless (i) his sentence was previously imposed or previ-

ously reduced in accordance with the Fair Sentencing Act or (ii) he has previously filed and had de-

nied on the merits a First Step Act motion.  A prisoner who is eligible for a sentence reduction is

not, however, entitled to such a reduction. *See* First Step Act §§ 404(b) ("may"), 404(c) ("Nothing

. . . shall be construed to require . . . .").  The sentencing court thus has discretion in deciding

whether to reduce a prisoner's sentence, and by how much.

IV.     Argument

    A.  **Mr. Small is eligible for relief under § 404 of the First Step Act.**

Mr. Small is eligible for the imposition of a reduced sentence under the First Step Act because he was sentenced for a "covered offense," and his sentence was not imposed or reduced under the Fair Sentencing Act.

    1.     **Mr. Small was sentenced for a "covered offense."**

Mr. Small's convictions for conspiracy to possess with intent to distribute and possession with intent to distribute 50 grams or more of crack cocaine, and 5 grams or more of crack cocaine, are covered offenses under § 404(a). The statutory penalty for these offenses was supplied by 21 §§ 841(b)(1)(A)(iii) and 841(b)(1)(B)(iii). *See also* 21 U.S.C. § 846 (providing that conspiracy to possess with intent to distribute "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy"). Section 2(a)(1) of the Fair Sentencing Act modified § 841(b)(1)(A)(iii) by raising the threshold for that penalty from 50 grams to 280 grams, and § 2(a)(2) modified § 841(b)(1)(B)(iii) by raising the threshold for that penalty from 5 grams to 28 grams. Because Mr. Small was thus convicted under a "Federal criminal statute, the statutory penalties for which were modified by section 2 . . . of the Fair Sentencing Act of 2010," and that offense "was committed before August 3, 2010," he was convicted of a "covered offense" within the meaning of § 404(a) of the First Step Act.

The government may contend that Mr. Small is ineligible for a reduction because the quantity of crack cocaine attributed to him at sentencing exceeds the current statutory thresholds for penalties under 21 U.S.C. §§ 841(b)(1)(A)(iii) and 841(b)(1)(B)(iii). This Court should reject that argument. As "the vast majority of courts that have decided th[e] issue" have concluded, it is the statute of conviction, and not the defendant's conduct, that determines eligibility. *United States v. Rose*, 379

F. Supp. 3d 223, 228 (S.D.N.Y. 2019).[5]  This conclusion flows directly from the plain language of

the statute, which by its own terms "applies to *offenses* and not conduct." *United States v. Dodd*, 372 F.

---

[5] *E.g.*, *United States v. Thompson*, No. 05-cr-42, 2019 WL 4040403, at *5 (W.D. Pa. Aug. 27, 2019); Order Granting Defendant's Motion for Reduction in Sentence Pursuant to the First Step Act at 4-7, *United States v. Parker*, No. 4:90-cr-04007-WS-CASE, D.E. 169 (N.D. Fla. Aug. 28, 2019); *United States v. Williams*, No. 08 CR 00401, 2019 WL 4014241, at *5 (N.D. Ill. Aug. 25, 2019); *United States v. Taylor*, No. 96-cr-119, 2019 WL 3852383, at *2-3 (N.D. Ohio Aug. 16, 2019); *United States v Williams*, No. 03-cr-795, 2019 WL 3842597, at *3 (E.D.N.Y. Aug. 15, 2019)*; United States v. Gordon*, No. 04CR00023, 2019 WL 3824250, at *3 (W.D. Va. Aug. 14, 2019); *United States v. Timmons*, No. 04-cr-00092, 2019 WL 3767473, at *2 (W. D. Va. Aug. 9, 2019); *United States v. Barber*, No. 05-cr-15, 2019 WL 3771754, at *3 (W. D. Va. Aug. 9, 2019); *United States v. King*, No. 08CR00041, 2019 WL 3752934, at *3 (W.D.  Va. Aug. 8, 2019); *United States v. Cross*, No. 04-cr-1090, 2019 WL 3718768, at *2 (N.D. Ill. Aug. 7, 2019); *United States v. Askins*, No. 02-00645, 2019 WL 3800227, at *4 (D. Ariz. Aug. 6, 2019); *United States v. Cole*, No. 09-cr-118, 2019 WL 3406872, at *2-4 (N.D. Ind. July 29, 2019); *United States v. Terrell*, No. 09-cr-031, 2019 WL 3431449, at *2-3 (E.D. Tenn. July 29, 2019); *United States v. Hill*, No. 07-cr-20052, 2019 WL 3325801, at *1 (C.D. Ill. July 24, 2019); Opinion and Order at 4-8, *Kemper v. United States*, No. 5:92-CR-13-FB, D.E. 132 (W.D. Tex. July 24, 2019); *United States v. Springs*, 2019 WL 3310092 (W.D.N.C. July 23, 2019); *United States v. Opher*, No. 00-323, 2019 WL 3297201, at *8-11 (D.N.J. July 23, 2019); *United States v. Ballinger*, No. 09-cr-105, 2019 WL 3292156, at *2-3 (E.D. Tenn. July 22, 2019); *United States v. Williams*, No. 02-548, 2019 WL 3251520, at *2 (D.S.C. July 19, 2019); *United States v. Wright*, No. 03-cr-362, 2019 WL 3231383, at *2-3 (N.D. Ill. July 18, 2019); *United States v. White*, No. 99-cr-628, 2019 WL 3228335, at *2 n.1 (S.D. Tex. July 17, 2019) (collecting dozens of cases); *United States v. Graves*, No. 04-cr-70, 2019 WL 3161746, at *1-3 (E.D. Tenn. July 15, 2019); *United States v. Vanburen*, No. 00-cr-66, 2019 WL 3082725, at *3 (W.D. Va. July 15, 2019); *United States v. Smith*, ---F. Supp. 3d---, 2019 WL 3071940, at *4 (W.D. Mich. July 15, 2019); *United States v. Lewis*, No. 09-cr-031, 2019 WL 3227453, at *1-3 (E.D. Tenn. July 15, 2019); *United States v. Jones*, No. 08CR00040, 2019 WL 3074075, at *2 (W.D. Va. July 15, 2019); *United States v. Lee*, No. 08cr00024, 2019 WL 3073992, at *2-3 (W.D. Va. July 15, 2019); *United States v. Henderson*, ---F. Supp. 3d---, 2019 WL 3211532, at *3-4 (W.D. La. July 15, 2019); *United States v. Slade*, No. 08CR00024, 2019 WL 3061200, at *2-3 (W.D. Va. July 12, 2019); *United States v. Lutcher*, No. 03-338, 2019 WL 3006414, at *3 (E.D. La. July 10, 2019); *United States v. Stallworth*, No. 08CR00024, 2019 WL 2912845, at *2-3 (W.D. Va. July 8, 2019); *United States v. Williams*, No. 03-cr-1334, 2019 WL 2865226, at *2-3 (S.D.N.Y. July 3, 2019); *United States v. Valentine*, No. 99-cr-01, 2019 WL 2754489, at *5 (W.D. Mich. July 2, 2019); *United States v. Payton*, No. 07-20498, 2019 WL 2775530, at *2-3 (E.D. Mich. July 2, 2019); *United States v. Burke*, No. 2:08-cr-63, 2019 WL 2863403, at *3 (E.D. Tenn. July 2, 2019); Order at 6, *United States v. Robertson*, No. 2:06-CR-00301-LA, D.E. 70 (E.D. Wis. July 1, 2019); Order at 2, *United States v. Turner*, No. 1:06-CR-00274-TDC, D.E. 50 (D. Md. June 28, 2019); *United States v. Herbert*, No. 97-cr-30024, 2019 WL 2718498, at *2 (W.D. Va. June 28, 2019); *United States v. Lee*, No. 05-cr-165, 2019 WL 2617262, at *1 (M.D. Fla. June 26, 2019); *United States v. Garrett*, No. 03-cr-62, 2019 WL 2603531, at *3 n.1 (S.D. Ind. June 25, 2019); *United States v. Johnson*, No. 01-cr-543, 2019 WL 2590951, at *2-3 (N.D. Ill. June 24, 2019); *United States v. Martin*, No. 03-cr-795, 2019 WL 2571148, at *2 (E.D.N.Y. June 20, 2019); *United States v. Booker*, 2019 WL 2544247, *2-3 (N.D. Ill. June 20, 2019); *United States v. Bean*, 2019 WL 2537435, at *5 (W.D. Mich. June 20, 2019); *United States v. Latten*,  2019 WL 2550327, at *2 (W.D. Va. June 20, 2019); *United States v. Barber*, 2019 WL 2526443, at *3 (D.S.C. June 19, 2019); *United States v. Berry*, 2019 WL 2521296, *4 (W.D. Mich.

Supp. 3d 795, 797 (S.D. Iowa 2019) (emphasis added); *see also* First Step Act, § 404(a) (defining "covered *offenses*") (emphasis added); *cf. United States v. Herrera-Roldan*, 414 F.3d 1238, 1240-41 (10th Cir. 2005) (concluding that guideline language concerning a "drug trafficking *offense*" "confines . . . inquiry to the terms of the statute of conviction," and not "the defendant's conduct") (emphasis added).  And it is further bolstered by § 404(a)'s references to "Federal criminal *statute[s]*" and "*statutory* penalties."  *See Rose*, 379 F. Supp. 3d at 228-29 (analyzing text of § 404(a) in depth and concluding that "eligibility is determined by the statute(s) underlying the defendant's conviction and penalty, not the defendant's offense conduct").

This broadly inclusive interpretation of § 404(a) is consistent with the statute's remedial purpose, which is to "mitigat[e] the unfairness created by the crack-to-powder cocaine ratio."  *Rose*, 379 F. Supp. 3d at 229—including the "irrational and 'unjustified race-based differences' in federal sentencing between those types of cases," which disproportionately harmed black defendants like Mr. Small, *United States v. Garrett*, No. 03-cr-62, 2019 WL 2603531, at *1 (S.D. Ind. June 25, 2019) (quoting *Dorsey*, 567 U.S. at 268-69).

It is also supported by the presumption that Congress "legislates in the light of constitutional limitations."  *Rust v. Sullivan*, 500 U.S. 173, 191 (1991).  The Sixth Amendment generally requires that

---

June 19, 2019); *United States v. Wester*, No. 97-8032, DE 86 (S.D. Fla. June 14, 2019); *United States v. Shaw*, No. 02-CR-162, 2019 WL 2477089, at *3–4 (W.D. Wis. June 13, 2019); *United States v. Martinez*, No. 04-CR-48, 2019 WL 2433660, at *1-3 (S.D.N.Y. June 11, 2019); *United States v. Thomas*, No. 09-CR-117, 2019 WL 2433660, at *2-3 (S.D. Ala. June 5, 2019); *United States v. Ancrum*, No. 02-cr-30020, 2019 WL 2110589, at *2-3 (W.D. Va. May 14, 2019); *United States v. Stanback*, 377 F. Supp. 3d 618, 624 (W.D. Va. May 2, 2019); *United States v. Allen*, No. 384 F. Supp. 3d 238, 241 (D. Conn. Apr. 26, 2019); *United States v. Boulding*, 379 F. Supp. 3d 646, 652 (W.D. Mich. May 16, 2019); *United States v. Brown*, No. 07-CR-345, 2019 WL 1895090, at *2 (D. Minn. Apr. 29, 2019); *United States v. Simons*, 375 F. Supp. 3d 379, 386-87 (E.D.N.Y. Apr. 22, 2019); *United States v. Dodd*, 372 F. Supp. 3d 795, 796-800 (S.D. Iowa Apr. 9, 2019);  *United States v. Pierre*, 372 F. Supp. 3d 17, 21-23 (D.R.I. Apr. 5, 2019).  *But cf. United States v. Blocker*, 378 F. Supp. 3d 1125, 1132 (N.D. Fla. 2019) (finding movant ineligible for relief based on quantity of drugs involved in offense conduct, notwithstanding that defendant was convicted of a covered offense).

"[a]ny fact that, by law, increases the penalty of a crime . . . be submitted to the jury and found be-yond a reasonable doubt," *Alleyne v. United States*, 570 U.S. 99, 103 (2013), and this Court should ac-cordingly avoid any "reading of the statute that would preclude eligibility for relief under the First Step Act due to a judicial finding of drug quantity many years ago," *United States v. Allen*, 384 F. Supp. 3d 238, 243 (D. Conn. 2019); *see also United States v Thompson*, No. 05-cr-42, 2019 WL 4040403, at *6-8 (W.D. Pa. Aug. 27, 2019).

Finally, to the extent that the meaning of the statute is at all ambiguous, the Court should apply the rule of lenity and construe it to provide Mr. Small with an avenue for relief. *See United States v. Pierre*, 372 F. Supp. 3d 17, 22 (D.R.I. 2019); *accord Rose*, 379 F. Supp. 3d at 229 ("Construing § 404(a) in favor of broader eligibility would also be consistent with the rule of lenity, which is of particular concern here because of the potential unfairness of using offense conduct to exclude de-fendants from eligibility.").

Thus, in accordance with "the clear weight of persuasive authority," *Rose*, 379 F. Supp. 3d at 230, this Court should conclude that "eligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack co-caine offense affected by the Fair Sentencing Act," *United States v. Boulding*, 379 F. Supp. 3d 646, 651 (W.D. Mich. 2019). "Quantity is simply not part of the statutory test for eligibility under the First Step Act." *Id.* at 652. Rather, "[e]ligibility turns entirely on the categorical nature of the prior convic-tion." *Id.* Because Mr. Small's prior convictions for conspiracy to possess with intent to distribute and possession with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A)(iii), and 5 grams or more of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(B)(iii), are "covered offenses" within the meaning of the First Step Act, he is eligible for relief.

      **2.**     **Mr. Small's sentence was not "previously imposed or reduced" under the Fair Sentencing Act.**

Mr. Small is not subject to either of the procedural bars contained in § 404(c) of the First Step Act. He has not previously been denied relief under § 404 of the act, and his sentence was not "previously imposed or reduced" under the Fair Sentencing Act. First Step Act § 404(c).

Nor has Mr. Small previously been sentenced under the Fair Sentencing Act. As the government has conceded in other cases, Mr. Small's commutation "does not implicitly preclude eligibility for relief under the First Step Act." Answer Br. 12, *United States v. Blackmon*, No. 19-6476 (4th Cir. Aug. 21, 2019). That is because "the commutation shortened an existing sentence," and "did not impose a new sentence that would place it outside the reach of the First Step Act." *Dodd*, 372 F. Supp. 3d at 798 (internal quotation marks and citations omitted). "To find otherwise would penalize defendants for receiving presidential commutations," leaving Mr. Small "worse off because he received presidential commutation of his sentence, which seems both counter-intuitive and unfair." *United States v. Walker*, No. 1:94-CR-5, 2019 WL 1226856, at \*2 (N.D. Ohio March 15, 2019) (granting First step Act motion and reducing commuted sentence to time served).

\*     \*     \*

Mr. Small is accordingly eligible for relief under § 404 of the First Step Act.

**B.  Mr. Small's sentence should be reduced to time served.**

This Court should exercise its discretion and reduce Mr. Small's sentence to time served.

      **1.**     **There is no legal impediment to a sentence of time served.**

There are no statutory constraints on the imposition of a sentence of time served. Because Mr. Small is eligible for relief by virtue of having been convicted of a covered offense, this Court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect" at the time the offense was originally committed. First Step Act § 404(b). Under the Fair Sentencing Act, Mr. Small's conviction for conspiring and possessing with intent to distribute 50 grams or

14

more of crack cocaine following a prior conviction for a felony drug offense would have subjected

him to a statutory minimum term of 10 years' imprisonment.  *See* 21 U.S.C. §§ 841(b)(1)(B)(iii), 851.

Mr. Small has already served over 18 years—well in excess that statutory mandatory minimum.

There is, accordingly, no statutory mandatory minimum that stands in the way of the relief re-

quested.

Nor do the Sentencing Guidelines.  After taking the amendments to the crack-cocaine sen-

tencing guidelines into account, Mr. Small's advisory guidelines range is reduced to 360 months to

life imprisonment.[6]  The low end of that range is higher than the time served sentence he requests.

However, this Court can—and should, *see infra* § IV(B)(2)—vary below that advisory range to im-

pose a reduced sentence of time served upon consideration of the factors set forth in 18 U.S.C. §

3553(a). "[U]nlike earlier rounds of retroactive crack or other drug sentencing relief, the First Step

Act does not impose any artificial or guideline limits on a reviewing court." *Boulding*, 379 F. Supp.

3d at 653.  Over one quarter of defendants whose sentences have been reduced under the First Step

Act have received below-guideline sentences.  *See* U.S. Sentencing Comm'n, *First Step Act of 2018 Re-*

*sentencing Provisions Retroactivity Data Report* at 7 (June 2019).[7]  Indeed, courts all across the country

have granted requests just like Mr. Small's, varying downward from a guideline range of 360 months

to life imprisonment in order to impose a sentence of time served.  *E.g.*, *United States v. Hadley*, 389

F. Supp. 3d 1043, 1050-51 (M.D. Fla. 2019) (granting First Step Act motion and varying downward

from guideline range of 360 months to life imprisonment for a sentence of time served); *United States*

---

[6] The base offense level for an offense involving 1.5 kilograms of crack cocaine has been reduced from 38 to 32.  *See* U.S.S.G. § 2D1.1(c)(4).  Assuming that Mr. Small's guidelines otherwise remain the same, his total offense level is now 38.  With a Criminal History Category of VI, the resulting guidelines range is 360 months to life imprisonment.  U.S.S.G., Ch. 5, pt. A.

[7] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/retroactivity-anal-yses/first-step-act/201900607-First-Step-Act-Retro.pdf

*v. Robinson*, No. PJM 02-0227, 2019 WL 3867042, at \*5-6 (D. Md. Aug. 15, 2019) (same); *United States v. Barber*, No. 05-cr-15, 2019 WL 3771754, at \*4-5 (W.D. Va. Aug. 9, 2019) (same); *United States v. Lee*, 2019 WL 30373992, at \*4 (W. D. Va. July 15, 2019) (same); *United States v. Biggs*, No. 05-cr-316, 2019 WL 2120226, at \*3-4 (N.D. Ill. May 15, 2019) (same).

Finally, this Court is free to reduce Mr. Small's entire sentence, including the sentence for his non-covered convictions, to time served. "[A] sentence under the U.S. Sentencing Guidelines constitutes a sentencing package which takes into account all counts upon which the defendant has been convicted." *United States v. Hicks*, 146 F.3d 1198, 1203 (10th Cir. 1998). Here, a package lifetime sentence was imposed for Mr. Small's covered and non-covered offenses alike, which was subsequently commuted to 300 months. When deciding whether to grant relief under the First Step Act, this Court should do the same and consider Mr. Small's "multiple counts together." *Biggs*, 2019 WL 2120226, at \*3. "Because the potential reduced penalties for covered offenses could influence the range of recommended penalties for non-covered offenses, 'impos[ing] a reduced sentence as if . . . the Fair Sentencing Act . . . were in effect" entails resentencing on all counts, including those that are not "covered offenses" under the First Step Act. *Id.* (granting First Step Act motion and imposing reduced sentence of time served on all counts, including non-covered offenses); *e.g.*, *United States v. Mitchell*, No. 05-00110, 2019 WL 2647571, at \*7-9 (D.D.C. June 27, 2019) (granting First Step Act motion and imposing reduced sentence on all counts, including non-covered offenses); *United States v. Fisher*, No. 5:02CR30093, 2019 WL 1415469, \*1-2 (W.D. Va. March 28, 2019) (same); *United States v. Foreman*, No. 1:06-cr-30, 2019 WL 3050670, at \*2 n.3, 7 (W.D. Mich. July 12, 2019) (same); *United States v. Black*, 388 F. Supp. 3d 682, 685, 691-92 (E.D. Va. 2019) (same); Order Regarding Motion for Sentence Reduction Pursuant to First Step Act at 5, *United States v. Zapata-Vicente*, No. 3:01-cr-61, D.E. 159 (E.D. Va. Aug. 8, 2019) (Attachment I) (same). Notably, the government has conceded as much in at least one other case. *See United States v. Williams*, No. 3:02-548-03-CMC, 2019 WL

16

3251520, at *2 (D.S.C. July 19, 2019) (noting government position that, where the movant has been sentenced for both covered and non-covered offenses, "the court may impose a new sentence that has the effect of reducing the terms of imprisonment" for all offenses).

### 2. A sentence of time served is sufficient, but not greater than necessary, to accomplish the sentencing goals set forth in 18 U.S.C. § 3553(a)(2).

In determining whether and to what extent to grant relief under § 404 of the First Step Act, this Court is guided by the familiar sentencing factors contained in 18 U.S.C. § 3553(a). And as *Pepper v. United States*, 562 U.S. 476 (2011), makes clear, this Court may consider Mr. Small's post-offense conduct in determining what sentence is "sufficient, but not greater than necessary," to accomplish the goals set forth in § 3553(a)(2). *See* 560 U.S. at 491. Mr. Small has been incarcerated for over 18 years, and no further incarceration is necessary in order to accomplish those goals. This Court should therefore reduce his sentence to time served.

Mr. Small's extraordinary post-sentencing rehabilitation favors a sentence of time-served. He has been a model inmate. He has satisfied his financial obligations and developed "a good rapport with staff and other inmates." BOP Progress Report at 3. And in the nearly two decades he has spent behind bars, he has incurred only one, minor disciplinary infraction for possessing an unauthorized item in 2003, over 15 years ago. *Id.* at 2. This sterling disciplinary record supports the conclusion that no further incarceration is necessary. *Cf. Biggs*, 2019 WL 2120226, at *4 (granting First Step Act motion for below-guidelines sentence of time served, where movant had "only three minor disciplinary infractions over the last fourteen years" and was "a model inmate"); *Mitchell*, 2019 WL 2647571, at *8 (granting First Step Act motion for a below-guidelines sentence of time served, where defendant had "incurred no disciplinary infractions over his last fourteen years in prison"); *Barber*, 2019 WL 3771754, at *4-5 (granting First Step Act motion for below-guideline sentence of time served, where defendant had "had only one disciplinary infraction" in fifteen years of incarceration).

17

Mr. Small has also worked hard to improve himself while incarcerated.  He is currently participating in RDAP, demonstrating his commitment to putting his history of addiction behind him. In addition, he has nearly completed a 7,200-hour Electronics Utility Worker Apprenticeship at the UNICOR plant attached to his facility.  He has "consistently earned outstanding and above average work evaluations," and now has valuable skills that will help him support himself honestly when he is released.  BOP Progress Report, at 1.  *Cf. Barber*, 2019 WL 3771754, at \*5-6 (granting First Step Act motion for below-guideline sentence of time served, citing movant's training in the food service industry).

These achievements are all the more remarkable when Mr. Small's original life sentence is taken into consideration.  Mr. Small earned his practically spotless disciplinary record and began his intensive apprenticeship while he was still serving a life sentence, with no prospect of ever being released.  Under these circumstances, Mr. Small "could have given up on himself and on the prospect of any meaningful rehabilitation efforts," but instead "has shown commendable diligence and noteworthy success."  *Garrett*, 2019 WL 2603531, at \*4 (granting in part First Step Act motion and varying below the bottom end of 360-to-life guideline range to impose a 216-month sentence in light of the defendant's post-sentencing rehabilitation).

This Court should also take into account the fact that Mr. Small is a non-violent offender. While Mr. Small's crime was serious and involved a large quantity of drugs, it did not involve any violence.  And although Mr. Small's criminal history includes multiple felony drug convictions, it is entirely non-violent, other than a single misdemeanor assault for which he served 90 days in jail in 1985.  *See* PSIR ¶ 63.  The non-violent nature of the offense, in combination with Mr. Small's non-violent criminal history, also weighs in favor of a reduced sentence in this case.  *Cf. Biggs*, 2019 WL 2120226, at \*4 (citing movant's lack of violent criminal history in granting a First Step Act motion for a below-guidelines sentence of time served).

So does Mr. Small's age.  He is now 64 years old. As the United States Sentencing Commission has recognized, "[o]lder offenders [are] substantially less likely than younger offenders to recidivate following release."  U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* at 3 (Dec. 2017).[8]   That general finding is consistent with Mr. Small's excellent conduct while incarcerated.  Thus, "the marginal benefit for public protection" from continued incarceration of Mr. Small is low.  *United States v. Smith*, 756 F.3d 1179, 1183 (10th Cir. 2014) (characterizing age at time of release as an appropriate sentencing consideration, in light of the inverse relationship between age and recidivism).

Finally, this Court should consider Mr. Small's release plan.  Because he has maintained positive relationships with his family, he has a place to go when he is released.  He will move in with his brother John, a longtime Denver resident who works for a roofing company, and he will have the support of his family and their church.  And thanks to Mr. Small's hard work at UNICOR, he will have the skills he needs to find a job of his own.  Mr. Small is thus well positioned to make the most of any early release to become a law-abiding, contributing member of society.

In sum, Mr. Small's extraordinary rehabilitation and years of good conduct indicate that no further incarceration is necessary to punish him for his offense, deter future criminal conduct, protect the public, or provide him with correctional treatment.  *See* 18 U.S.C. § 3553(a)(2).  Accordingly, a reduced sentence of time served is warranted.

---

[8]https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf

## V.      Conclusion

For the foregoing reasons, Mr. Small asks this Court to grant this motion and reduce his sentence to time served.

Respectfully submitted,


VIRGINIA L. GRADY
Federal Public Defender



*s/ Kathleen Shen*
KATHLEEN SHEN
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Kathleen_Shen@fd.org
Attorney for Defendant Willie Small

20