# ATTACHMENT C

1

1          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLORADO

2
     Criminal Action No. 01-CR-214-D

3
     UNITED STATES OF AMERICA,

4
          Plaintiff,

5
     vs.

6
     WILLIE JAMES SMALL, a/k/a "Pops,"

7
          Defendant.

8
   _____

9
                REPORTER'S TRANSCRIPT

10                    Sentencing
   _____

11

12          Proceedings before the HONORABLE WILEY Y. DANIEL,

13   Judge, United States District Court for the District of

14   Colorado, commencing at 1:36 p.m., on the 21st day of April,

15   2004, in Courtroom 15, United States Courthouse, Denver,

16   Colorado.

17                APPEARANCES

18          KATHLEEN TAFOYA, Assistant United States Attorney,

19   1225 17th Street, Suite 700, Denver, CO  80202, for plaintiff.

20          MATTHEW GOLLA, Assistant Federal Public Defender, 633

21   17th Street, Suite 1000, Denver, CO  80202, for defendant.

22

23

24   Proceeding Reported by Mechanical Stenography, Transcription
         Produced via Computer by Kara Spitler, RMR, CRR,
25        901 19th Street, Denver, CO, 80294, (303) 623-3080

2

1                    PROCEEDINGS

2     (In open court at 1:36 p.m.)

3        THE COURT:  You may be seated.

4        This is 01-CR-214, U.S.A. vs. Willie Small.

5        Would counsel enter their appearances.

6        MS. TAFOYA:  Good afternoon, Your Honor.  Kathleen

7  Tafoya, assistant United States attorney, on behalf of the

8  United States.

9        MR. GOLLA:  Good afternoon, Your Honor.  Matthew

10  Golla, assistant federal public defender, representing

11  Mr. Willie Small.  He's present in custody, seated to my left.

12        THE COURT:  We're here in connection with a sentencing

13  hearing for the defendant.  Have both sides received the

14  presentence investigation report, including all addenda?

15        MS. TAFOYA:  Yes, Your Honor.

16        MR. GOLLA:  Yes, Your Honor.

17        THE COURT:  Does the government have any objection to

18  the report, including the Guideline calculations.

19        MS. TAFOYA:  No.

20        THE COURT:  Mr. Golla, what are your current

21  objections which you wish to present to the Court today?

22        MR. GOLLA:  Your Honor, I filed several objections to

23  the presentence report earlier this year.  Actually, it appears

24  to me that all of these objections do not affect the Guideline

25  range that Mr. Small is facing because of the 851 enhancements

3

1  that have been filed by the government in this case.

2       But I just, for the record, want to point out that

3  these particular objections are particularly page 22,

4  paragraph 73, where Mr. Small indicates that with respect to

5  this particular conviction, he pleaded guilty to possession of

6  cocaine and not to distribution of cocaine.

7       The next objection is page 23, paragraph 79; Mr. Small

8  objects to the PSI's conclusion that he pleaded guilty to

9  possession and/or sale of controlled substance.  According to

10  Mr. Small, he pleaded guilty to one count of possessing

11  cocaine, and not count four as indicated in the PSI.

12       The third objection is Mr. Small objects to the PSI

13  limitation of the evidence to show that Mr. Small ran a cocaine

14  business that included the daily stresses of raising capital,

15  overhead, staffing, et cetera.  Mr. Small's argument with that

16  case is that he did not run a large organization.  It was

17  struggling at many points during the investigation, as was

18  indicated by the phone calls that were played for Your Honor,

19  for the jury.

20       Also, the fourth objection I had was the page 16,

21  paragraph 34; Mr. Small objects to the PSI summation that

22  Mr. Green made four trips to California, accounting for 4,000

23  grams of cocaine.

24       And the last objection I have on page 27,

25  paragraph 116, Mr. Small objects to the mandatory life sentence

4

1  called for under counts one, twelve, 49, 66 of the indictment.

2  Specifically, the PSI does not elaborate on the specific

3  convictions that trigger the mandatory life sentence under

4  these provisions.

5      THE COURT:  All right.

6      Miss Tafoya, do you want to respond?

7      And set forth the government's overall position on

8  sentencing, for the record.

9      MS. TAFOYA:  Your Honor, first, with respect to the

10  specific information objected to by Mr. Golla, I would at this

11  time tender the government's Exhibits 1, 2, 3, 4, 5, and 6,

12  which represent certified copies of Mr. Small's convictions.

13  So there would be no question to the Court exactly what was --

14  he was found guilty of.  These all represent felony

15  convictions.  And the only one that is not a conviction exhibit

16  is Exhibit No. 3, which is a photograph of Mr. Small that came

17  with the prison pack from the Department of Corrections.  But I

18  think these certified records of conviction will clear up any

19  discrepancies based on what's in the PSI.  I've provided a copy

20  of those to Mr. Golla.

21      And for the record, I can't remember which is which,

22  but I think he's right on one of them and in my opinion

23  incorrect on another.  One of them was possession.  But they

24  are all felony drug offenses as defined by the statute.

25      THE COURT:  All right.  Tender that to Mr. Keech.

5

1      MS. TAFOYA:  Your Honor, I came prepared today with a

2   very lengthy presentation for quantities of drugs that are

3   attributable to Mr. Small in this particular case.  The only --

4   and I will go through all of those in detail.  I do have

5   citations to the record and to exhibits.  However, it appears

6   that the only thing that is really being contested, unless I

7   have misunderstood Mr. Golla, is the four trips of Alvin Green

8   for the 4,000 grams.  I think the record is replete that this

9   is over 1500 grams of crack cocaine in this conspiracy, even

10   outside of that 4,000.  So I don't know exactly how much detail

11   the Court would like me to go into, but I can briefly summarize

12   the areas that I believe support the Court's finding that it is

13   1500 grams or more.

14      THE COURT:  Right.  Let me just note in the

15   presentence investigation report, at page 16, paragraph 34, it

16   is noted that Mr. Green made four trips to California,

17   accounting for 4,000 grams of cocaine.  I think in the context

18   of that statement, and because the probation department adopted

19   the government's statement for sentencing, I think you need to

20   present a record to -- that would demonstrate that there is,

21   that there was evidence in the record that would attribute at

22   least 1500 grams of cocaine to Mr. Small.  So I think if you

23   can do that, I think doing anything else would be superfluous.

24      MS. TAFOYA:  Let me just, then, summarize these, and I

25   can elaborate further for the Court if you would prefer some

6

1  details.

2       But the controlled purchases in this case, these are

3  the exhibits that were admitted and have to do with Roz Parker,

4  and those purchases amount to 249.857 grams.  That does include

5  six point some odd grams that were sold to Mr. Starkey on the

6  same date as one of the controlled purchases.  That's not

7  technically a controlled purchase, but that includes that

8  6 grams.  So 249.857.

9       In the search warrant, the crack cocaine that was

10  found is .244 grams.

11       The crack cocaine that was found later that was in

12  Mr. Small's apartment, and I'll remind the Court had his

13  fingerprint on the can that contained the crack cocaine, was

14  175.10.  So the actual crack cocaine that was in the courtroom

15  at one time as exhibits is 425 grams .20 grams.

16       Dayne Vandyke testified that he personally had

17  provided 4.5 ounces of crack cocaine to Willie Small on the

18  May 25 transaction that was set forth fully with all the

19  exhibits and the wiretap, et cetera.  So that is in the record.

20  So that is 4.5 grams.

21       Also evidence that one of the phone calls that was

22  played referred to Mr. Small still having ten zips.

23  Mr. Vandyke testified that those ten zips represented 10 ounces

24  of crack cocaine that he had previously sold to Mr. Small.

25       And Mr. Vandyke also talked about an instance where he

7

1  had purchased, he and Mr. Small had gone in with suppliers

2  named Bear and P and bought 1 kilogram of cocaine from Bear and

3  P and that at the time that Mr. Green -- excuse me, not

4  Mr. Green -- Mr. Small present, Dwayne Vandyke had actually

5  cooked up half of the kilogram of crack cocaine for

6  distribution to Mr. Small.  He at that time did not cook up his

7  own half of the kilogram but cooked it later, according to his

8  testimony.

9        So Mr. Vandyke's testimony involved 910 grams of crack

10  cocaine in ounces.  It was approximately 32.5 ounces, and I

11  multiplied that out to 910 grams.

12        The wiretap evidence in this case is -- shows that

13  approximately 1400 grams of crack cocaine was involved in

14  various wiretap calls.  That is testimonial evidence that I

15  would need to put on at this hearing if the Court wanted to

16  consider that 1400 grams.  Much of it was testified to during

17  trial by, for instance, James Starkey, Brian Harris, Victor

18  Mendinghall, Ronald Clark, Curtis Hawkins, all the people who

19  had purchased directly from Mr. Small.

20        Additionally, there was money found in Mr. Small's

21  safe-deposit box in the amount of $4,810.  The testimony from

22  Dachaun Davis and others, but primarily from Dachaun Davis, was

23  that the crack cocaine was always sold in quarters.  He also

24  testified that Mr. Small had no job, that he had never worked a

25  legitimate job; any money at all that they had would come from

8

1  the sale of crack cocaine.  So on the 4,810, I divided that by

2  225 and came up with a little more than 21 quarter ounces.  The

3  information was replete that the quarter ounces were 21 -- were

4  $225.  That's what they were sold for.  So I rounded down on

5  the quarters and 21 times seven is 147 grams.

6        So between -- well, and then, of course, the Court has

7  found also that Alvin Green was responsible for at least

8  50 grams of crack cocaine as his part of the supply chain, and

9  then the other people, Theolian Lloyd, you attributed 84 grams

10  to him; Max Cooper, you attributed 7 grams to him; and George

11  Murray, 32 grams.

12        So adding all those up, we are well over 1500 without

13  the 4,000 grams that we attribute to Alvin Green.

14        THE COURT:  All right.  And based on all of this, what

15  is the sentence that the government believes to be appropriate

16  for this case?

17        MS. TAFOYA:  Your Honor, we believe that a mandatory

18  life sentence without parole is mandatory on count one for any

19  finding, really, over 50 grams.  But the 1500 grams we would

20  request the Court make a finding.  However, I will tell the

21  Court, and I assume that Mr. Golla understood that we would do

22  this, we are going to move today to dismiss count two, which is

23  the continuing criminal enterprise count based on the Rutledge

24  case in the Supreme Court which says that the Court can't

25  sentence on both of those things, that they're kind of

9

1  inclusive of each other.  So we are electing to go forward on

2  count one and dismissing count two.  The Rutledge case actually

3  involved a similar case to this that the only thing that was

4  extra, because everything was running concurrent to a life

5  sentence which was the special assessment at that time was $50,

6  and that would be true here, too, he would get a hundred dollar

7  special assessment; and based on Rutledge, I have a motion to

8  dismiss count two.

9       THE COURT:  Do you have an actual written motion

10 today?

11       MS. TAFOYA:  Yes, I do.

12       THE COURT:  And a proposed order as well?

13       MS. TAFOYA:  I just have the motion.

14       THE COURT:  All right.  Let me see the motion.

15       If you have an extra copy, give one to the law clerk

16 over there as well.  Please.

17       MS. TAFOYA:  And again, Your Honor, I could make a

18 further record on this, but -- depending on what the Court and

19 counsel desires.

20       THE COURT:  I assume, Mr. Golla, you have no objection

21 on behalf of Mr. Small to the government's motion to dismiss

22 count two of the second superseding indictment?

23       MR. GOLLA:  No, I don't, Your Honor.

24       THE COURT:  All right.  I'll grant the motion to

25 dismiss count two of the second superseding indictment for the

10

1  reasons noted in the motion and I'll do a very short order just

2  so we have a written order in the file reflecting the order

3  granting the motion.

4       All right.  Mr. Golla, is there anything else you want

5  to say about sentencing?

6       MR. GOLLA:  Your Honor, if I could bring Mr. Small

7  to --

8       THE COURT:  Yes.  I will give him a chance to speak to

9  the Court, but I wanted to find out if there's anything more

10 you want to say before I give your client a chance for his

11 allocution.

12       MR. GOLLA:  On behalf of Mr. Small, I would like to

13 respond to the government's evidence submitted during the

14 course of the case.

15       What I would like to tell the Court is that an

16 interesting fact that arose during the course of this case is

17 that the government witness, Roslyn Parker, through the

18 testimony of another witness in the case, I believe it was

19 Mr. Vandyke, who testified that he had sold drugs to a

20 government cooperating witness during the course of the

21 investigation in the early part of 2001, I believe it was.  And

22 my response to the government is that Miss Parker was not that

23 credible of a witness, that she was a very clever witness, and

24 I think that the amount of drugs that ultimately the government

25 brought those drugs is the courtroom is somewhat questionable

11

1   when you look at the fact of her background and the fact that

2   she was facing a substantial amount of time in the case and

3   also the fact that there was evidence that came out throughout

4   the course of the case that she could have been distributing

5   drugs on her own while she was cooperating with the government.

6          Beyond that, beyond that with respect to the calls

7   that were outlined with respect to the wiretap, my argument to

8   the Court is that none of those drugs were produced in court.

9   All of these individuals received substantially reduced time

10  with respect to their cooperation.  I believe that Mr. Dachaun

11  Davis received a sentence of five years, maybe even less, in

12  this case based on his cooperation.  I think that, that someone

13  who testifies in that respect and receives that much, that

14  little time compared to the amount of time that Mr. Small will

15  receive in this case based on the 851 enhancements shows an

16  egregious disparity in the way the system is currently run by

17  the government.

18         You know, and furthermore, with respect to the other

19  witnesses who testified, they all did get deals.  I don't think

20  any of them are serving less than seven years in jail.

21  Miss Parker walked away without serving any time in jail.

22         Mr. Small, of course, chose to go to trial.  But I

23  also want to point out that the case was premised on the fact

24  that Mr. Small ran a very successful drug organization.  I

25  think during the wiretap hearings, there was some evidence that

12

1  was presented in the wiretap application that he was making a

2  million dollars a year.  Which turned out to be quite the

3  contrary when Your Honor listened to the evidence in this case.

4  There is no way that Mr. Small made even close to that amount

5  of money in this case.  He was far from that.  The phone calls

6  were replete with Mr. Small talking about how he couldn't make

7  any money, talking about how he owed people money.  He lived in

8  an apartment building that was, that was, that Your Honor saw

9  was not the nicest apartment building around.  But the bottom

10  line is that he was convicted.  And unfortunately, he does have

11  his prior felony drug convictions.

12        But I just wanted to tell this to the Court that I

13  think under the circumstances, Mr. Small does not deserve a

14  life sentence.  I think that these particular enhancements

15  apply in cases where individuals such as Pablo Escobar or

16  General Noriega, who are currently serving life sentences,

17  these kinds of individuals who traffic in massive amounts of

18  drugs are the individuals that these particular enhancements

19  were intended to apply to, not to an individual like Mr. Small.

20        But with that said and done, Your Honor, that is my

21  comments with respect to the government's outline of the

22  evidence and with respect to the 851 enhancements that they

23  have filed in this case.  And let me just point out that the

24  government filed these enhancements, which triggers the life

25  sentence.  If they had not filed these enhancements, Mr. Small

13

1  would not be looking at life, he would be looking at

2  substantially lesser time than life.  If they had only filed

3  one 851 enhancement, his sentence would probably be around 30

4  years; I may be mistaken.  But in any event, they have filed

5  these enhancements.

6        And Mr. Small, I believe, has something to say to the

7  Court, Your Honor.

8        THE COURT:  Yes.  And of course Mr. Small has an

9  absolute right to make a statement to the Court as part of the

10  criminal sentencing proceeding.

11        So, Mr. Small, if you'd like to make a statement, go

12  to the microphone and speak at this time.

13        THE DEFENDANT:  Thank you, Judge, for hearing me out.

14  I apologize to the Court for going to trial at the taxpayers'

15  expense, but under the circumstances I had no choice.

16        Excuse me.  I'm a little nervous.

17        Your Honor, I was raised to tell truth to others and

18  people of authority.  So today I stand before you to be

19  sentenced and I also stand before you to tell you the truth as

20  I know it and as I see it.

21        First off, I don't have any excuse for most of the

22  conduct I've been accused of and now convicted of.  I also know

23  that you have no choice but to sentence me to a certain amount

24  of time, maybe life, according to the Guidelines.

25        But, first of all, I'd like to say that I feel like

14

1  that I was entrapped into this situation so -- I got this

2  written down, Judge, so be a little patient.

3       I should not be standing here to be sentenced at all.

4  I am a victim of sentencing entrapment by the metro task force.

5  The task force could have and should have arrested me as soon

6  as I made the first controlled buy.  I was on parole and the

7  police and agents knew that.  There was no so-called conspiracy

8  going on.  If there was one going on, it was just between me

9  and the government, the confidential informant.

10       Your Honor, I was set up for this life sentence when

11  the task force conducted an additional, eight additional

12  controlled buys.  All they had to do was arrest me when I did

13  the first one and call my parole officer and send me back to

14  DOC.  Not only did they entrap me, but they bribed me, bribed

15  Roz Parker to do it.  She told you, Your Honor, right here in

16  this courtroom when you allowed the attorneys to cross-examine

17  her that she did not want to do the controlled buys and that

18  they told her she was facing 30 years.  Then they told her they

19  would give her $30,000 plus make sure she did not have to go to

20  prison for 30 years.  They threatened her.

21       If I was in that situation, I guess I probably would

22  have did the same thing.  But it's called bribery because they

23  offered her payment for what would originally become testimony.

24  This is what the task force did -- this is what the task force

25  did, Your Honor, bribery.

15

1       Also, this is also a case of selective prosecution,

2   too, because the task force could have gone the state route

3   because this case is really did not arise to a level of federal

4   standards.  But the state did -- but the state don't have a

5   mandatory ten-to-life statute.  So they took it to the feds.  I

6   also think it's wrong that all of the white defendants ended up

7   with probation.

8       Now, another thing, Your Honor.  Miss Tafoya has

9   misled the Court and the jury to many, so many time it's a

10  shame.  She told Judge Weinshienk that I was making literally

11  millions of dollars in March of 2001.  At the James hearing,

12  she tells this Court that we were very unsuccessful criminals.

13  In the beginning of when she needed me to be, I was up there

14  with Pablo Escobar, or somebody.  If you look at my past

15  record, Your Honor, I have possessions of less than 2 or

16  3 grams of powder cocaine charges, stuff like that, small

17  amounts.  I wasn't a drug dealer, I was a drug user.

18      She said that I was agreeing Alvin Green was my source

19  for distribution, but the truth is every single gram that

20  Miss Tafoya presented to the jury from the controlled buys came

21  from Tom Manzanares.  Tom Manzanares, who I know as Keno, was

22  the source during the controlled buys.  And, Your Honor, none

23  of the defendant that went to trial with me and had anything,

24  had anything to do with the controlled buys, nothing.

25      And in fact, at the time, none of them were even

16

1  around, around me.  Miss Tafoya said only, I only sold crack

2  cocaine, but I sold a lot of marijuana, too.  If you recall,

3  Mr. Till asking Brian Harris what was, what was he talking

4  during the call that he was asking about having an ounce when

5  Mr. Harris told him he was talking about marijuana.  Mr. Till

6  quickly change the subject.  So it so in being sentenced for

7  crack in place of what was really marijuana because lot of

8  those calls were about Indo, marijuana, whatever -- can I have

9  a glass of water.

10        Pardon me, Your Honor.  This is something I feel

11  really bad about.  I swear on a stack of Bibles that Zebedee

12  Hall had nothing to do with me or any of this.  I wanted to

13  testify to this at trial and tell the jury that he had nothing

14  to do with this, but his attorney never called me.

15        I did, he didn't know any of these people.  I know

16  that -- I been knowing him since he was five, six years old,

17  and he was never involved in crack.

18        The only thing he's into is marijuana.  That's what I

19  know.  The government said that they know Mr. Green, but I bet

20  you if you gave him a lie detector test, he would not, he would

21  not know Mr. Green, and I bet my life on that.

22        He never was at my house when Green was at my house.

23  That May 18 tape was of me, Mr. Green, and one of my neighbors

24  upstairs, and Bridget Johnson lie when she said Hall bought

25  crack or powder cocaine from me.  He never has bought any kind

17

1  of cocaine from me.  Dachaun Davis told you that Mr. Hall was

2  my friend and Hall was not into drug-dealing.  And that's the

3  truth.  He's not guilty there, Your Honor.

4       And that's all I have, Your Honor.  Thank you.

5       THE COURT:  Miss Tafoya, I want to confirm one thing

6  on the record.  Based on Court's prior ruling, what we'll do in

7  this case is find that any sentencing enhancements is

8  applicable only under 841, title 21, rather than 843(b).

9       MS. TAFOYA:  Yes, Your Honor, I understood the Court

10  to want to continue that throughout, and I would just ask that

11  the Court incorporate my same record that was made.  I believe

12  the first time it was made was Alvin Green.

13       THE COURT:  But for purposes of this defendant, an

14  enhancement under 841(b)(1) has the same effect as 843(b), even

15  though the Court will not apply the enhancement of 843(b).

16       MS. TAFOYA:  I understand that.

17       THE COURT:  Let's, then, proceed to the sentencing.

18       In the matter of the United States of America vs.

19  Willie Small, case no. 01-CR-214.  The Court makes the

20  following findings concerning the objections to the presentence

21  report:

22       Relevant conduct.  Based on the evidence and testimony

23  introduced at trial and the government's summary of the

24  evidence as it was presented today by Miss Tafoya, the Court

25  finds that the defendant's relevant conduct involved at least

18

1  1.5 kilograms or 1500 grams of cocaine base.

2         Predicate offenses which require a mandatory life

3  sentence.  The Court finds that the felony drug offense

4  convictions identified at paragraphs 71, 73, 75, 77, and 79 of

5  the presentence investigation report are specific convictions

6  which require by statute a mandatory life sentence for counts

7  one, twelve, 49, and 66.  And those statutes include, of

8  course, 21 U.S.C. section 851, as well as 21 U.S.C.

9  841(b)(1)(D).

10         Now, I want to make a record here as it relates to the

11  government's request for a sentencing enhancement as it applies

12  to convictions under 21 U.S.C. 843(b).  The Court finds that

13  because the defendant was not previously convicted of a federal

14  drug offense, the enhancement filed by the government under

15  section 851 does not apply to convictions of 21 U.S.C. 843(b).

16  Therefore, the statutory maximum sentence for counts 24, 26,

17  28, 30, 32, 36, 38, 39, 45, 50, 51, 52, and 53 is four years.

18         The Court determines that no finding is necessary

19  concerning the remaining objections to the presentence report

20  because the controverted matters will not be taken into account

21  in imposing sentence.  Nor will they affect the sentence to be

22  imposed by the Court.  Therefore, the remaining factual

23  statements and Guideline applications are adopted without

24  objection as the Court's findings of fact concerning

25  sentencing.

19

1        The Court finds that the total offense level is 43 and

2  that the defendant's criminal history category is VI.  Pursuant

3  to the United States Sentencing Commission Guidelines manual,

4  the total offense level of 43 and criminal history category of

5  VI establishes a Guideline range of life imprisonment.

6  However, several counts of conviction provide maximum statutory

7  sentences less than life imprisonment.  The Court finds no

8  reason to depart downward from the applicable Guideline range

9  and all the terms of imprisonment are ordered to run

10  concurrently.

11        Accordingly, with the above said, pursuant to the

12  Sentencing Reform Act of 1984, it is the judgment of the Court

13  that the defendant, Willie Small, is hereby committed to the

14  custody of the Bureau of Prisons to be imprisoned as follows:

15  On counts one, three, four, five, six, eight, nine, ten,

16  eleven, 12, 13, 14, 15, 17, 22, 23, 25, 35, 37, 49, and 66,

17  life imprisonment as to each of those counts.

18        As to counts 43, 55, and 65, 360 months' imprisonment

19  as to each of those three counts.

20        As to count 75, 240 months' imprisonment.

21        As to counts 24, 26, 28, 30, 32, 36, 38, 39, 45, 50,

22  51, 52, and 53, 48 months' imprisonment as to each of those

23  counts.

24        Although life sentences have been imposed on 21 counts

25  of conviction, the Court is required to impose terms of

20

1  supervised release pursuant to 18 U.S.C. section 3583.  The

2  following terms of supervised release are ordered to run

3  concurrently.  As to counts three, four, five, six, eight,

4  nine, ten, eleven, 13, 14, 15, 17, 22, 23, 25, 35, 37, eight

5  years of supervised release as to each of those counts.

6        As to counts 43, 55, and 65, six years of supervised

7  release.

8        As to count two, five years of supervised release.

9        As to counts 24, 26, 28, 30, 32, 36, 38, 39, 45, 50,

10  51, 52, 53, and 75, one year.  As to each of those counts.

11        MS. TAFOYA:  Your Honor, not to interrupt the Court,

12  but I know our dismissal came kind of today, and count two

13  would have no supervised release --

14        THE COURT:  That's correct.  That's correct.  And I

15  should have crossed it out.  I deleted it from the other.  But

16  not here.

17        To the extent the Court referenced supervised release

18  for count two, I withdraw that because count two, by order of

19  the Court today, has been dismissed.

20        Continuing on, while on supervised release, the

21  defendant shall not commit another federal, state, or local

22  crime; shall not illegally possess controlled substances; shall

23  not possess a firearm or destructive device; and shall comply

24  with the standard conditions adopted by this court.

25        The defendant shall refrain from the unlawful use of a

21

1  controlled substance and, if released on supervised release,

2  submit to one drug test within 15 days of release and at least

3  two periodic tests thereafter for use of a controlled

4  substance.

5        The Court finds that the fine range is from $25,000 to

6  8,000,000.  The Court finds that the defendant does not have

7  the ability to pay a fine, so I will waive the imposition of a

8  fine in this case.  The defendant shall pay a special

9  assessment of $100 per count of conviction, for a total of

10  $3,900.  So it should be -- defendant shall pay a special

11  assessment of $100 per count of conviction for a total of

12  $3,800, since count two has been withdrawn.  The special

13  assessment fee of $3800 is due and owing immediately.

14        Mr. Small, you're advised of your right to appeal the

15  sentence I've just imposed, along with the underlying

16  conviction.  If you desire to appeal, a notice of appeal must

17  be filed with the clerk of the court within ten days after the

18  entry of judgment or your right to appeal will be lost.  If you

19  are unable to afford an attorney for an appeal, the Court will

20  appoint one to represent you at the court's expense.  If you so

21  request, the clerk of the court must immediately prepare and

22  file a notice of appeal on your behalf.

23        Is there anything further from either side?

24        MS. TAFOYA:  Not on behalf of the United States.

25        MR. GOLLA:  There is, Your Honor.  I would request

22

1  that a recommendation that Mr. Small stay in the state of

2  Colorado, if possible.

3      THE COURT:  What's the government's position on that

4  request?

5      MS. TAFOYA:  Your Honor, I don't usually take a

6  position objecting to that.  However, I can tell the Court that

7  I think it's very unlikely because of the other sentenced

8  prisoners that he is separated from.

9      THE COURT:  Yeah, I'm not going to make a

10  recommendation.  There are implications for others who may have

11  been sentenced, may be sentenced, and I don't feel making a

12  sentencing recommendation on this record is proper.  So

13  therefore, I will not do it.

14      We'll be in recess.

15  (Recess at 2:12 p.m.)

16          REPORTER'S CERTIFICATE

17      I certify that the foregoing is a correct transcript

18  from the record of proceedings in the above-entitled matter.

19  Dated at Denver, Colorado, this 22d day of April, 2004.

20

21      _____

        Kara Spitler
22

23

24

25