# ATTACHMENT G

Executive Summary
Willie Small, Register Number 30408-013

**Mr. Small is 61 years old. He is serving 21 life sentences for selling crack cocaine. He has no history of violence.**

**Factor 1. Currently serving a sentence that would likely be substantially lower today.**
Mr. Small is serving 21 life sentences plus 648 months plus 4 years – to run concurrent.

Today, it is likely Mr. Small would have received a substantially lower sentence. Mr. Small would request that he be granted clemency and a sentence of 15 years or 180 months. He would serve 85% of that sentence, or 13 years. He has been in custody 13 years, he is 61 years old, therefore he would be released as soon as practicable.

On April 21, 2004, Mr. Small was sentenced on a 2001 case (01CR214) following a jury trial. Ultimately, he was sentenced to 21 life sentences, 360 months on 3 counts, 240 months on 1 count, 48 months on 13 counts and 4 years on 13 counts – all to run concurrent. He was also supervised to numerous supervised release sentences, the maximum being 8 years.

The legal basis for the life sentences was a combination of sentencing guidelines and 4 counts pursuant to 21 U.S.C. § 851. The mandatory sentencing guidelines in 2004 required the court to sentence Mr. Small to life.

Today, the guidelines would be 360 to life. Today, it is unlikely § 851 enhancements would have been filed. Undersigned counsel has practiced extensively in front of the sentencing judge in this case and spoke with the probation officer (Kurt Thoene) who completed the PSIR in 2004 (he was later the Supervising Probation Officer for the District of Colorado and is now retired). Mr. Thoene shares undersigned counsel's opinion that had Chief Judge Daniel been able to – pursuant to law – sentence Mr. Small to something other than life, he would have done so. Mr. Small's federal public defender agrees. 21 life sentences is incredibly excessive. Indeed, Mr. Small has a lengthy criminal history representative of a drug abuser, but he has no violence in the current case or in his history.

The breakdown of counts and sentences per the sentencing transcript is as follows:

Court found relevant conduct included at least 1.5 kilos or 1500 grams of cocaine base. (p.18, 1)

- Prior felony drug offense convictions, require by statute a mandatory life sentence for counts 1, 12, 49 and 66, pursuant to 21. USC. § 851 (as well as 841(b)(1)(D))
- Statutory max for counts 24, 26, 28, 30, 32, 26, 28, 39, 45, 50, 51, 52 and 53 is 4 years
- Offense level is 43 and criminal history is VI. USSG, guideline range of life in prison.
- 21 Life sentences (Counts: 1, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 17, 22, 23, 25, 35, 37, 49, 66).
- 360 months imprisonment as to counts 43, 55, 65.

1

- 240 months as to count 75
- 48 months as to counts: 24, 26, 28, 30, 32, 36, 38, 39, 45, 50, 51, 52, 53
- The government dismissed the Continuing Criminal Enterprise count, count 2.

| Components | Current Sentence | Likely Sentence Today |
|---|---|---|
| Statutory Range | Government filed § 851 | It is rare in the District of Colorado in 2016 to file § 851 enhancements and this likely would not have been filed today. |
| Guideline Range | Life | Base Offense level 34 (2.8 KG but less than 8.4 kg cocaine base; relevant conduct 4.49 kg) <br> 4 level increase under 2D1.5 (Cont. criminal enterprise) <br> 2level increase under 2D1.1(b)(1) (Possession of firearm) <br> No acceptance. <br> Total offense: 40. Criminal history VI <br> *Booker*/3553(a) **Sentence Less Than Life (180 months)** |
| Sentence Imposed / Likely would be Imposed | Life | 180 months |

**Factor 2. Non-violent offender.** Mr. Small was convicted of conspiracy to distribute and distributing crack cocaine. No aspect of his offense was violent.

**Factor 3. Low-level offender.** While it is true Mr. Small was convicted at trial of the Continuing Criminal Enterprise (this count was later dismissed by the prosecutor), Mr. Small was not a high-level offender deserving of a life sentence, let alone 21 life sentences. Mr. Small's attorney at sentencing said: "The phone calls were replete with Mr. Small talking about how he couldn't make any money, talking about how he owed people money. He lived in an apartment building that was [] not the nicest apartment building around. . . [T]hese enhancements apply in cases where individuals such as Pablo Escobar or General Noriega . . . these kinds of individuals who traffic in massive amounts of drugs . . . not to an individual like Mr. Small." Sentencing Transcript, p. 12.

Mr. Small told the court he was a drug user all his life and felt he was "set up for this life sentence when the task force conducted an additional 8 controlled buys." Sentencing Transcript p. 14. The prosecutor's position was that there was 4,495 grams in total for the conspiracy, which included 27 people and 77 counts. At most, it was 4.4 kilograms of crack

2

cocaine, over approximately a year's time, including 27 people. The court found relevant conduct included at least 1.5 kilos or 1500 grams of cocaine base. (p.18, 1).

There were only 176 grams found in Mr. Small's apartment. At sentencing, Mr. Small's attorney asserted: "Mr. Small's argument . . . is that he did not run a large organization. It was struggling at many points during the investigation, as was indicated by the phone calls that were played for Your Honor, for the jury." Sentencing transcript, p. 3. Authorities found $4,810 in Mr. Small's safety deposit box. The prosecutor detailed purchases of 6 grams, 250 grams, 4.5 grams. The search warrant yielded just .244 grams. That is not a *large scale organization*, or a high-level offender. Mr. Small appears to be a life-long crack addict who was involved in selling to other crack addicts – a low-level offender.

**Factor 4. Without significant ties to large-scale criminal organizations, gangs or cartels.**
Mr. Small never had and does not have ties to large-scale criminal organizations.

**Factor 5. Length of sentence served.** Mr. Small has been incarcerated since his arrest on June 15, 2001 – He has therefore been in custody for approximately 15 years. (He was on parole at the time of his arrest and the time from 6/15/01 – 2/8/03 was credit toward his parole case, state case 95CR64 out of Gilpin County).

It should be noted that none of Mr. Small's co-defendants received the lengthy sentences that he received. The others who went to trial with Mr. Small are as follows:

- Zebedee Hall was released on March 26, 2010.
- Theolian Lloyd, release date of 1/26/19.
- George Murray (there are 3 that show in BOP inmate locator, all 3 have been released).
- "Sammie" Woods (there are 3 that show in BOP inmate locator, all 3 have been released).
- Alvin Green, there are ten Alvin Greens in the BOP inmate locator. It is unclear which Alvin Green was in the case with Mr. Small from the records obtained.
- Co-defendants cooperated against Mr. Small, all are serving less than 7 years in jail.

It should also be noted that today, Mr. Small is sixty-one years old.

**Factor 6. Does not have a significant criminal history.** Mr. Small has many convictions, however taken together it would not be considered "significant" because it is made up of petty offenses and drug cases. His convictions are:
- 1982 Possession of Marijuana (Note: Today, this is not a crime in CO).
- 1982 Possession of Marijuana (Note: Today, this is not a crime in CO).
- 1983 Possession of Marijuana (Note: Today, this is not a crime in CO).
- 1985 Misdemeanor Criminal Tampering, sentenced to probation.
- 1985 Petty Offense Assault, sentenced to probation.
- 1988 Petty Offense Gambling, sentenced to $50 fine.

3

- 1988 Misdemeanor Theft, sentenced to 5 days jail.
- 1988 Petty Offense Use of Fictitious Name, sentenced to 33 days jail.
- 1988 Felony possession of a controlled substance, 3 years DOC.
- 1988 Felony distribution of a controlled substance, 3 years DOC concurrent with above.
- 1990 Felony possession of a controlled substance, sentenced to community corrections.
- 1994 Felony possession with intent to distribute, 6 years DOC.
- 1995 Felony possession of a controlled substance, 10 years DOC. (.22 grams of cocaine was found in his vehicle).
- 1995 Driving while license under restraint, 180 days jail.

It should be noted that at the sentencing hearing, Mr. Small objected to one of the above distribution cases actually being a possession and the prosecutor agreed. It is unclear from the records obtained which one the parties were referring to.

**Factor 7. Has demonstrated good conduct in prison.** Mr. Small has a stable employment history within BOP. He has consistently held jobs as an orderly, in food service, doing landscape and recreation detail and doing "industries production." He has consistently been employed since his incarceration began. Mr. Small does not have any disciplinary history. Once, in 2003, he "possessed an unauthorized item." Mr. Small also participates and completes educational courses such as Crochet and Beading, AIDS awareness, Walk4Well.

**Factor 8. Has no history of violence prior to or during current term of imprisonment.** Mr. Small has no history of violence prior to or during his imprisonment. He has one conviction for assault, but it should be noted that it is a municipal/petty offense. That means the maximum punishment is one year in jail. It was not even charged in county court, rather in municipal court and he was sentenced to probation.

**Factor 9. 18 U.S.C. Section 3553(a) / *Booker* Factors.** When Mr. Small was convicted, there was no analysis done pursuant to the 3553(a) factors due to the sentencing guidelines being mandatory. Today, that analysis would be done. Given the history and characteristics of Mr. Small and the nature and circumstances of his offense, Mr. Small would respectfully request a sentence to 15 years in the bureau of prisons is sufficient but not greater than necessary to comport with the current sentencing dictates.

Mr. Small, were he to serve 15 years, would at the time of his release be 61-years-old and have a low risk of recidivism. Recidivism rates decline relatively consistently as age increases. Generally, the younger the offender at release, the more likely the offender recidivates. *See U.S. Sent'g Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at Exh. 9, at 28; Exh. 10 at 29 (May 2004)[hereinafter Measuring Recidivism]. Studies have repeatedly shown that older offenders at sentencing are at lower risk for reoffending, and the Commission's research confirms these findings. *See* Paul Gendreau, Tracy Little, and Claire Goggin, Criminology, (2008) *A Meta-Analysis Of The Predictors Of Adult Offender Recidivism: What Works!,* note 44 at 575; David P. Farrington, *Age and Crime, in* Crime

4

and Justice: An Annual Review of Research Vol. 7 (Michael Tonry and Norval Morris, eds., 1986); Jeffery T. Ulmer and Darrell Steffensmeier, *The Age and Crime Relationship: Social Variation, Social Explanations* in The Nurture versus Biosocial Debate in Criminology 378 (K. Beaver, B. Boutwell, and J.C. Barnes, eds., 2014). "It is now a truism that age is one of the strongest factors associated with criminal behavior." Offenders sentenced when younger than twenty-one had a 71.1 percent rearrest rate, compared to 14.0 percent of offenders who are sentenced after age sixty.

Age at release also is associated with different rates of recidivism. *Recidivism Among Federal Offenders: A Comprehensive Overview* 23, (USCC) March 2016. Those released into the community who were below age twenty-one had the highest rearrest rate, 67.6 percent. *Id.* Conversely, those oldest at age of release, over sixty years old, had the lowest recidivism rate, 16.0 percent. *Id.* For each age grouping, the older the age group, the lower the rearrest rate. *Id.* The same pattern holds for reconviction and reincarceration. *Id.*

The Commission has recognized the advisability of revising the guidelines to take age into account. See *Measuring Recidivism* at 16 (noting that "[o]ffender age is a pertinent characteristic" that would "improve [the] predictive power of the guidelines "if incorporated into the criminal history computation"). The Commission has not implemented any such revisions to the criminal history guidelines, but has recently stated that age "may be relevant" in granting a departure. USSG §5H1.1.

In imposing the least sentence sufficient to account for the need to protect the public from further crimes of Mr. Small, this court should consider the statistically low risk of recidivism presented by Mr. Small's history and characteristics. See, e.g., *United States v. Hamilton*, 323 Fed. Appx. 27, 31 (2d Cir. 2009)("the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); *United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007)(affirming below-guideline sentence based on defendant's age, which made it unlikely that he would again be involved in a violent crime); *Simon v. United States*, 361 F.Supp. 2d 35, 48 (E.D.N.Y. 2005)(basing variance in part on defendant's age of 50 upon release because recidivism drops substantially with age).

**Release and Re-entry Plan.** Counsel for Mr. Small was able to speak with a couple of Mr. Small's family members. Mr. Small's brother, Mr. John Small and Mr. Small's sister Ms. Claire Small.

Ms. Claire Small lives in Louisiana. She has kept in touch with Mr. Small since his incarceration. Ms. Claire Small said Mr. Small could come and live with her should he be released, but that living with her brother, Mr. John Small would probably be better for him.

Ms. Claire Small remembers Mr. Small as a "jolly type of guy", a man with an open heart always making new friends, and always willing to help when he could. Ms. Claire Small still sends Mr. Small money every month, but has not maintained much personal communication with him other than that.

Mr. John Small has lived in Denver for over 20 years. He is employed as a production warehouse worker for Colorado Roofing Company, a large manufacturer of roofing materials. He has worked there over a year and thinks it is likely he could get Willie Small a job working with him. Mr. John Small lives at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. He lives with his wife who is a medical assistant. Neither of them have any criminal history within the past 20 years. They have a 2-bedroom apartment and would welcome Willie Small into their home should he be released.

John Small and Willie Small have always been close, working and living together off and on since Mr. John Small followed his brothers from Louisiana to Denver. Mr. John Small sees his brother as a fun-loving but hard working man who went after some fast money, and in the process allowed himself to be surrounded by people who took advantage of his good nature. During the first years of Mr. Small's incarceration, Mr. John Small himself went through a spiritual awakening, and helped his brother to do the same. In returning to the strong faith of their childhood, Mr. Small found a way to put his dire circumstances into perspective and to move forward with a positive attitude. Mr. John Small spoke at length about how Mr. Small sees this chance at clemency as an opportunity to show that he is committed to acting in accordance to his beliefs, that this is a chance to show that the mistakes he's made before do not define him.

That faith has more practical benefits for Mr. Small, if he is released. As he has done before, Mr. John Small can provide housing and help with getting Mr. Small work at his own place of employment. Beyond that, Mr. John Small's pastor, Reginald Holmes, has offered his help and that of their ministerial community in helping Mr. Small land on his feet when released. Pastor Holmes has extensive experience in reintegrating people in Mr. Small's circumstances back into society, as well as many other civil rights and community-building actions. Given his own personal growth, and backed up by strong family connections and a large community willing to help keep him focused in a positive direction, Willie Small stands a great chance at fulfilling his wish to reclaim his life for the better upon his release.

Mr. John Small and his wife are members at New Covenant Christian Church in Denver and have been for 20 years. Their pastor, Reginald Holmes is active in social justice in Denver and an active part of the Black Ministerial Alliance, which is known to undersigned counsel to be a very active organization in Denver and known for its strength in the community and assisting with re-entry from prison, with anti-gang movements, etc. Mr. John Small told me they have been praying for Mr. Small's release for many years and while Pastor Holmes does not know Mr. Small, he has assured counsel he is also supportive of his release and will provide a letter indicating that he will do what he can to support Mr. Small's re-entry into the community.