IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal case No. 01-cr-00214-RM-01

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  WILLIE SMALL,

      Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR A REDUCED
SENTENCE OF TIME SERVED UNDER § 404 OF THE FIRST STEP ACT (#4051)**

---

The United States of America, through United Sates Attorney Jason R. Dunn, by Assistant United States Attorney (AUSA) Guy Till (Government), respectfully files this Response to Willie Small's Motion for a Reduced Sentence of Time Served Under § 404 of the First Step Act (#4051).  Mr. Small seeks a reduced sentence under authority of § 404(b) of the First Step Act (FSA). The Government is opposed to the Motion's request for a time-served sentence.  The Government respectfully states and represents as follows:

1.      For the convenience of the Court and the parties, the Government here sets forth Section 404 of the First Step Act of 2018 (FSA):

**SEC. 404, APPLICATION OF FAIR SENTENCING ACT.**

(a)      DEFINITION OF COVERED OFFENSE.—In this section, the term ''covered offense'' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b)     DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c)     LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

2.     The First Step Act makes the Fair Sentencing Act of 2010 effective, retroactively, for persons sentenced before the effective date of Fair Sentencing Act of 2010.  The Government agrees the Court has the power, pursuant to Section 404(b), to reduce Mr. Small's sentence at this time.  But the sentence Mr. Small is presently serving already was reduced from the Life sentence imposed in 2004.  As a result of President Barak Obama's 2017 Executive Grant of Clemency (#4046), Mr. Small's Life sentence was reduced to 300 months.  The Government asserts that the President's order reducing the sentence from Life to 300 months has reduced the defendant's sentence to the point that no further reduction is called for pursuant to the purposes of 18 U.S.C.  § 3553(a).

2

3.     Because of President Obama's 2017 Grant of Clemency, Mr. Small's projected release date is now October 3, 2022 (Attachment 1).  The Motion asks the Court to reduce his sentence to time-served.  The defendant is seeking immediate release.  The Government asserts the purposes of § 3553(a) are best served by Mr. Small serving his sentence until his estimated release date in 2022.

4.     The Government submits that in determining whether to reduce the sentence of a qualifying defendant under the First Step Act, a court should consider the sentencing factors set forth in Section 3553(a).  Under *Pepper v. United States*, 562 U.S. 476 (2011), a court may consider post-offense conduct, either positive or negative, in assessing whether to adjust a previously imposed sentence.  But a good record meeting norms while in prison does not necessarily mean a person will do well outside of prison.  In prison, the authorities have a system of surveillance and rewards for compliance, including awards of good time and earned time for good behavior.  In the civilian world, a person is not subjected to the same kind of oversight.  Mr.  Small has never cooperated with law enforcement.  He will emerge from USBOP with his street credentials intact.  Mr. Small sets a poor example for others in the community.  Mr. Small has the character of a six times convicted felony offender.  He is a proven recidivist now asking for immediate release.  He poses a threat to society despite his age because of his organizational and leadership abilities.   The damage he did to society before he was arrested in this case was accomplished with the help of others.  Mr. Small worked through the members of his cocaine base distribution "family."  His nick-name was "Pops."  His role in the group was acknowledged by the jury, which found him guilty of engaging in a Continuing Criminal Enterprise (CCE) as an organizer.

5.      The Government respectfully requests that the Court exercise its discretion against any further reduction for Willie Small.    Willie Small was sentenced to Life in 2004, following the jury trial 2003.[1] *United States v. Willie Small, et al.*, 423 F.3d 1164, 1171 (10th Cir. 2005).  More than 25 defendants were named in the Second Superseding Indictment in Willie Small's case.[2]  Most of the co-defendants pled guilty. Six co-defendants went to trial with Mr. Small.  Mr. Small was found guilty by a jury of more than thirty-five counts, including Conspiracy, CCE, Money Laundering, and twenty substantive Title 21 counts.  Each substantive Title 21 count involved a specific quantity of cocaine base.  The jury's findings for the substantive counts total more than 550 grams of cocaine base. *See* Attachment 2, listing the substantive counts for which Mr. Small was found guilty, based on details of the Judgment in a Criminal Case (#3417-1). *See also* Government's Response to Mr. Small's § 2255, Attachment 3 (#3417).

---

[1]  The Government respectfully asks the Court to take judicial notice of the content of its own files in this case.  Due to the age of the case, many of the pertinent filings are not available electronically on the ECF system. The defendant's Motion has a number of attachments (marked by letters such as A, B, C, etc.) that are relevant to the Government response and, since the Motion and its attachments were filed in 2019, the attachments are electronically available on the ECF system.  The Government understands the attachments are faithful representations of original documents in the Court's file.  Accordingly, the Government Response sometimes will refer to pertinent documents as attachments to the Motion, rather than attaching said documents to the Government Response.

[2]  *See United States v. Willie Small*, *et al*, 413 F.3d 1164, 1171-72 (10th Cir. 2005). The opinion notes how the investigation began in 2000, when FBI SA Todd Wilcox used an informant to make nine undercover controlled purchases from Small and his associates.  Procedurally, the opinion notes that the investigation ended with arrests in June 2001, and describes how Small, Green, Lloyd, Woods, Murray, Jones, Van Dyke, Smith and nineteen other co-defendants were charged in a seventy-seven count second superseding indictment.  Count One of the indictment charged most of the defendants with Conspiracy to Distribute more than 50 grams of Crack Cocaine.  The wiretap hearings alone took five days.  The jury trial ran from September 22, 2003, to November 13, 2003.  Small, Green, Lloyd and Woods were convicted of Count One. Small and Green each had at least two prior drug felony convictions, so they received statutory Life sentences on Count One.  Lloyd and Woods each had one prior felony drug conviction and were sentenced to the mandatory minimum term of 240 months on Count One.

6.      At sentencing in 2004, the Honorable Wiley Y. Daniel, United States District Court Judge, adopted the Presentence Investigation Report (PSIR)(*See* Small Motion for Reduced Sentence, Attachment B, #4051 and #4052).  The PSIR stated that "the type and amount of kilograms drugs involved in this offense was **in excess of 1.5** of cocaine base," (emphasis added) resulting in a base offense level of 38.  PSIR ¶ 44.  The PSIR added four levels to the base offense level for Role in the Offense as a leader or organizer because of the jury's verdict on the CCE count and applied a two-level enhancement for possession of a firearm.  *Id.* at ¶¶ 44-45.  The adjustments for leadership and possession of a firearm brought the offense level to 44. Because the maximum offense level under the guidelines was 43, the adjusted total offense level was capped at level 43.  *Id.* at ¶ 53.  The PSIR also concluded that Mr. Small had a criminal history category of VI, based on five prior felony convictions, and a misdemeanor conviction for driving without a license.  *Id.* ¶¶ 71-85; *see also* Sentencing Tr. at 3:2-4:24 (Motion, Attachment C, #4051-3) (clarifying that some of the felony distribution offenses listed in the PSIR were actually for simple possession); Information 21 U.S.C. § 851 ¶¶ 2-5 (identifying three prior convictions for simple possession).

7.      With an offense level of 43 and a Criminal History Category of VI, the 2003 Guidelines called upon the Court to impose a life sentence.  *See* U.S.S.G. Ch. 5, pt. A (2003).  Of course, the Sentencing Guidelines are now advisory.  Today the Sentencing Guidelines are a starting point and final decisions should be made according to the provisions of 18 U.S.C. § 3553(a).  If calculated according to the 2018 Guidelines Manual, which reflects the changes made by the Fair Sentencing Act, the starting base offence level for more than 1.5 kilograms of cocaine base is Level **32**,

according to § 2D1.1(c)(4).  Adding **4** levels adjustment for leadership and **2** levels adjustment for the presence of a firearm brings the 2019 post-Fair Sentencing Act total adjusted offense level to Level **38**.  The 2018 guidelines range for Level 38, Criminal History VI, is **360-Life.** [3]

8.     During the trial, the Government was represented by AUSA Kathleen M. Tafoya.  The defendant was represented during the trial by Matthew C. Golla, Esq., a veteran Assistant Federal Public Defender.  The co-defendants that went to trial with Mr. Small also were represented by experienced attorneys.  The presentation of evidence and jury deliberations went on for more than six weeks.

9.     Before trial, AUSA Kathleen M. Tafoya filed an Information alleging five prior State of Colorado controlled substance felony convictions for Mr. Small.  When she filed the 21 U.S.C. § 851 Information, AUSA Kathleen M. Tafoya was acting according to U.S. Department of Justice guidelines in such cases with such defendants. In the USAO's 2016 response to the Pardon Attorney, the U.S. Attorney indicated AUSA Tafoya's filing of the § 851 Information in Mr. Small's case was in accordance with DOJ policy.   The general idea behind an § 851 Information is that a three-time offender is indicating he needs to be taken seriously.  Mr. Small was a six-time offender. Consequently, the defendant was looking at a mandatory Life sentence pursuant to 21 U.S.C. § 851 and offense of conviction, as well as the Guidelines sentence of Life.

---

[3] Footnote 5, on page 15 of Mr. Small's Motion reads as follows:  The base offense level for an offense involving 1.5 kilograms of crack cocaine has been reduced from 38 to 32.  *See* U.S.S.G. § 2D1.1(c)(4).  Assuming that Mr. Small's guidelines otherwise remain the same, his total offense level is now 38.  With a Criminal History Category of VI, the resulting guidelines range is 360 months to life imprisonment.  U.S.S.G., Ch. 5, pt. A.
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/retroactivity-analyses/first-step-act/201900607-First-Step-Act-Retro.pdf

10.    At the sentencing hearing before Judge Daniel on April 21, 2004, Mr. Small took advantage of the opportunity to make himself known.  Mr. Small, speaking on his own behalf, told the Court that the Government "set" him up. Starting on page 14 of the Sentencing hearing transcript (*See* Mr. Small's Motion for Reduced Sentence, Attachment C (#4051-3)), Mr. Small told the Court:

1    ". . . I was entrapped into this situation so -- I got this

2     written down, Judge, so be a little patient.

3    I should not be standing here to be sentenced at all.

4    I am a victim of sentencing entrapment by the metro task force.

5    The task force could have and should have arrested me as soon

6    as I made the first controlled buy.  I was on parole and the

7    police and agents knew that.  There was no so-called conspiracy

8    going on.  If there was one going on, it was just between me

9     and the government, the confidential informant.

10    Your Honor, I was set up for this life sentence when

11    the task force conducted an additional, eight additional

12    controlled buys.  All they had to do was arrest me when I did

13    the first one and call my parole officer and send me back to

14    DOC.  Not only did they entrap me, but they bribed me, bribed

15    Roz Parker to do it.  She told you, Your Honor, right here in

16    this courtroom when you allowed the attorneys to cross-examine

17    her that she did not want to do the controlled buys and that

18    they told her she was facing 30 years.  Then they told her they

19    would give her $30,000 plus make sure she did not have to go to

20      prison for 30 years.  They threatened her.

21      If I was in that situation, I guess I probably would

22      have did the same thing.  But it's called bribery because they

23      offered her payment for what would originally become testimony.

24      This is what the task force did -- this is what the task force

25      did, Your Honor, bribery."

11.     After weeks of hearing the evidence at trial and being told by the jury that

he was guilty beyond a reasonable doubt of dozens of felony charges, Mr. Small's

position was simple -- he should not be in federal district court at all.  At his sentencing

hearing, Mr. Small claimed he was actually a "victim" of the FBI.  Mr. Small stated he

could have and should have been arrested after the first controlled buy in the

investigation because he was on state parole at the time and could have been revoked

and sent to Colorado Department of Corrections (CO DOC).   Mr. Small did not explain

how being sent back to CO DOC this time would be different – how the time in CO DOC

would have caused him to change his behavior when the other visits to CO DOC had

failed.  Mr. Small also did not explain how arresting him and calling his parole officer

would have stopped the misbehavior of the more than twenty-five co-defendants in his

case.  Not only did Mr. Small completely fail to accept responsibility for his actions, Mr.

Small actually blamed the FBI for his predicament.

12.     Mr. Small appealed his conviction and sentence.  The six co-defendants

who joined Mr. Small in going to trial also appealed.  The Government was represented

on appeal by AUSA James C. Murphy.  The Tenth Circuit Court of Appeals issued the

decision in the case on September 15, 2005.  Mr. Small's convictions and sentences

were affirmed.  *United States v. Small*, 423 F.3d 1164, 1197 (2005).  On February 21,

8

2006, the Supreme Court denied Mr. Small's certiorari petition, and his conviction became final.  Mr. Small filed his 28 U.S.C. § 2255 motion on January 4, 2007 (#3410). In his § 2255 motion Mr. Small returned to the theme he vocalized at sentencing and accused his attorney of being ineffective and conflicted.  Mr. Small also alleged Judge Daniel was biased.  AUSA James C. Murphy wrote the Government's answer to the defendant's § 2255 motion (#3417), filed herewith and marked as Attachment 3.  The defendant's § 2255 motion was denied in 2007 (#3664).   A defendant does nothing wrong by taking advantage of all available due process.  But the Government submits it is fair to comment on Mr. Small's persistent pattern of placing blame on others for his imprisonment.  The Government respectfully submits that a chronic failure to accept responsibility is behind the nearly fantastic charges in his § 2255 motion against his attorney and Judge Daniel, and Mr. Small's predisposition towards denial is still an active part of his character.

13.     The reasons not to grant Mr. Small's request for immediate release might best be illustrated by comparing his situation with that of his co-defendant, Alvin Green. Alvin Green was an integral member of Willie Small's drug distribution conspiracy. Green and Small were co-defendants in the underlying indictment and were convicted in the same jury trial.

14.   Like Willie Small, after his conviction at trial, Alvin Green also faced mandatory life imprisonment.  Green had two prior narcotics convictions.  Mr. Small had five prior narcotics convictions.  Under the circumstances, Judge Daniel was required by law to sentence both men to Life on Count One of the Second Superseding Indictment, Conspiracy.  Following their convictions, appeals, and claims for *habeas* relief, both

Small and Green applied for executive clemency.  It was during the clemency process that, for the first time, a deliberative process allowed a decision maker to consider factors that might support a rational sentencing disparity between Small and Green. [4]

15.     As a result of that process, in 2016, Alvin Green's Life sentence was reduced to time-served by an Executive Grant of Clemency dated October 6, 2016 (#4045).  Green was released from federal custody on February 3, 2017.  Green served approximately 16 years from the time the FBI arrested him in 2001.  Willie Small's Life sentence, by comparison, was reduced to 300 months by President Obama's Executive Grant of Clemency dated January 19, 2017 (#4046).  Mr. Small has a projected release date in 2022, approximately 21 years after the FBI arrested him in 2001.

16.     It is readily apparent why the executive clemency process lead to a greater sentence reduction for Alvin Green than it did for Willie Small.  For example, at trial, Green was convicted of one count of Conspiracy to distribute crack cocaine, two counts of use of a communication facility in furtherance of the distribution of narcotics, and one count of money laundering.  By contrast, Willie Small was convicted of one count of Conspiracy to distribute and distribution of crack cocaine, one count of running a Continuing Criminal Enterprise (this count of conviction was dismissed on the motion

---

[4]     In a 2016 interview, Neil Eggleston, President Obama's White House Counsel, confirmed that The President was personally involved in the executive clemency process and carefully evaluated the merits of all clemency requests:

> 'It's not uncommon for him to call me in and have various ones that he wants to talk through. He focuses individually on each one of these, knows a fair amount of information on each of them', Eggleston said.  'He's essentially looking at the various pieces, and he's testing the likelihood of success on the outside.  The way he really thinks about this is giving people second chances.'

October 6, 2016 CNN Wire Service.

of the Government before sentencing), twenty-one substantive counts for distribution of crack cocaine or possession of crack cocaine with intent distribute, thirteen counts of use of a communication facility in furtherance of the distribution of narcotics, and one count of money laundering.  Each of the Title 21 substantive counts represented an overt act in furtherance of the Conspiracy. Green's functional role in the Conspiracy involved bringing kilograms of powder cocaine from California to Colorado -- an important role, to be sure.  Green was a major source for the Willie Small conspiracy. But Willie Small, "Pops," was the boss of the Denver franchise.

17.     Because both Green and Small faced a sentence of mandatory Life because of prior narcotics convictions, their Sentencing Guidelines ranges were not a factor in their sentencing.  But the difference in the Guidelines for the two men was substantial.  Green had a final adjusted Total Offense Level of 34, and with 8 criminal history points he landed in Criminal History Category IV.  His 2003 Guidelines sentencing range was, therefore, 210 to 240 months.

18.     Willie Small's sentencing range was higher than Green's in every respect. His adjusted Total Offense Level was 44, which had to be reduced to 43 because that is as high as the sentencing chart would go.  Mr. Small had 20 criminal history points, nearly three times as many as Green and nearly twice the number, 13, required to qualify for Criminal History Category VI.  Small also qualified as a Career Offender.  The 2003 Guidelines called for Mr. Small to receive a Life sentence.

19.     It is reasonable to assume that the executive clemency process was influenced by the comments of Judge Daniel, who personally presided over the motions hearings and trial of Green and Small and who imposed both of their Life sentences.

When contacted by USAO CO regarding the pending application for executive clemency filed by Alvin Green, Judge Daniel stated:

> I strongly support the Application for Commutation of Sentence for Alvin Green.  I absolutely agree with the excellent analysis contained in the petition and think Alvin Green's sentence should be commuted to a sentence of time served.  There is no doubt in my mind that his sentenced [sic], imposed under the law that existed in 2004, was unduly harsh.  Today, his sentence would be significantly less for all the accurate reasons noted in the Application.

The Judge Daniel quote above is from the USAO CO Response regarding Alvin Green's Petition for Clemency, addressed to the DOJ Pardon Attorney, at page 7.

20.    By contrast, when contacted by USAO CO regarding Willie Small's application for executive clemency, Judge Daniel's response was significantly more tepid:

> I have no objection to supporting this request, particularly because of his age and low probability that he's going to re-offend.  I have no objection to a shortened sentence for him.

USAO Response to Willie Small Petition for Clemency, addressed to the DOJ Pardon Attorney, at page 10.

21.    The contrast in these recommendations by Judge Daniel is telling.  As to Alvin Green, Judge Daniel had no objection to a reduction to a sentence of time-served. As to Willie Small, Judge Daniel had no objection to "a shortened sentence."  And at the conclusion of the executive clemency process, that is exactly what Small and Green received.

22.    In 2016 the United States Attorney for the District of Colorado and Judge Daniel recommended a time-served sentence for Mr. Green, and President Obama granted such clemency for Mr. Green.  In relation to Small's 2016 petition for Executive

Clemency, the United States Attorney for the District of Colorado took a position in response to the petition, which was made known to the United States Department of Justice, Office of the Pardon Attorney. The Pardon Attorney presumably made the USAO's position known to White House Counsel.   The response recommended a reduction to 360 months to bring the sentence in line with the 2016 Guidelines and the Fair Sentencing Act.  The USAO CO was opposed to a time-served sentence for Mr.Small.

23.     The January 19, 2017 Executive Grant of Clemency with which President Obama reduced Willie Small's sentence from mandatory Life to 300 months also granted clemency to 186 other applicants (#4046).  Willie Small and two other applicants had their sentences reduced to 300 months.  Eight other applicants had their sentences reduced to sentences greater than 300 months.  All of the remaining 175 applicants for clemency had their sentences reduced to a term less than 300 months. Many, like Alvin Green, had their sentences reduced to time-served.  Within the executive clemency process, therefore, an evaluation took place of all the applicants' relative merit for sentence reductions.  During his two terms in office, President Obama received 33,149 applications for executive clemency.  He granted 1,715. In the January 19, 2017, Executive Grant of Clemency, Willie Small and 10 others received reductions to 300 months or higher.

24.     The Government submits the "limitations" in Section 404(d) would preclude the defendant's present Motion if it had been ruled on by a court.  It is not so clear what effect prior re-consideration of a sentence by the President should have.  While it seems no Court of Appeals cases are on the books to assist us, the District Courts that have

addressed the issue have ruled that the language of 404(d) does not extend to the process involved with Executive Grants of clemency.  Assuming *arguendo* that Section 404(d) presents no impediment to the present Motion, the Government respectfully submits that the 300 month sentence imposed by the Executive Grant effectively meets the goals of 18 U.S.C. § 3553, and obviates the need for an exercise of discretion by the Court to reduce the sentence further.[5]

     25.     Alvin Green was one of Willie Small's major sources of supply for powder cocaine.   Green received, with clemency, a Guidelines sentence with a release date of February 3, 2017.[6]  Willie Small received, with clemency, a reduced sentence with a projected release date of October 3, 2022. *See* Attachment 1, a November 1, 2019, out-take from the USBOP website providing prisoner information. Willie Small's 300 month Executive Grant of Clemency sentence represents a 60 month variance from the bottom of the Fair Sentencing Act of 2010 Guidelines range of 360 to Life.  There is no justification for Willie Small's present Motion under the First Step Act, asking the Court for an additional variance to a time-served sentence.

---

[5]  FSA changes in the recidivism components of 21 U.S.C. § 841 are found in § 401 of the FSA, which does not have the same retroactive reach as § 404(b). Section 401 would appear to create an obstacle to sentence reduction for anyone sentenced under provision of 21 U.S.C. §§ 841 and 851 based on prior narcotics felony convictions in a case like this, where the jury made the findings reflected in the April 23, 2004, Judgment in a Criminal Case (#3417-1), as summarized in Attachment 2.  But, in this case at this point, Mr. Small is asking for a reduction of the 300 month sentence given to him by President Obama's Executive Grant of Clemency, rather than a reduction of the Life sentence based on prior narcotics felony convictions imposed by Judge Daniel pursuant to 21 U.S.C. §§ 841 and 851.

[6] In comparison, co-defendant Dwayne Van Dyke, whom the record shows was an alternative source of supply for Willie Small, pled guilty, testified at trial, and received a variant sentence of 175 months imprisonment following a Government § 5K1.1 motion for substantial assistance to law enforcement.  *United States v. Willie Small*, 423 F.3d 1164, 1171, 1187-88 (10th Cir. 2005)

26.     Section 404(c) makes it clear that any sentence reduction pursuant to the FSA is, ultimately, discretionary with the Court: "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."

## No Hearing is Required

27.     No hearing is required in this matter. The First Step Act does not provide for a plenary resentencing proceeding. Nor does it mandate a hearing. *See Dillon v. United States,* 560 U.S. 817, 827-28 (2010).   Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." A sentencing reduction in the present matter is authorized under Section 3582(c)(1)(B), which is subject to Rule 43(b)(4). As *Dillon* explained, Rule 43, which "requires that a defendant be present at 'sentencing,' *see* Rule 43(a)(3), . . . excludes from that requirement proceedings that 'involv[e] the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c),' Rule 43(b)(4)." 560 U.S. at 827-28.

28.     The Court may readily resolve the issue presented on the papers.  In recent months, many district courts have addressed First Step Act issues and agreed that no plenary resentencing is warranted upon a motion for reduction of sentence under Section 404, nor is a hearing required. *See, e.g., United States v. Potts*, 2019 WL 1059837, at *2 (S.D. Fla. Mar. 6, 2019); *United States v. Glover*, *377 F. Supp. 1346, 1356 – 1358 (S.D. Fla. 2019)*; *United States v. Kamber*, 2019 WL 399935, *2 (S.D. Ill. Jan. 31, 2019); *United States v. Perkins*, 2019 WL 1578367, at *3 (N.D. Iowa Apr. 3, 2019); *United States v.*

*Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019); *United States v. Shelton*, 2019

WL 1598921, at *2 (D.S.C. Apr. 15, 2019).

Respectfully submitted this 5th day of November, 2019.

JASON R. DUNN
UNITED STATES ATTORNEY

BY:    *s/ Guy Till*
Guy Till
Assistant United States Attorney
1801 California St., Suite 1600
Denver, CO 80202
Tel: 303-454-0265
Email: Guy.Till@usdoj.gov
Attorney for the Government

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send an email notification of such filing to all counsel of record.

s/ Michelle Trujillo
Legal Assistant
United States Attorney's Office